RHONDA R. TROTTER, Bar Number 169241
rtrotter@kayescholer.com
THEODORE W. MAYA, Bar Number 223242
tmaya@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067
Telephone:   (310) 788-1000
Facsimile:    (310) 788-1200

Attorneys for Plaintiff and Counter-Defendant
CONSUMERINFO.COM, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| CONSUMERINFO.COM, INC., a California corporation,<br><br>   Plaintiff,<br><br>   v.<br><br>JESSE WILLMS, an individual; EDIRECT, a Canadian Partnership; 1016363 ALBERTA LTD., a Canadian Corporation; 1021018 ALBERTA LTD., a Canadian Corporation; all doing business as "WU-YI SOURCE," "JUST THINK MEDIA," and "CREDIT REPORT AMERICA,"<br><br>   Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIM.<br>_____ | CASE NO. SA CV 09-0055 DMG (MLGx)<br><br>**PLAINTIFF CONSUMERINFO.COM, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Fed. R. Civ. P. 56<br><br>*[Filed concurrently with Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law; Proposed Order; Request for Judicial Notice; Declaration of Ty Taylor; Declaration of Theodore Maya; and Declaration of David Williams]*<br><br>Hon. Dolly M. Gee<br><br>Hearing Date: March 12, 2010<br>Time:   2:00 P.M.<br>Place:   Court Room 7<br>     Spring Street |

KAYE SCHOLER LLP

**NOTICE OF MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on March 12, 2010, or on such other date as the Court may provide, Plaintiff ConsumerInfo.com, Inc. ("ConsumerInfo") will and hereby does move for partial summary judgment on:

- Defendants' single counterclaim, for cancellation of ConsumerInfo's FREECREDITREPORT.COM trademark due to alleged fraud on the PTO, (Docket No. 6), and

- each of Defendants' ten asserted affirmative defenses: failure to state a cause of action, unclean hands, failure to mitigate damages, superseding events and acts of third parties, in pari delicto, allocation of fault, laches, waiver and estoppel, abandonment and fair use.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 27, 2010. (Declaration of Theodore Maya ("Maya Decl.") ¶ 24.) This motion is made pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1, on the grounds that the undisputed evidence shows (1) ConsumerInfo made no intentionally false statements to the PTO during the trademark application process (2) on which the PTO relied in issuing the registration, and (3) Defendants cannot prove any damages resulting from the PTO's reliance and the mark's registration. Accordingly, Defendants' counterclaim and their unclean hands defense, which is based on the same allegations of fraud on the PTO, fail as a matter of law. Similarly, no evidence supports any of Defendants' other affirmative defenses.

This motion is based upon this Notice, the concurrently filed Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions

KAYE SCHOLER LLP

of Law, the Request for Judicial Notice, the Proposed Judgment, the Declaration of Theodore Maya ("Maya Decl."), the Declaration of David Williams ("Williams Decl."), the Declaration of Ty Taylor ("Taylor Decl."), the reply brief that ConsumerInfo intends to file, the records and files in this action, and such evidence and argument as may be presented at or before any hearing on this motion.

DATED:  February 12, 2010

Respectfully Submitted,

KAYE SCHOLER LLP

By: _____
     Theodore W. Maya
Attorneys for Plaintiff and Counter-
Defendant
CONSUMERINFO.COM, INC.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.    Introduction ............................................................................................1

II.   Facts ........................................................................................................2

      A.   ConsumerInfo's FREECREDITREPORT.COM Brand ......................2

      B.   Defendants' False Advertising and Infringement of
           ConsumerInfo's Intellectual Property Leads to this Lawsuit ..............3

      C.   Defendants File a Counterclaim for Cancellation of the
           FREECREDITREPORT.COM Registration Based On Alleged
           Fraud on the PTO .........................................................................4

      D.   ConsumerInfo's FREECREDITREPORT.COM Trademark
           Application ..................................................................................5

III.  The Standard on Summary Judgment ...........................................................7

IV.   Defendants' Counterclaim Fails As A Matter of Law ...................................8

      A.   Defendants' Counterclaim Fails as a Matter of Law Because
           ConsumerInfo Made No Intentional False Statements to the PTO ....11

           1.   ConsumerInfo's Statement that It "Substantially
                Exclusively" Used the Mark Is Not False, Much Less
                Intentionally False .............................................................11

           2.   ConsumerInfo's Statements Regarding
                CREDITREPORTS.COM Were Not False ...............................13

           3.   ConsumerInfo's Statements Regarding the Strength of
                Consumer Recognition of FREECREDITREPORT.COM
                Were Not False ..................................................................14

           4.   ConsumerInfo's Statements Regarding Its Products Were
                Not False ..........................................................................14

           5.   ConsumerInfo Had No Duty to Reference the Irrelevant
                FTC Action in Its Application ..............................................14

      B.   Defendants' Counterclaim Also Fails as a Matter of Law
           Because There Is No Evidence of Reliance by the PTO ...................16

      C.   Defendants' Counterclaim for Monetary Damages Fails as a
           Matter of Law .............................................................................17

V.    Defendants' Affirmative Defenses Fail ........................................................18

      A.   Unclean Hands ............................................................................18

      B.   Defendants' First and Third Through Tenth Affirmative
           Defenses Fail ..............................................................................22

VI.   Conclusion .............................................................................................24

KAYE SCHOLER LLP

# TABLE OF AUTHORITIES

## Cases

*555-1212.com, Inc. v. Communication House Int'l, Inc.*,
  157 F. Supp. 2d 1084 (N.D. Cal. 2001) ......................................................13

*Acad. of Motion Picture Arts & Scis. v. Network Solutions Inc.*,
  989 F. Supp. 1276 (C.D. Cal. 1997)..............................................................12

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,
  546 F. Supp. 2d 1029 (D. Or. 2008)..............................................................18

*Arista Records, Inc. v. Flea World LLC*,
  356 F. Supp. 2d 411 (D.N.J. 2005)................................................................23

*Aureflam Corp. v. Pho Hoa Phat I, Inc.*,
  375 F. Supp. 2d 950 (N.D. Cal. 2005)......................................................9, 18

*Brookfield Communications, Inc. v. W. Coast Entm't Corp.*,
  174 F.3d 1036 (9th Cir. 1999).......................................................................13

*Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*,
  No. C-01-20813 RMW, 207 U.S. Dist. LEXIS 62661
  (N.D. Cal. Aug. 24, 2007)................................................................................8

*Cal. Cooler, Inc. v. Loretto Winery, Ltd.*,
  774 F.2d 1451 (9th Cir. 1985)........................................................................11

*Campagnolo S.R.L. v. Full Speed Ahead, Inc.*,
  258 F.R.D. 663 (W.D. Wash. 2009)...........................................19, 20, 21, 22

*CKE Restaurant v. Jack in the Box, Inc.*,
  494 F. Supp. 2d 1139 (C.D. Cal. 2007)...................................................20, 21

*Clouthier v. County of Contra Costa*,
  No. 07-16703 U.S. App. LEXIS 884 (9th Cir. Jan. 14, 2010) ........................8

*Coca-Cola Co. v. Koke Co. of Am.*,
  254 U.S. 143 (1920) .......................................................................................22

*CTF Dev., Inc. v. Penta Hospitality, LLC*,
  No. C 09-02429 WHA, 2009 U.S. Dist. LEXIS 99538
  (N.D. Cal. Oct. 26, 2009) ..............................................................................19

*E.&J. Gallo Winery v. Andina Licores S.A.*,
  2006 U.S. Dist. LEXIS 47206 (E.D. Cal. 2006) ..........................................18

*Far Out Prods. v. Oskar*,
  247 F.3d 986 (9th Cir. 2001)............................................................14, 15, 16

*Fund of Funds, Ltd. v. First Am. Fund of Funds*,
  274 F. Supp. 517 (S.D.N.Y. 1967)................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAYE SCHOLER LLP

*Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*,
 989 F.2d 985 (8th Cir. 1993) ........................................................................18

*Hana Fin., Inc. v. Hana Bank*,
 500 F. Supp. 2d 1228 (C.D. Cal. 2007)........................................8, 9, 11, 12

*Harbor Ins. Co. v. Continental Bank Co.*,
 922 F.2d 357 (7th Cir. 1990) ........................................................................10

*Havana Club Holding, S.A. v. Galleon, S.A.*,
 1998 U.S. Dist. LEXIS 4065 (S.D.N.Y. 1998) ..............................................9

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
 276 F.3d 160 (3d Cir. 2001) ....................................................................20, 21

*In re Agric. Research & Tech. Group, Inc.*,
 916 F.2d 528 (9th Cir. 1990) ..........................................................................7

*In re Bose Corp.*,
 580 F.3d 1240 (Fed. Cir. 2009) ....................................................................13

*In re Steelbuilding.com*,
 415 F.3d 1293 (Fed. Cir. 2005) ....................................................................11

*Intellimedia Sports, Inc. v. Intellimedia Corp.*,
 43 U.S.P.Q.2d 1203 (TTAB, May 20, 1997) ................................................12

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
 985 F. Supp. 949 (C.D. Cal. 1997),
 *aff'd*, 194 F.3d 980 (9th Cir. 1999)..............................................................12

*Lowery v. Blue Steel Releasing, Inc.*,
 261 Fed. App'x 17 (9th Cir. 2007) ..................................................................9

*LVRC Holdings, LLC v. Brekka*,
 No. 2:05-CV-01026-KJD-GWF,
 2007 U.S. Dist. LEXIS 73662 (D.C. Nev. Sept. 28, 2007)............................8

*Mag Inst., Inc. v. JS Prods., Inc.*,
 595 F. Supp. 2d 1102 (C.D. Cal. 2008)........................................................23

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
 2007 U.S. Dist. LEXIS 90021 (W.D. Ky. 2007)...........................................18

*Panavision Intern., L.P. v. Toeppen*,
 945 F. Supp. 1296 (C.D. Cal. 1996),
 *aff'd*, 141 F.3d 1316 (9th Cir. 1998)............................................................12

*Qarbon.com Inc. v. eHelp Corp.*,
 315 F. Supp. 2d 1046 (N.D. Cal. 2004) ..................................................19, 23

*Re/Max Int'l, Inc. v. Equity Max Realty, Inc.*,
 2007 U.S. Dist. LEXIS 24713 (S.D. Cal. 2007) ...........................................11

*Reno Air Racing Assoc. v. McCord*,
 452 F.3d 1126 (9th Cir. 2006).......................................................................11

KAYE SCHOLER LLP

*Rivera v. Nat'l R.R. Passenger Corp.*,
  331 F.3d 1074 (9th Cir. 2003).........................................................................7

*Robi v. Five Platters*,
  918 F.2d 1439 (9th Cir. 1990)...................................................................8, 16

*San Juan Prods., Inc. v. San Juan Pools, Inc.*,
  849 F.2d 468 (10th Cir. 1988)......................................................................9

*Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7*,
  747 F.2d 1195 (8th Cir. 1984).....................................................................10

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006).......................................................................18

*Steinhardt Novelty Co. v. Arkay Infants Wear*,
  10 F.R.D. 321 (E.D.N.Y. 1950)..................................................................10

*W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*,
  377 F.2d 1001 (U.S.C.C.P.A. 1967)............................................................13

**<u>Statutes</u>**

15 U.S.C. § 1119...........................................................................................1, 8

15 U.S.C. § 1120...................................................................................1, 8, 17

Fed. R. Civ. P. 8(a) .....................................................................................10, 19

Fed. R. Civ. P. 9(b) .......................................................................................9, 10

Fed. R. Civ. P. 13(a) ..........................................................................................10

Fed. R. Civ. P. 56(c) ............................................................................................7

**<u>Other Authorities</u>**

1 McCarthy on Trademarks & Unfair Competition
  § 3:3 ................................................................................................................12

6 McCarthy on Trademarks & Unfair Competition
  § 31:84 ..............................................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAYE SCHOLER LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

ConsumerInfo.com, Inc. ("ConsumerInfo"), an Experian company, is the largest provider of online credit reports, credit scores, and credit-monitoring products in the United States.  ConsumerInfo owns the registered trademark FREECREDITREPORT.COM.  At that domain, ConsumerInfo offers a popular credit-monitoring product.  Consumers receive a trial membership in the credit monitoring product when they order their free credit report and score at FreeCreditReport.com.  If the consumer cancels the membership within the trial period, the consumer keeps his or her credit report and score without charge.

Defendants are the Canadian-based owners and operators of a variety of websites selling products ranging from teeth whiteners to weight loss teas.  In 2008, Defendants launched a new purported product line designed to compete with ConsumerInfo.  Using the website www.creditreportamerica.com, Defendants advertised that they would provide to consumers the same products offered by ConsumerInfo: instant credit reports, credit scores, and credit monitoring.  In fact, Defendants offered none of these products, and when consumers entered their credit card information at Defendants' site, they did not receive anything of value in exchange for Defendants' substantial charges.

Defendants lured consumers to www.creditreportamerica.com by ripping off ConsumerInfo's landing page trade dress, copying ConsumerInfo's banner ads, and using ConsumerInfo's federally registered trademarks, including FREECREDITREPORT.COM.  Defendants admit that they received millions of dollars in revenues over a nine-month period from their scheme.

In response to ConsumerInfo's filing of this lawsuit, Defendants asserted a single counterclaim, alleging "Fraudulent Registration of Trademark Under 15 U.S.C. §§ 1119, 1120," based on allegations that ConsumerInfo committed fraud on the U.S. Patent and Trademark Office ("PTO") in connection with its application to

1

1  register FREECREDITREPORT.COM.  (Statement of Uncontroverted Facts

2  ("SUF") Fact 14; Docket No. 6, Counterclaim at p. 24.)  Defendants seek

3  cancellation of ConsumerInfo's trademark registration and money damages.  (*Id.* p.

4  25.)  Defendants also assert a number of affirmative defenses, and most

5  prominently allege that ConsumerInfo's claims are barred by the doctrine of

6  unclean hands, based on the same allegations of fraud on the PTO underlying their

7  counterclaim.  (SUF 44.)

8        Recently, after the close of discovery, Defendants have taken the position

9  that their counterclaim encompasses an unstated cause of action for cancellation

10  based on general "deceptive misdescriptiveness," and in January 2010 filed a

11  separate new federal complaint against ConsumerInfo including similar allegations

12  in support of a false advertising claim.  Under basic rules of pleading, Defendants

13  cannot evade summary judgment by mischaracterizing their pleadings and asserting

14  new claims, never pled, on which ConsumerInfo did not conduct discovery.

15        Defendants' counterclaim and affirmative defenses fail as a matter of law

16  because the uncontroverted facts demonstrate that ConsumerInfo made no false

17  statements – much less intentionally false statements – to the PTO in connection

18  with its FREECREDITREPORT.COM application.   Accordingly, partial summary

19  judgment should be granted in ConsumerInfo's favor on Defendants' counterclaim

20  and affirmative defenses.

## II.   Facts

### A.   ConsumerInfo's FREECREDITREPORT.COM Brand

24        ConsumerInfo is an online marketing business that provides consumers with

25  a broad range of online credit-related products, including consumer credit reports,

26  credit scores, credit monitoring, and identity theft protection products.  (SUF at

27  ¶ 1.)  In January 1999, ConsumerInfo registered the domain

28  www.freecreditreport.com and began using that domain name and the mark

KAYE SCHOLER LLP

2

FREECREDITREPORT.COM as a brand name in connection with its credit reporting, credit scoring, credit monitoring, and identity theft protection products. (SUF at ¶ 2.)

When a consumer signs up at the freecreditreport.com website, the consumer receives a credit report, credit analyzers, other credit informational products, and in some cases a credit score, and is enrolled in a trial membership for ConsumerInfo's credit monitoring product.   (SUF at ¶ 3.)  If the consumer cancels his or her membership in the credit monitoring product before expiration of the trial period, the consumer keeps his or her credit report (and credit score if offered) free of charge.  (SUF at ¶ 4.)

**B.**     **Defendants' False Advertising and Infringement of ConsumerInfo's Intellectual Property Leads to this Lawsuit**

In August 2008, Defendants began advertising instant credit reports, credit scores, credit monitoring or credit-related products, and charging consumers for such products.  (SUF at ¶ 5.)  Defendants never actually delivered instant credit reports, scores, or credit monitoring.  (SUF at ¶ 6.)  This conduct is the heart of ConsumerInfo's false advertising claim under the Lanham Act.  (SUF at ¶ 7.)

In or around August 2008, ConsumerInfo discovered the website www.creditreportamerica.com, and that the landing page located at that website was substantially identical to one of ConsumerInfo's landing pages used at the domain www.freecreditreport.com.  (SUF at ¶ 8.)  On or about September 18, 2008, ConsumerInfo sent a cease and desist letter to defendant Jesse Willms concerning the infringing content of the creditreportamerica.com landing page.  (SUF at ¶ 9.)  Over the course of the fall of 2008, ConsumerInfo discovered additional infringing and wrongful conduct by Defendant Willms, including infringement of ConsumerInfo's FREECREDITREPORT.COM and TRIPLE ADVANTAGE trademarks.  (SUF at ¶ 10.)  During the fall of 2008, ConsumerInfo sent three additional cease and desist letters to Defendant Willms and his counsel concerning

3

1    the various infringing acts.  (SUF at ¶ 11.)

2        When the infringement and false advertising outlined in ConsumerInfo's

3    cease and desist letters continued, ConsumerInfo filed this action on January 13,

4    2009, alleging claims for false advertising under the Lanham Act, trademark

5    infringement of ConsumerInfo's FREECREDITREPORT.COM mark, and

6    infringement of ConsumerInfo's website trade dress.  (SUF at ¶ 12.)  On June 25,

7    2009, ConsumerInfo amended its complaint to add claims for copyright

8    infringement of its banner advertisements.  (SUF at ¶ 13.)

9    **C.**    **Defendants File a Counterclaim for Cancellation of the**

10        **FREECREDITREPORT.COM Registration Based On Alleged Fraud on**

11        **the PTO**

12        On February 19, 2009, Defendants filed a counterclaim against

13    ConsumerInfo for cancellation of ConsumerInfo's FREECREDITREPORT.COM

14    trademark.  (SUF at ¶ 14 .)  The basis for Defendants' counterclaim is that

15    ConsumerInfo allegedly committed fraud on the PTO in connection with its

16    application for the FREECREDITREPORT.COM mark.  (SUF at ¶ 15.)   The

17    counterclaim is based on allegations that ConsumerInfo made the following

18    fraudulent statements to the PTO: (1) ConsumerInfo had engaged in "substantially

19    exclusive" use of the FREECREDITREPORT.COM mark  (Docket No. 6,

20    Counterclaim at ¶ 20); (2) there was not a likelihood of confusion between

21    FREECREDITREPORT.COM and CREDITREPORTS.COM (*id.* at ¶ 21); (3)

22    ConsumerInfo "made exaggerated and unsupported claims regarding the strength of

23    consumer recognition" of the Mark (*id.* at ¶ 24); (4) ConsumerInfo did not tell the

24    PTO that its mark was "deceptively misdescriptive" because, if consumers who

25    signed up at the freecreditreport.com website did not cancel their 30 day trial

26    membership in ConsumerInfo's credit monitoring product within the trial period,

27    they would be charged a membership fee for that product (*id.* at ¶¶ 25-26); and (5)

28

KAYE SCHOLER LLP

4

ConsumerInfo did not reference in its trademark application papers that the FTC had filed a lawsuit in 2005 against ConsumerInfo (*id.* at ¶ 28).  (SUF at ¶ 16.)

**D.     ConsumerInfo's FREECREDITREPORT.COM Trademark Application**

On February 20, 2006, ConsumerInfo filed an application with the United States Patent & Trademark Office ("PTO") for registration of the trademark FREECREDITREPORT.COM.  (SUF at ¶ 17.)   In its application, ConsumerInfo stated that the FREECREDITREPORT.COM mark "has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use in commerce for at least the five years immediately before [February 20, 2006]."  (SUF at ¶ 18.)  To ConsumerInfo's knowledge, no party other than ConsumerInfo and its authorized licensees had engaged in legal use of the FREECREDITREPORT.COM mark.  (SUF at ¶ 38.)

ConsumerInfo submitted specimens of use with its application, consisting of screenshots of the freecreditreport.com website landing page. (SUF at ¶ 19.)  On the face of the specimens, ConsumerInfo disclosed that the consumers would be enrolled in a "free 30-day trial" in ConsumerInfo's credit monitoring product when they signed up for their free credit report and credit score.  (SUF at ¶ 20.)

On August 12, 2006, the PTO issued an Office Action refusing to register FREECREDITREPORT.COM on two grounds: (1) a likelihood of confusion with the previously registered mark CREDITREPORTS.COM; and (2) the descriptive nature of the mark.  (SUF at ¶ 21.)

The PTO invited ConsumerInfo to provide additional evidence to support its claim that the FREECREDITREPORT.COM mark was distinctive, and noted the PTO would consider the following factors in assessing whether the evidence of distinctiveness was sufficient: "(1) how long [ConsumerInfo] has used the mark; (2) the type and amount of advertising the mark; and (3) [ConsumerInfo's] efforts to associate the mark with the goods and/or services."  (SUF at ¶ 22.)  The PTO specifically stated that ConsumerInfo could respond to the refusal to register "by

5

submitting evidence and arguments in support of registration." (SUF at ¶ 23.)

In February 2007 — in response to the Office Action — ConsumerInfo submitted evidence and legal arguments that there was no likelihood of confusion between the marks FREECREDITREPORT.COM and CREDITREPORTS.COM. (SUF at ¶ 24 .)  Specifically, ConsumerInfo stated to the PTO that (1) the CREDITREPORTS.COM trademark was different in sight, sound and meaning from the FREECREDITREPORT.COM mark; and (2) that the CREDITREPORTS.COM mark and the FREECREDITREPORT.COM mark co-existed without confusion. (SUF at ¶ 25.)

ConsumerInfo also submitted to the PTO evidence and legal arguments in support of its position that the FREECREDITREPORT.COM mark had acquired distinctiveness.   (SUF at ¶ 26.)  Specifically, ConsumerInfo submitted evidence of its substantial marketing and advertising efforts for its products marketed under the FREECREDITREPORT.COM mark, and its success from those marketing advertising efforts in terms of sales and revenues. (SUF at ¶ 27.)  ConsumerInfo also included in its submissions the results from consumer surveys conducted by the Gallup Organization showing that, by June 2005, 53% of Americans were at least somewhat aware of FREECREDITREPORT.COM, and that by August 2006 that number had grown to 58%. (SUF at ¶ 28.)

In its submissions, ConsumerInfo informed the PTO that although consumers who signed up at the freecreditreport.com website were provided an initial credit report free of charge, ConsumerInfo generated millions of dollars in revenues annually for its products offered under the FREECREDITREPORT.COM mark. (SUF at ¶ 29.)  ConsumerInfo also provided the PTO with a list of 500 domain names then in existence incorporating the words "credit" and "report," including domains incorporating the word "free" in addition to those words. (SUF at ¶ 30.)

Because ConsumerInfo did not believe — and still does not believe — it was relevant to its trademark application, ConsumerInfo did not include in its PTO

KAYE SCHOLER LLP

submissions that the FTC had filed an action against ConsumerInfo in 2005 (the "FTC Action"). (SUF at ¶ 31.) The FTC Action, which related to advertisements ConsumerInfo had run prior to 2004 for various websites, including consumerinfo.com and freecreditreport.com, was settled in 2005, without any adjudication on the merits, nor any admission of liability by ConsumerInfo, through a stipulated injunction. (SUF at ¶ 32.) ConsumerInfo entered a second stipulated injunction with the FTC in 2007, again without any adjudication on the merits or admission of liability. (SUF at ¶ 33.)

Each of ConsumerInfo's statements to the PTO were made in good faith, ConsumerInfo believed that each of the statements were accurate, and ConsumerInfo continues to believe that each of the statements were accurate. (SUF at ¶ 34. )

ConsumerInfo's last submission to the PTO in support of its application for registration of the FREECREDITREPORT.COM mark was in October, 2007. (SUF at ¶ 35.) On May 13, 2008, the PTO issued a registration for ConsumerInfo's FREECREDITREPORT.COM trademark on the Principal Register. (SUF at ¶ 36.)

### III.   The Standard on Summary Judgment

Summary judgment is proper where the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Partial summary judgment may be granted on less than all claims in an action. Fed. R. Civ. P. 56(d).

A "mere scintilla" of evidence will not defeat a proper motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the opposing party's "evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249-50. Vague affidavits or factually unsupported, conclusory allegations will not avoid summary judgment. *In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528, 536 (9th Cir. 1990); *Rivera v. Nat'l R.R. Passenger*

*Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

Similarly, vague, factually unsupported, conclusory statements in expert reports will not avoid summary judgment.  *Clouthier v. County of Contra Costa*, No. 07-16703, 2010 U.S. App. LEXIS 884, at * 48-49 (9th Cir. Jan. 14, 2010) (finding expert's conclusory statements insufficient to avoid summary judgment); *LVRC Holdings, LLC v. Brekka*, No. 2:05-CV-01026-KJD-GWF, 2007 U.S. Dist. LEXIS 73662, at *10-11 (D. Nev. 2007) (granting summary judgment because expert's vague assertions did not constitute concrete, non-speculative evidence sufficient to raise genuine issue of material fact); *Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, No. C-01-20813 RMW, 207 U.S. Dist. LEXIS 62661, at * 34-35 (N.D. Cal. 2007) (finding expert's vague statements failed to rebut defendant's evidence that it did not misappropriate plaintiff's trade secrets).

## IV.   Defendants' Counterclaim Fails As A Matter of Law

Defendants allege a single counterclaim in this action, for "Fraudulent Registration of Trademark under 15 U.S.C. §§1119, 1120."  (SUF 14; Docket No. 6, Counterclaim at p. 24).   To establish this counterclaim, Defendants must prove: (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the intent to induce reliance thereon; (4) reasonable reliance thereon; and (5) damages proximately resulting from the reliance.  *Robi v. Five Platters*, 918 F.2d 1439, 1444 (9th Cir. 1990).  The Defendants' burden of proving fraudulent procurement of a registration is a "heavy" one.  *Id.*; *see also Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1233-34 (C.D. Cal. 2007) ("The defense [of fraud on the PTO in a trademark action] is disfavored, however, and carries a heavy burden of proof.").

Defendants allege that ConsumerInfo made the following fraudulent statements to the PTO: (1) ConsumerInfo had engaged in "substantially exclusive" use of the FREECREDITREPORT.COM mark  (Docket No. 6, Counterclaim at

8

KAYE SCHOLER LLP

¶ 20); (2) there was not a likelihood of confusion between FREECREDITREPORT.COM and CREDITREPORTS.COM (*id.* ¶ 21); (3) ConsumerInfo "made exaggerated and unsupported claims regarding the strength of consumer recognition" of the Mark (*id.* ¶ 24); (4) ConsumerInfo did not tell the PTO that its mark was deceptively misdescriptive because, if consumers who signed up at the freecreditreport.com website did not cancel their 30 day trial membership in ConsumerInfo's credit monitoring product within the trial period, they would be charged a membership fee for that product (*id.* ¶¶ 25-26); and (5) ConsumerInfo did not reference in its trademark application papers that the FTC had filed a lawsuit against ConsumerInfo (*id.* ¶ 28).  (SUF ¶ 16.)

Defendants are required to allege fraud on the PTO with particularity under Rule 9(b).  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *San Juan Prods., Inc. v. San Juan Pools, Inc.*, 849 F.2d 468, 472 (10th Cir. 1988) ("[F]raud in the procurement [of a trademark] must be alleged with specificity as required by Rule 9(b), both in federal court and in PTO administrative proceedings."); *Hana Fin.*, 500 F. Supp. 2d at 1234 (applying Rule 9 to dismiss counterclaim for fraud on the PTO); *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950, 954 (N.D. Cal. 2005) ("[Rule 9(b)'s] heightened pleading requirement applies to claims of fraud in the context of trademark cancellation proceedings."); *Havana Club Holding, S.A. v. Galleon, S.A.*, 1998 U.S. Dist. LEXIS 4065, *10 (S.D.N.Y. 1998) (dismissing Lanham Act counterclaim alleging fraud on the PTO for failure to meet Rule 9(b)); 6 McCarthy on Trademarks & Unfair Competition § 31:84.

Accordingly, Defendants cannot avoid summary judgment on the basis of purportedly fraudulent statements not included in their counterclaim.  *Lowery v. Blue Steel Releasing, Inc.*, 261 Fed. App'x 17, at *19-20 (9th Cir. 2007) (affirming summary judgment on fraud claims because (1) no evidence supported claim as pled, and (2) new theory of fraud asserted in opposition to summary judgment was

9

not included in complaint and therefore was barred by Rule 9).

Moreover, Defendants waived any counterclaims not asserted along with their answer.  Fed. R. Civ. P. 13(a) (requiring compulsory counterclaims to be pled with answer); *Harbor Ins. Co. v. Continental Bank Co.*, 922 F.2d 357, 360 (7th Cir. 1990) ("A compulsory counterclaim is compulsory; unless set forth in the answer to the complaint it is waived.").  Furthermore, Defendants cannot assert a different counterclaim now, after the close of discovery, other than the single counterclaim they actually alleged, for fraud on the PTO.  Fed. R. Civ. P. 8(a) (requiring pleading setting forth claim for relief to contain "a short and plain statement of the claim . . ."); *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7*, 747 F.2d 1195, 1198 (8th Cir. 1984) ("If a counterclaim is to be asserted, it should be designated and pleaded as such."); *Steinhardt Novelty Co. v. Arkay Infants Wear*, 10 F.R.D. 321, 323 (E.D.N.Y. 1950) (striking counterclaims for failure to meet the notice pleading requirements of Rule 8).

Indeed, Defendants recently filed a new complaint against ConsumerInfo alleging, for the first time, that ConsumerInfo is liable for false advertising and has used its FREECREDITREPORT.COM trademark in a misdescriptive manner. (SUF at ¶ 37.)  Defendants' new complaint, advancing new legal theories after the close of discovery in this action, amounts to an admission that, insofar as Defendants seek relief based on allegations of general "misdescriptiveness" beyond their current counterclaim for fraud on the PTO, any such claim is beyond the purview of the current pleadings.

**A.     Defendants' Counterclaim Fails as a Matter of Law Because ConsumerInfo Made No Intentional False Statements to the PTO**

> **1.   ConsumerInfo's Statement that It "Substantially Exclusively" Used the Mark Is Not False, Much Less Intentionally False**

To ConsumerInfo's knowledge, no party other than ConsumerInfo and its authorized licensees had engaged in legal use of the FREECREDITREPORT.COM mark when ConsumerInfo applied for and pursued registration.  (SUF at ¶ 39.)  Defendants point to third party use of terms such as "free credit report" and "creditreport.com."  (SUF at ¶ 40.)   This contention fails on at least two grounds.  *First*, ConsumerInfo's mark is FREECREDITREPORT.COM — not FREE CREDIT REPORT or CREDITREPORT.COM — and it must be viewed "as a whole."  *Reno Air Racing Assoc. v. McCord*, 452 F.3d 1126, 1135 (9th Cir. 2006) ("[T]he district court correctly focused its validity inquiry on the trademark as a whole . . . ."); *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985) ("[T]he validity of a trademark is to be determined by viewing the trademark as a whole."); *Re/Max Int'l, Inc. v. Equity Max Realty, Inc.*, 2007 U.S. Dist. LEXIS 24713 (S.D. Cal. 2007) ("In the Ninth Circuit, a trademark may contain elements that are common words and still be protectable. . . . A trade or service mark must be examined as a whole, not dissected and examined in pieces.") (citations omitted).  Furthermore, the ".com" component of ConsumerInfo's mark cannot be ignored because it connotes "Internet-related distinctiveness, intimating some 'Internet feature' of the item."  *In re Steelbuilding.com*, 415 F.3d 1293, 1297 (Fed. Cir. 2005).

*Second*, other parties' uses of certain terms such as "free credit report" and "creditreport.com"  — or even "freecreditreport.com" — are immaterial to ConsumerInfo's statement that it had superior *trademark* rights to any other party.  *Hana Financial*, 500 F. Supp. 2d at 1235 ("The applicant need not 'disclose those

KAYE SCHOLER LLP

persons whom he may have heard are using the mark if he feels that the rights of such others are not superior to his.'"). Indeed, in the absence of a legal determination or agreement that another person has superior rights to the applicant, there can be no finding of a fraudulent statement:

> [I]f the other person's rights in the mark, vis-à-vis the applicant's rights, are not known by the applicant to be superior or clearly established, e.g., by court decree or prior agreement of the parties, then the applicant has a reasonable basis for believing that no one else has the right to use the mark in commerce, and the applicant's averment of that reasonable belief in its application declaration or oath is not fraudulent.

*Intellimedia Sports, Inc. v. Intellimedia Corp.*, 43 U.S.P.Q.2d 1203, 1207 (TTAB, May 20, 1997); *Hana Financial*, 500 F. Supp. 2d at 1234 (following *Intellimedia*).

It is axiomatic that use of similar terms by third parties does not equate with use of similar terms in a trademark sense. *See* 1 McCarthy on Trademarks & Unfair Competition § 3:3 ("The requirement that to be infringing, an accused use must be used as a trademark is not explicit in the Lanham Act. However, unless the accused use is a trademark use, likelihood of confusion is highly unlikely."). It is also well-established that use of a mark in a domain name, alone, does not constitute use of that mark as a trademark. *Panavision Intern., L.P. v. Toeppen*, 945 F. Supp. 1296, 1303 (C.D. Cal. 1996), *aff'd*, 141 F.3d 1316 (9th Cir. 1998) ("Registration of a trademark as a domain name, without more, is not a commercial use of the trademark and is therefore not within the prohibitions of [§43(c) of] the [Lanham] Act."); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 956 n.3, 957 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir. 1999) ("[R]egistration of a domain name with [a registrar], without more, does not constitute use of the name as a trademark. . . . [S]omething more than the registration of the name is required before the use of a domain name is infringing."); *Acad. of Motion Picture Arts & Scis. v. Network Solutions Inc.*, 989 F. Supp. 1276, 1279 (C.D. Cal. 1997) ("The mere registration of a domain name does not constitute a commercial use."); *Brookfield Communications, Inc. v. W. Coast*

*Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) (finding mere reservation of a term as a domain name with the intent to use it commercially does not establish "use" of the designation as a trademark); *555-1212.com, Inc. v. Communication House Int'l, Inc.*, 157 F. Supp. 2d 1084 (N.D. Cal. 2001) (reasoning "mere reservation of a domain name" is not infringement).

Moreover, Defendants' argument that ConsumerInfo intentionally defrauded the PTO by making its statement of substantially exclusive use is belied by the fact that ConsumerInfo affirmatively disclosed to the PTO the existence of a variety of websites that include the words "free," "credit," and "report."  (SUF at ¶ 30.).  *See W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 377 F.2d 1001, 1004 (U.S.C.C.P.A. 1967) (looking to specimens submitted to PTO by applicant to conclude no fraud existed where specimens indicated applicant used mark in connection with imitation, not real, leather).

### 2. ConsumerInfo's Statements Regarding CREDITREPORTS.COM Were Not False

Likewise, ConsumerInfo's statements to the PTO that the CREDITREPORTS.COM trademark was different in "sight, sound and meaning" from the FREECREDITREPORT.COM mark, and that the CREDITREPORTS.COM mark and the FREECREDITREPORT.COM mark co-existed without confusion (Docket No. 6, Counterclaim ¶ 21), were accurate factual statements on an issue of law.  The PTO invited such "arguments in support of registration" in response to the initial denial of ConsumerInfo's application.  (SUF at ¶ 23.)  These were not misstatements of fact, much less intentionally false statements of fact.  Accordingly, these statements cannot support a claim of fraud on the PTO.  *See In re Bose Corp.*, 580 F.3d 1240, 1244-45 (Fed. Cir. 2009) (limiting fraud on the PTO claims regarding trademarks to knowing, willful misstatements of fact).

KAYE SCHOLER LLP

### 3. ConsumerInfo's Statements Regarding the Strength of Consumer Recognition of FREECREDITREPORT.COM Were Not False

Moreover, ConsumerInfo did not make "exaggerated and unsupported claims regarding the strength of consumer recognition" of the FREECREDITREPORT.COM mark.  Rather, ConsumerInfo provided the PTO accurate information about its extensive marketing activities and its sales and revenues from its use of the Mark.  (SUF at ¶¶ 27, 34.)  ConsumerInfo also accurately provided the results of studies conducted by the Gallup Organization concerning consumer familiarity with the Mark.  (SUF at ¶¶ 28, 34.)

### 4. ConsumerInfo's Statements Regarding Its Products Were Not False

Similarly, ConsumerInfo made no false statements to the PTO concerning its products marketed under the Mark.  It is undisputed that consumers do get a free credit report through the FreeCreditReport.com website, and that if consumers cancel their credit monitoring membership within the trial period, they still keep their credit report (and credit score) without charge.  (SUF at ¶¶ 3, 4.)  Moreover, it is undisputed that ConsumerInfo informed the PTO that it charged consumers for products offered under the Mark; indeed, ConsumerInfo's 2(f) declaration notes over $50 million in annual sales under the Mark.  (SUF at ¶ 29.)  Accordingly, ConsumerInfo made no false statements concerning the products sold under the mark.

### 5. ConsumerInfo Had No Duty to Reference the Irrelevant FTC Action in Its Application

Finally, while Defendants allege ConsumerInfo somehow committed fraud by failing to inform the PTO about the FTC Action, under controlling caselaw ConsumerInfo had no such duty.  In *Far Out Prods. v. Oskar*, 247 F.3d 986 (9th Cir. 2001), one party, Goldstein, filed an incontestability affidavit with the PTO concerning the trademark WAR, used as a rock band's name.  In that declaration, Goldstein swore "that Far Out Productions was the owner of the mark[,] . . . that the

14

KAYE SCHOLER LLP

mark had been in continuous use for five consecutive years . . . [and] that there had been no final decision adverse to the registrant's claim to ownership of the mark." *Id.* at 991.  An earlier action in Florida state court resulted in a judgment declaring that the same trademark was procured by fraud perpetrated on other members of the band.  *Id.*

In the case before the Ninth Circuit, appellants argued Goldstein's incontestability affidavit was false and constituted fraud on the PTO, in light of the Florida judgment declaring that the trademark was procured by fraud, which Goldstein did not disclose in his affidavit.  *Id.* at 996.  The Ninth Circuit rejected this contention, reasoning: "Even if the Florida judgment were a final adverse decision, Goldstein can only be adjudicated to have filed a fraudulent oath if he acted with scienter.  If Goldstein had a good faith belief that the Florida judgment was irrelevant, he cannot be found to have submitted a false affidavit."  *Id.* Because "appellants did not present any evidence . . . that Goldstein acted in bad faith or with knowledge that he should have disclosed the Florida judgment" the Ninth Circuit affirmed the district court's denial of appellants' motion for summary judgment and grant of Goldstein's motion for summary judgment.  *Id.* at 996, 999.

In *Far Out*, unlike this case, there actually was an adjudication on the merits regarding the trademark at issue.  Yet the Ninth Circuit ruled Goldstein did not commit fraud by submitting his incontestibility affidavit without reference to that judgment.  In this case, by contrast, the FTC Action that Defendants contend ConsumerInfo was required to disclose to the PTO (1) did not concern ConsumerInfo's trademark rights, and (2) never was adjudicated on the merits in any way.  (SUF at ¶¶ 32, 33.)  In order to raise an issue of fact concerning this alleged fraud on the PTO, Defendants would have to adduce evidence showing ConsumerInfo omitted any reference to the FTC Action knowing that its existence directly contradicted a specific statement that ConsumerInfo made.  *Far Out*, 247 F.3d at 996.  Defendants cannot meet this burden.

KAYE SCHOLER LLP

Just as appellants in *Far Out* failed to produce evidence that Goldstein "acted with scienter" in submitting his incontestability affidavit to the PTO, so too are Defendants in this action unable to produce evidence that ConsumerInfo lacked "a good faith belief that the" FTC Action "was irrelevant" to the FREECREDITREPORT.COM application. *Id.* ConsumerInfo has submitted evidence in support of this motion showing that, at the time ConsumerInfo submitted its declaration to the PTO in response to the PTO's initial rejection of ConsumerInfo's application, ConsumerInfo did not believe the FTC Action was relevant to the proceedings. (SUF at ¶ 31.) Because the FTC Action did not concern ConsumerInfo's trademark rights, and was resolved without any admissions or adjudication concerning ConsumerInfo's liability or trademark rights (SUF at ¶¶ 32, 33), ConsumerInfo's belief that the FTC Action was not relevant to its trademark application was eminently reasonable.

Defendants have no legal authority supporting the proposition that ConsumerInfo was required to reference the FTC Action in its PTO submissions. ConsumerInfo did not then, nor does it now, believe the FTC Action had any bearing on ConsumerInfo's trademark rights, and Defendants have no evidence (because none exists) to the contrary.

**B.**     **Defendants' Counterclaim Also Fails as a Matter of Law Because There Is No Evidence of Reliance by the PTO**

In addition to the lack of any evidence showing ConsumerInfo made fraudulent statements to the PTO during the trademark application process, Defendants cannot show that the PTO relied on any purported fraudulent statements in issuing the FREECREDITREPORT.COM registration. *Robi v. Five Platters*, 918 F.2d 1439, 1444 (9th Cir. 1990).

With regard to third party uses of "free credit report," ConsumerInfo affirmatively notified the PTO of 500+ domains containing two or more of those words (SUF at ¶ 30), and there is no evidence to support the notion that the PTO

16

would have viewed additional third party uses of the words as relevant to ConsumerInfo's trademark application.  Likewise, with regard to CREDITREPORTS.COM, the PTO made its own assessment of ConsumerInfo's legal argument that this mark differed in "sight, sound, and meaning" from FREECREDITREPORT.COM, and there is no evidence to suggest that the PTO failed to determine, for itself, whether or not ConsumerInfo's arguments in that regard were valid and persuasive.

The PTO also made its own independent assessment of whether ConsumerInfo's evidence as to consumer recognition of the trademark — which included accurate evidence of marketing and advertising activities, revenues, and the Gallup studies — persuasively established secondary meaning supporting registration of the mark.  In addition, it is abundantly clear that the PTO had before it the evidence concerning ConsumerInfo's sales of products under the mark, and the PTO could — and did — assess for itself whether the inclusion of the word "free" in the Mark rendered the Mark "misdescriptive."  Finally, there is absolutely no evidence that the PTO would have refused the application if ConsumerInfo for some reason had referenced the irrelevant FTC Action in its trademark submissions.

**C.** **Defendants' Counterclaim for Monetary Damages Fails as a Matter of Law**

Defendants cannot show they were injured in any way by the registration of FREECREDITREPORT.COM.  Indeed, Defendants' unsupported assertion that they have suffered damages attributable to this registration (Counterclaim ¶ 32) flatly contradicts their assertion that they made no money from the sale of credit-related products whatsoever.  (SUF at ¶ 43.)

Defendants' claim for money damages for alleged fraud on the PTO, under 15 U.S.C. § 1120, fails for the additional reason that Defendants admit they were not even in the business of advertising credit-related products when ConsumerInfo made its various submissions to the PTO.  *Gilbert/Robinson, Inc. v. Carrie*

KAYE SCHOLER LLP

*Beverage-Missouri, Inc.*, 989 F.2d 985, 990-91 (8th Cir. 1993) (dismissing counterclaim for damages arising from fraud on the PTO in trademark case because the counterclaimant "did not exist . . . when the fraud occurred"); *Aureflam*, 375 F. Supp. 2d at 954 ("[A]s the parties do not dispute that PHP incorporated seven years after the mark was registered, PHP cannot demonstrate injury as a direct result of Aureflam's registration"); *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 2007 U.S. Dist. LEXIS 90021 (W.D. Ky. 2007) (recognizing such claims fail where "at the time of the fraudulent registration" the claimant "did not even exist"). Insofar as Defendants' damages counterclaim seeks fees, expenses, or other damages resulting from this litigation or from ConsumerInfo's cease and desist demands, the claim is barred by the litigation privilege. *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1079 n.18 (D. Or. 2008) ("To the extent that Payless' unclean hands/trademark misuse-antitrust defenses are premised upon Adidas' aggressive trademark enforcement efforts, those claims are barred under the Noerr-Pennington doctrine."); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936-38 (9th Cir. 2006) (extending immunity to litigation-related activities prior to formal commencement of litigation); *E.&J. Gallo Winery v. Andina Licores S.A.*, 2006 U.S. Dist. LEXIS 47206, *13-14 (E.D. Cal. 2006) (holding litigation privilege barred unfair competition claim based on litigation-related conduct).

## V.  <u>Defendants' Affirmative Defenses Fail</u>

In their respective answers to the First Amended Complaint, Defendants assert ten affirmative defenses: failure to state a cause of action, unclean hands, failure to mitigate damages, superseding events and acts of third parties, in pari delicto, allocation of fault, laches, waiver and estoppel, abandonment and fair use.

### A.  <u>Unclean Hands</u>

Defendants base their second affirmative defense of unclean hands on the same purported fraud on the PTO alleged in their counterclaim.  (SUF at ¶ 44.)

18

KAYE SCHOLER LLP

Defendants' failure to allege any other basis for this defense precludes any assertion at this late date that it is based on some conduct other than fraud on the PTO. *See Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049-50 (N.D. Cal. 2004) (applying Rule 8 and striking unclean hands defense for failure to allege a factual basis for the defense); *CTF Dev., Inc. v. Penta Hospitality, LLC*, No. C 09-02429 WHA, 2009 U.S. Dist. LEXIS 99538, at * 21-24 (N.D. Cal. Oct. 26, 2009) (striking unclean hands defense because it was insufficiently pled and did not provide plaintiff fair notice of the defense).  Because the defense is based on the same allegations of fraud on the PTO as Defendants' counterclaim, it fails for the same reasons.

Moreover, to the extent that Defendants may now argue (improperly) that their unclean hands defense rests on allegations elsewhere in their pleadings that ConsumerInfo falsely advertised products under its trademark, even if Defendants could prove the facts underlying this defense — which they cannot — these allegations cannot support an unclean hands defense, as they are not directly related to ConsumerInfo's allegations concerning Defendants' false advertising and infringement, and do not affect the equities between the parties.  Allegations of "misconduct in the abstract" cannot support an unclean hands defense, and Defendants have not established any conduct by ConsumerInfo that could insulate them from liability for their intentional, wrongful conduct.  *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663, 666 (W.D. Wash. 2009).

In *Campagnolo*, plaintiff alleged defendant's advertisements made false statements concerning plaintiff's products — bicycle cranksets.  Defendant asserted an unclean hands defense premised on plaintiff's allegedly "systematic false advertising" concerning its own cranksets.  *Id.*  The court granted plaintiff's motion to strike the unclean hands defense, reasoning defendant:

> mistakenly assumes that because the subject matter of the instant dispute is the weight of the parties' respective cranksets, any and all conduct of Campagnolo with respect to its crankset is fair game. . . .

19

KAYE SCHOLER LLP

[T]he unclean hands defense does not stretch that far.  Instead, "[t]he misconduct which brings the clean hands doctrine into operation must relate directly to the transaction upon which the complaint is made, i.e., *it must pertain to the very subject matter involved and affect the equitable relations between the litigants*." . . . Therefore in the instant case, FSA's claims would have to directly relate to Campagnolo's allegations regarding FSA's misrepresentations about Campagnolo's cranksets.  This is the subject matter of this lawsuit.  General allegations regarding Campagnolo's prior history regarding its own advertisements are not the subject matter of this lawsuit.

*Id.* (citation omitted) (italics in original).

In *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 164 (3d Cir. 2001), plaintiff asserted defendant violated the Lanham Act by running deceptive advertisements containing false statements concerning plaintiff's healthcare plan. Defendant contended plaintiff's own advertisements, which used wording similar to defendant's, insulated defendant from liability under the doctrine of unclean hands. *Id.* at 173.  The court disagreed, reasoning:

The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation. . . . Courts, however, do not close their doors when plaintiff's misconduct has "no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication." . . . The nexus "between the misconduct and the claim must be close." . . .

. . . . Highmark's inappropriate use of a term in its 1999 advertisement does not excuse current deceptive and misleading advertisements to the public.

*Id.* at 174 (citation omitted).

Similarly, in *CKE Restaurant v. Jack in the Box, Inc.*, 494 F. Supp. 2d 1139, 1147 (C.D. Cal. 2007), plaintiff pursued a false advertising claim based on defendant's advertisements that falsely implied plaintiffs' heavily advertised "angus" hamburgers were made from cows' anuses.  Defendant asserted an unclean hands defense based on plaintiffs' own advertisements, which defendant asserted used "the exact same tongue-in-cheek style" — including advertisements suggesting that chicken "nuggets" refer to testicles.  *Id.*  The court rejected

20

KAYE SCHOLER LLP

application of the unclean hands defense because plaintiffs' advertisements did not

"'relate[] to the subject matter of [plaintiffs'] claims'":

> unlike Defendant's commercial, the message of Plaintiffs' nuggets commercial is that nuggets do not come from a body part of a chicken. Thus, Plaintiffs' commercial denies any implication that their competitors' nuggets come from testicles.  This is inherently different than Defendant's commercials, which potentially imply that an Angus burger is made from an unsavory cut of beef.

*Id.*

Just as the *Campagnolo*, *Highmark*, and *CKE* courts held that alleged false advertising by plaintiffs could not support defendants' unclean hands defenses in those false advertising cases, so too are Defendants in this case unable to insulate themselves from liability for their blatant false advertising by alleging that ConsumerInfo ran false advertisements of a different nature in a different context.

Defendants allege ConsumerInfo's advertisements were false in that, at some point prior to 2004, ConsumerInfo allegedly failed to include proper disclosures concerning monthly charges that would accrue to consumers who ordered a free credit report through FreeCreditReport.com but failed to cancel their credit monitoring membership within the trial period.  (Counterclaim ¶ 26.)  In this case, by contrast, ConsumerInfo's false advertising claims are rooted in Defendants' falsely advertising that they would provide consumers instant credit reports, credit scores, and credit monitoring.  (SUF at ¶ 7.)  ConsumerInfo's infringement claims are based on Defendants' copying of ConsumerInfo's copyrighted banner advertisements and protectable  trade dress, and unauthorized use of ConsumerInfo's trademarks.  (SUF at ¶¶ 47, 49,51.)

Neither the FTC nor any other party ever accused ConsumerInfo of failing to provide credit reports, scores, and monitoring.  (SUF at ¶¶ 45, 46.)  Nor have Defendants alleged — much less produced evidence — that ConsumerInfo copied its advertisements or website trade dress from Defendants or from another third party.  (SUF at ¶¶ 48, 50, 52.)  Therefore, Defendants have no basis for an unclean

21

KAYE SCHOLER LLP

KAYE SCHOLER LLP

hands defense against ConsumerInfo's false advertising, trademark infringement, trade dress infringement, or copyright infringement claims.  Defendants' allegations concerning the FTC action and related allegations of false advertising by ConsumerInfo do not "pertain to the very subject matter involved" in ConsumerInfo's allegations, nor do Defendants' allegations "affect the equitable relations between the litigants."  *Campagnolo*, 258 F.R.D. at 666.

Furthermore, ConsumerInfo's FREECREDITREPORT.COM trademark application submissions and the FTC litigation occurred years before ConsumerInfo filed this action, and for this separate reason cannot support an unclean hands defense.  Indeed, Defendants only allege inadequate disclosures by ConsumerInfo at some vague time period through December 2003.  (Counterclaim ¶ 26; *see also id.* ¶ 27 ("ConsumerInfo's use of the Disputed Mark during this time period . . . .").) ConsumerInfo's position "must be judged by the facts as they were when the suit was begun, not by the facts of a different condition and an earlier time."  *Coca-Cola Co. v. Koke Co. of Am.*, 254 U.S. 143, 147 (1920); *see also Fund of Funds, Ltd. v. First Am. Fund of Funds*, 274 F. Supp. 517 (S.D.N.Y. 1967) ("Since an injunction speaks as of the future and since at the time injunctive relief is here granted plaintiffs have settled any disagreements they had with S.E.C. respecting S.E.C.'s jurisdiction over their activities in this country, the doctrine of unclean hands should not be applied . . . .").

**B.   <u>Defendants' First and Third Through Tenth Affirmative Defenses Fail</u>**

Defendants' other affirmative defenses merit relatively little discussion. While meeting and conferring on this motion, Defendants' counsel stated the fifth and sixth affirmative defenses of *in pari delicto* and allocation of fault are based on the same allegations supporting their unclean hands defense (SUF at ¶ 44), so these defenses fail to for the same reasons (to the extent they properly can be based on allegations of fraud on the PTO).  These defenses, like all of Defendants' affirmative defenses other than unclean hands, are pled in so conclusory a manner

that they fail to meet the notice pleading requirements of Rule 8 and should be dismissed for that reason, in addition to the lack of evidence supporting them. Clear authority supports dismissing Defendants' eighth affirmative defense of "Waiver and Estoppel," in particular, on this basis alone. *Qarbon.com*, 315 F. Supp. 2d at 1049-50 (striking affirmative defenses of waiver, estoppel, and unclean hands because defendant simply referred to those doctrines without pleading any factual basis); *Mag Inst., Inc. v. JS Prods., Inc.*, 595 F. Supp. 2d 1102, 1108-10 (C.D. Cal. 2008) (dismissing affirmative defenses of estoppel and unclean hands for failure to plead sufficient facts). While meeting and conferring, Defendants asserted their eighth defense, as well as their seventh and ninth defenses of laches and abandonment, are premised on a purported failure by ConsumerInfo to police its mark by suing third parties using similar terms such as "freecreditreport" and "free credit report." (Maya Decl. ¶ 26.) As set forth above, ConsumerInfo makes no claim to trademark rights in such terms, and cannot be penalized for "failing to police" rights it does not have.

The first affirmative defense of failure to state a claim is not an actual affirmative defense. No evidence supports the proposition that ConsumerInfo somehow failed to mitigate the damages it suffered as a result of Defendants' infringement and false advertising, and thus the third affirmative defense of failure to mitigate damages is inapplicable.

"[E]very case of contributory or vicarious liability necessarily involves the defendant being held to answer for the direct conduct of another" and, accordingly, Defendants' fourth affirmative defense of "Superseding Events and Acts of Third Parties" fails here, where ConsumerInfo alleges contributory and vicarious trademark infringement. *Arista Records, Inc. v. Flea World LLC*, 356 F. Supp. 2d 411, 416 (D.N.J. 2005).

ConsumerInfo never abandoned its FREECREDITREPORT.COM trademark, so there is no basis for Defendants' ninth affirmative defense.

23

1  (SUF at ¶ 58.)  Finally, Defendants' misappropriation and infringement of

2  ConsumerInfo's intellectual property cannot be characterized as a fair use, and

3  Defendants' tenth affirmative defense is without merit.  (SUF at ¶ 59.)

4

5  **VI.   <u>Conclusion</u>**

6  For the reasons set forth above, ConsumerInfo requests the Court enter

7  partial summary judgment in favor of ConsumerInfo on Defendants' counterclaim

8  and each of Defendants' affirmative defenses.

9

10  DATED:  February 12, 2010          Respectfully Submitted,

11                                     KAYE SCHOLER LLP

12

13  By:_____

14        Theodore W. Maya
        Attorneys for Plaintiff and Counter-
15        Defendant
        CONSUMERINFO.COM, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP