1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*(left margin, vertical)* KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne, III (Bar No. 203748)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
karl@KBInternetLaw.com
hank@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Defendants Jesse Willms,
eDirect, 1016363 Alberta, Ltd. and 1021018
Alberta Ltd.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CONSUMERINFO.COM, INC.,** a California corporation,<br><br>Plaintiff & Cross-Defendant,<br>    v.<br><br>**JESSE WILLMS**, *et al.*<br><br>Defendants.<br><hr>**JESSE WILLMS** and **EDIRECT**,<br><br>Cross-Plaintiffs,<br>    v.<br><br>**CONSUMERINFO.COM, INC.**,<br><br>Cross-Defendant. | CASE NO. SACV09-0055 DMG (MLGx)<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:    March 12, 2010<br>Time:    2:00 pm<br>Place:   Courtroom 7<br><br>Before Hon. Dolly M. Gee, Judge |

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

1

# TABLE OF CONTENTS

INTRODUCTION.................................................................................... 1

BACKGROUND ..................................................................................... 3

A. The Alberta Defendants' Business Model ............................................ 3

B. The Google AdWords System................................................................ 4

C. The Alberta Defendants' Credit Report America Business.................... 4

1. The Alberta Defendants' Contract with Third Parties to Promote Credit
   Report America.................................................................................... 5

D. Plaintiff's Business Model .................................................................... 5

E. Plaintiff's Purported FREECREDITREPORT.COM Trademark .............. 6

1. Plaintiff's Position Regarding Marks that Are Similar to
   FREECREDITREPORT.COM.................................................................. 7

F. Third-Party Use of Identical and Similar Marks...................................... 8

G. Plaintiff's Failure to Use ® During Relevant Time Period ...................... 9

ARGUMENT.......................................................................................10

A. Summary Judgment Standard .............................................................10

B. Plaintiff knowingly made false statements to the United States Patent
   and Trademark Office ..........................................................................11

C. Plaintiff has not produced any evidence that Defendants used the
   FREECREDITREPORT.COM mark in commerce...................................13

D. Plaintiff cannot prove a claim for vicarious or contributory trademark
   infringement where Plaintiff has not produced any evidence that
   Defendants induced or controlled third parties......................................15

E. Plaintiff cannot prove a claim for trademark infringement because
   Plaintiff failed to provide Defendants with notice of Plaintiff's trademark
   registration..........................................................................................16

F. Plaintiff's former website is not entitled to trade dress protection ..........18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

CASE NO. SACV09-0055 DMG (MLGx)                    **DEFENDANTS' MPA IN SUPPORT OF**
                                                   **MOTION FOR SUMMARY ADJUDICATION**

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

G. Plaintiff cannot prove that Defendants used a counterfeit of the FREECREDITREPORT.COM mark .......................................................19

H. This circuit does not recognize claims for vicarious or contributory dilution or false advertising under the Lanham Act................................22

I. Plaintiff's cannot prove any claim against Defendant Willms as an individual-as compared to the corporate Defendants ...........................23

CONCLUSION ...........................................................................................25

CASE NO. SACV09-0055 DMG (MLGx)

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

1

**TABLE OF AUTHORITIES**

*Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc.*, 989 F. Supp. 1276, 1279 (C.D. Cal. 1997)...............................................23

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ...................................10

*Coach, Inc. v. Asia Pacific Trading Co., Inc.*, ___ F. Supp. 2d ___, No. 09-35, 2009 WL 3808550, *9-10 (C.D. Cal. Nov. 12, 2009).................14, 18

*Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, 486 F. Supp. 2d 286, 289 (S.D.N.Y. 2007) ......................................................................20, 21

*Credit One Corp. v. Credit One Financial, Inc.*, No. CV 09-2985, 2009 WL 3199169, at *2 (C.D. Cal. Sept. 23, 2009)...............................................13

*CTF Development, Inc. v. Penta Hospitality, LLC*, No. 09-02429, 2009 WL 3517617, at *5  (N.D. Cal. Oct. 26, 2009). ............................................12

*Davis v. Metro Productions, Inc.*, 885 F.2d 515, 524 (9th Cir. 1989)..........24

*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)........................10

*Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 907 (1st Cir. 1980) ..................................................................................................24

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000)10

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996)....16

*Horphag Research Ltd. v. Garcia*, 475 F.3d 1029 (9th Cir. 2007)..............14

*Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853-55 (1982)........15, 23

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 853 (9th Cir. 2002)................................................................13

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984, 986, (9th Cir. 1999)................................................................................15, 23

*Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 806, 807 (9th Cir. 2007)................................................................................15

*Reebok Int'l., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 559 n.9 (9th Cir. 1992)......................................................................................18

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

*Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) ................11

*Schneider Saddlery Co., Inc. v. Best Shot Pet Products Intern., LLC*, No. 1:06-CV-02602, 2009 WL 864072, *4, *14 (N.D. Ohio March 31, 2009)..........................................................19, 22

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435. 445 (D. Del. 2005) ....................................................................19

*Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) ...............................................................................24

## Federal Statutes, Rules, and Other Authorities

15 U.S.C. §1111.......................................................................17, 18

15 U.S.C. §1114.............................................................................13

15 U.S.C. §1119........................................................................ *passim*

15 U.S.C. §1120............................................................................ 1

15 U.S.C. §1125....................................................................14, 17, 18

Fed. R. Civ. P. 56(c)......................................................................10

4 J. McCarthy, McCarthy on Trademarks and Unfair Competition §25:10, §25:24 (4th ed. 2010) ..........................................................20

Senate Report on the Trademark Counterfeiting Act of 1984 (S. Rep. No. 98-526, 2-4 (1984), reprinted in 1984 U.S.C.C.A.N. 3627, 3628-3630) ....................................................................21, 23

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

## INTRODUCTION

Plaintiff, ConsumerInfo.com, Inc. has adopted a steamroller approach to litigation, threatening competitors with lawsuits left and right.  Behind this steamroller façade, Plaintiff has been performing a delicate dance around its purported trademark rights, which are about as weak as they come.

Plaintiff claims to own the trademark FREECREDITREPORT.COM,[1] and Plaintiff acquired a United States registration for the same in 2008.  Given the extremely descriptive nature of this mark, Plaintiff made a variety of statements to the United States Patent and Trademark Office ("PTO") about the strength of the mark, the lack of consumer confusion, Plaintiff's substantially exclusive use of the mark.  Plaintiff's knowingly made false statements to the PTO.  At the time of Plaintiff's trademark application, Plaintiff knew about extensive third-party use of names, phrases, and language highly similar to Plaintiff's FREECREDITREPORT.COM mark.  Plaintiff knowingly made these false statements to the PTO, and Plaintiff's trademark must be cancelled for fraud on the trademark office, pursuant to 15 U.S.C. §§1119, 1120.

Regarding Plaintiff's affirmative claims in this action, Plaintiff's steamroller approach masks its fundamentally weak claims.  Plaintiff and Defendants competed in providing consumers with credit-related services.  When Defendants gained momentum in this business, Plaintiff filed this lawsuit, asserting eleven causes of action sounding in trademark and copyright infringement.  Plaintiff has since engaged in Rambo-like discovery, imposing staggering costs on Defendants and third parties.  In the end,

---

[1] Throughout Defendants' summary adjudication papers, Defendants refer to Plaintiff's purported trademark as "Plaintiff's FREECREDITREPORT.COM mark."  However, Defendants in no way concede the validity of this purported trademark or any registration issued to Plaintiff for this trademark.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

1    however, Plaintiff has failed to produce evidence supporting its claims.

2         First, Plaintiff's claims for trademark infringement and vicarious and

3    contributory trademark infringement fail where Plaintiff has produced no

4    evidence that Defendants—as opposed to third parties—published the

5    allegedly infringing ads.    As explained in detail below, Defendants

6    contracted with third parties to advertise their credit-related services.

7         Second, Plaintiff's claim for trade dress infringement is not grounded in

8    law or fact.   Plaintiff has produced no evidence that its former website

9    landing page had acquired secondary meaning.    In fact, Plaintiff has

10   fundamentally changed its landing page several times, contradicting any

11   claim that it serves as a unique source identifier.

12        Third, Plaintiff attempts to shoehorn the facts of this case into a

13   counterfeiting claim under the Lanham Act.  However, the legislative history

14   and jurisprudence make clear that the Lanham Act's anti-counterfeiting

15   provisions were not intended to address the conduct at issue here.

16   Moreover, the allegedly counterfeit ads actually identified third parties as the

17   source of the service, contradicting Plaintiff's claim that the ads were passed

18   off as the actual goods or services of Plaintiff, the basis for any

19   counterfeiting claim.

20        Fourth, while Plaintiff appears to assert claims for contributory and

21   vicarious false advertising and dilution, this Circuit does not recognize such

22   claims.    Finally, Plaintiffs have failed to produce any evidence that

23   Defendant Willms—as opposed to the corporate Defendants—engaged in or

24   knew about the alleged misconduct.

25        For the reasons discussed herein, the Court should grant judgment to

26   Defendants on their counterclaim for fraud on the trademark office, and

27   dismiss Plaintiff's first, third, fourth, fifth, sixth, seventh, eight, tenth, and

28   eleventh causes of action.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

# BACKGROUND

## A.    The Alberta Defendants' Business Model

Defendants 1016363 Alberta Ltd. and 1021018 Alberta Ltd. (collectively, the "Alberta Defendants") operate a diverse line of e-commerce businesses, selling everything from nutritional supplements to herbal tea to teeth whitening products.   (Declaration of Jesse Willms in Support of Defendants' Motion for Summary Adjudication ("Willms Decl.")  ¶3; Defendants' Proposed Statement of Undisputed Facts and Legal Conclusions In Support of Defendants' Motion for Summary Adjudication ("PSUF") ¶¶10-11.)  The Alberta Defendants sell these goods and services through several proprietary e-commerce websites, which they own and operate. (Willms Decl. ¶3; PSUF ¶12-13.)

For the most part, however, the Alberta Defendants do not advertise their goods and services themselves.   (Willms Decl. ¶4; PSUF ¶14.) Instead, the Alberta Defendants contract with third parties to advertise their goods and services.  (Willms Decl. ¶4; PSUF ¶15.)  Some of these third parties are known as "affiliate networks," meaning they act as intermediaries between merchants and ad publishers (affiliates).  (Willms Decl. ¶4; PSUF ¶16.)  A merchant engages an affiliate network to promote the merchant's offer by entering into an arms-length contract known as an insertion order. (*Id.*)  This insertion order typically specifies the types of advertisements to be used to promote an offer (e.g. email ads, banner ads, sponsored link ads, etc).  (*Id.*)  Once an insertion order is signed, the affiliates in the network are able to review the nature of the merchant's offer and decide whether they want to design, create, and publish ads for that offer.  (*Id.*)

The Alberta Defendants also contract with media buyers to promote their goods and services.  (Willms Decl. ¶7; PSUF ¶19.)  Unlike affiliate networks, media buyers negotiate with third parties to display a merchant's

1 ads. (*Id.*)  In the context of online advertising, a media buyer might contract
2 with a third party to display banner ads on a specific website. (*Id.*)

3 **B.    The Google AdWords System**

4 AdWords is Google's flagship advertising product, in which advertisers
5 specify the keywords that will trigger their ads and the maximum amount
6 they will pay each time a user clicks on that ad (the "bid").  (Willms Decl. ¶8;
7 PSUF ¶20.)  When a user runs a search on Google's search engine, ads
8 associated with the searched keywords are displayed as "sponsored links"
9 on the right side of the screen, and sometimes above the main search
10 results.  (Willms Decl. ¶8; PSUF ¶21.)  When a user clicks on a sponsored
11 link, Google charges the advertiser for the click, in an amount less than or
12 equal to the advertiser's bid.  (Willms Decl. ¶8; PSUF ¶23.)

13 AdWords also allows advertisers to display banner ads.  (Willms Decl.
14 ¶9; PSUF ¶24.)  Unlike sponsored links, Google does not use keywords to
15 determine whether to display banner ads.  (Willms Decl. ¶10; PSUF ¶26.)
16 Rather, Google scans the text of websites that have agreed to display ads,
17 searching for terms that are relevant to different categories of
18 advertisements.  (*Id.*)  Based on these scanned terms, Google decides
19 which advertisements to display.  (*Id.*)  For both links and banner ads,
20 Google charges the advertiser each time a user clicks on one of its ads.
21 (Willms Decl. ¶¶8, 11; PSUF ¶¶23, 27.)

22 **C.    The Alberta Defendants' Credit Report America Business**

23 In August 2008, the Alberta Defendants launched a new service and
24 website, located at <www.creditreportamerica.com> ("Credit Report
25 America").  (Willms Decl. ¶12; PSUF ¶28.)  Credit Report America offered
26 consumers information about credit scores, credit reports, identity theft, and
27 online security.  (Willms Decl. ¶12; PSUF ¶30.)  Credit Report America also
28 provided instructions to consumers on how to get their free credit reports

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

DEFENDANTS' MPA IN SUPPORT OF
MOTION FOR SUMMARY ADJUDICATION

from the three major credit bureaus, (as required under the Fair and Accurate Credit Transactions Act).    (Willms Decl. ¶13; PSUF ¶31.) Consumers who signed up for Credit Report America received a seven day trial membership for a nominal amount.  (Willms Decl. ¶14; PSUF ¶32.)  If consumers did not cancel their membership for Credit Report America, they were then charged on a monthly basis for their access to the Credit Report America resources.  (Willms Decl. ¶14; PSUF ¶33.)  Credit Report America stopped taking orders in April 2009.  (Willms Decl. ¶15; PSUF ¶34.)

### 1. The Alberta Defendants' Contract with Third Parties to Promote Credit Report America

Other than very limited test advertising, the Alberta Defendants did not advertise Credit Report America themselves.    (Willms Decl. ¶16; PSUF ¶¶35-36.)    Instead they contracted with third parties to promote Credit Report America.  (Willms Decl. ¶¶17-19 & Exs. G & H; PSUF ¶¶37-39.)  In mid 2008, the Alberta Defendants entered into insertion orders with the affiliate networks  IntegraClick *dba* ClickBooth.com ("ClickBooth") and Media Trust *dba* Advaliant ("Advaliant") to promote Credit Report America.  (*Id.*) Also in August 2008, the Alberta Defendants began working with the media buyer ROI Revolution, Inc. ("ROI") to promote Credit Report America.  (*Id.*) Over the next several months, ClickBooth and Advaliant made the Credit Report America offer available to their affiliates to promote, and ROI worked with third party media outlets to display advertisements for Credit Report America.  (Willms Decl. ¶22; PSUF ¶42.)  Through the efforts of ClickBooth, Advaliant, and ROI (and their affiliates and partners), a variety of advertisements were published for Credit Report America on the Internet in various forms, including banners, sponsored links, and email ads.  (*Id.*)

### D. Plaintiff's Business Model

Plaintiff offers consumers with credit-related services through its

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

website located at <www.freecreditreport.com> ("FreeCreditReport.com"). (First Amended Complaint ("FAC") ¶14; PSUF ¶45.) Plaintiff's FreeCreditReport.com website states that it provides consumers with a free credit report. (Declaration of Jeffrey M. Rosenfeld in Support of Defendants' Motion for Summary Adjudication ("Rosenfeld Decl.") ¶2 & Ex. A; PSUF ¶46.) However, in order for a consumer to obtain a credit report from FreeCreditReport.com, the consumer must sign up for Plaintiff's Triple Advantage credit monitoring service. (*Id.*) If a customer doesn't cancel his or her membership in Triple Advantage within 7 days, he or she is billed $14.95 a month. (*Id.*)

## E.   Plaintiff's Purported FREECREDITREPORT.COM Trademark

Plaintiff claims to own a valid United States trademark registration for FREECREDITREPORT.COM. (FAC ¶16; PSUF ¶51.) In its application for this trademark registration, Plaintiff declared under penalty of perjury to the United States Patent and Trademark Office:

> "[The FREECREDITREPORT.COM mark] has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use in commerce for at least the five years immediately before the date of this statement."

[¶   ¶   ¶]

> "to the best of [Plaintiff's] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion or to cause mistake or to deceive . . ."

(Rosenfeld Decl. ¶4 & Ex. C; PSUF ¶¶54-55)

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

In subsequent filings with the PTO, Plaintiff made similar statements under oath.  (Rosenfeld Decl. ¶6 & Ex. E; PSUF ¶57.)   On May 13, 2008, after the PTO received Plaintiff's original application and supplemental filings, the PTO issued a certificate of registration to Plaintiff for FREECREDITREPORT.COM.  (Rosenfeld Decl. ¶3 & Ex. B; PSUF ¶58)

> **1.    Plaintiff's Position Regarding Marks that Are Similar to FREECREDITREPORT.COM**

Plaintiff has made numerous statements to third parties about names, phrases, and language that Plaintiff considers confusingly similar to its FREECREDITREPORT.COM mark.  By way of example only,

- Plaintiff sent Defendants letters, in which Plaintiffs claimed that the phrases "freecreditreport" and "$0 - freecreditreport®" infringed Plaintiff's FREECREDITREPORT.COM mark.  (Willms Decl. ¶27 & Ex. J; Rosenfeld Decl. ¶7 & Ex. F; PSUF ¶¶59-60.)

- In response to Defendant Willms's Second Set of Interrogatories, Plaintiff claimed the following alleged ads were counterfeits of Plaintiff's FREECREDITREPORT.COM mark: a sponsored link ad containing the phrase "Free Credit Report ™" and "a sponsored link ad containing the phrase "$0  FreeCreditreport ®"  (Rosenfeld Decl. ¶8 & Ex. G; PSUF ¶61.)

- On September 24, 2009 Plaintiff initiated an arbitration proceeding under the Uniform Domain Name Dispute Resolution Policy to recover 1,017 domain names that Plaintiff claimed were confusingly similar to Plaintiff's FREECREDITREPORT.COM mark (the "UDRP"), including by way of example only:

- threecreditreportcompany.com
- freecreditreportal.com

- threecreditreporting.com
- freecreditreportalabama.com

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

- 1-800-freecreditreport.com
- freecreditreportincolorado.com
- feecreditreporting.com
- freecreditreportwithnocreditcard.com
- free3creditreportagency.com
- freecreditreportcopy.com
- freecreditreportwithoutusingacreditcard.com  (Rosenfeld Decl. ¶10 & Ex. I; PSUF ¶63-64.)

The above-referenced examples are a small set of names, language, and phrases that Plaintiff has deemed confusingly similar to its FREECREDITREPORT.COM mark. (*Id.*)

**F.    Third-Party Use of Identical and Similar Marks**

Between 2005 and 2007, there was extensive third party use of names, language, and phrases highly similar to Plaintiff's FREECREDITREPORT.COM mark.  (Declaration of Frederick Cohen in Support of Defendants' Motion for Summary Adjudication ("Cohen Decl") *passim*; PSUF ¶¶65-67.)  By way of example only, between 2005 and 2007, the following domain names were used by third parties to display websites offering credit-related services and/or advertisements:

- freecreditreporthelp.com
- freecreditreportsite.com
- freecreditreportcenter.com
- freecreditreportsearch.com
- freecreditreportcard.com
- freecreditreportnow.com
- freecreditreportbureau.com
- freecreditreporting.com
- freecreditreportamerica.com
- freecreditreportz.com
- freecreditreport-now.com
- creditreport.com
- annualfreecreditreport.com
- free-credit-reports.org
- freecreditreportstore.com
- free-credit-reports.net  (*Id.*)

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

Moreover, between 2005 and 2007, there were countless websites that displayed the phrases "free credit report," "freecreditreport," and similar wording. (*Id.*)  By way of example only, these phrases were used on the following websites:

- <annualfreecreditreport.com> - displayed the phrase "free credit report";

- <freecreditreportcenter.com> - displayed the phrase "free credit report";

- <freecreditreportcard.com> - displayed the phrases "freecreditreport," and "freecreditreportcard.com";

- <free-credit-reports.net> - displayed the phrase "free-credit-reports.net";

- <freecreditreportsearch.com> - displayed the phrase "free credit report";

- <freecreditreportcenter.com> - displayed the phrase "free credit report"

- <freecreditzreportz.com> - displayed the phrases "freecreditreportz.com" and "free credit report" (*Id.*);

Between 2005 and 2007, this extensive third party use could have been discovered in a matter of minutes by performing routine Internet searches.  (Cohen Decl. ¶¶33-34; PSUF ¶67.)  Any reasonable company in Plaintiff's position would have been aware of the extensive third party use of the phrases "freecreditreport," "free credit report," and the like before and during the prosecution of Plaintiff's trademark application for FREECREDITREPORT.COM (*i.e.* between 2006-2008).  (Declaration of Irving S. Rappaport in Support of Defendants' Motion for Summary Adjudication ("Rappaport Decl.") ¶10; PSUF ¶68.)

**G.    Plaintiff's Failure to Use ® During Relevant Time Period**

Prior to November 4, 2008 Defendants were not aware of Plaintiff's registration for the FREECREDITREPORT.COM mark.  (Willms Decl. ¶28; PSUF ¶73.)    Nor did Plaintiff use ® in connection with its

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    FREECREDITREPORT.COM mark.

2         On September 18, 2008 Plaintiff's counsel sent Defendant Willms their

3    first demand letter.  (Willms Decl. ¶25 & Ex. I; PSUF ¶¶69-70.)  The letter did

4    not mention Plaintiff's registration of the FREECREDITREPORT.COM mark.

5    (*Id.*)  Moreover, the printout from the FreeCreditReport.com website, which

6    was attached to the letter, displayed the FREECREDITREPORT.COM

7    trademark without the symbol "®".  (*Id.*)

8         Moreover, on November 4, 2008 Plaintiff's counsel sent Defendant

9    Willms another demand letter.  (Willms Decl. ¶27 & Ex. J; PSUF ¶¶72, 74.)

10   This time, the letter attached a printout of Google search results, displaying

11   various sponsored link ads.  This printout displays Plaintiff's advertisement

12   for its FreeCreditReport.com website, using the

13   FREECREDITREPORT.COM trademark without the symbol "®".  (*Id.*)

14                        **ARGUMENT**

15   **A.    Summary Judgment Standard**

16        Summary judgment is proper when the pleadings, discovery and

17   disclosure materials on file, and any affidavits show that there is no genuine

18   issue as to any material fact and that the moving party is entitled to a

19   judgment as a matter of law.  Fed. R. Civ. P. 56(c).  When the nonmoving

20   party has the burden of proof at trial, the moving party need only point out

21   "that there is an absence of evidence to support the nonmoving party's

22   case."  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*citing*

23   *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *Fairbank v. Wunderman*

24   *Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex*

25   "showing" can be made by "pointing out through argument--the absence of

26   evidence to support plaintiff's claim").  Once the moving party carries its

27   initial burden, the adverse party "may not rest upon the mere allegations or

28

1  denials of the adverse party's pleading," but must provide affidavits or other

2  evidence that "set forth specific facts showing that there is a genuine issue

3  for trial." *Devereaux*, 263 F.3d at 1076.

4  **B.    Plaintiff knowingly made false statements to the United States**

5  **Patent and Trademark Office.**

6      A trademark registration may be cancelled when it was based on false

7  statements submitted in an affidavit to the PTO.  *See Robi v. Five Platters,*

8  *Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990). A party may seek cancellation of a

9  registered trademark on the basis of fraud by establishing a false

10  representation regarding a material fact, the registrant's knowledge or belief

11  that the representation is false, the intent to induce reliance upon the

12  misrepresentation and reasonable reliance thereon, and damages

13  proximately resulting from the reliance.  *See id.*

14      In its trademark application and supporting affidavits, Plaintiff made

15  several misrepresentations about its exclusive use of the

16  FREECREDITREPORT.COM mark.   Thus, in its trademark application,

17  Plaintiff declared under penalty of perjury that:

18      [T]o the best of [its] knowledge and belief no other person, firm,

19      corporation, or association has the right to use the mark in

20      commerce, either in the identical form thereof or in such near

21      resemblance thereto as to be likely, when used on or in

22      connection with the goods/services of such other person, to

23      cause confusion or to cause mistake or to deceive . . .

24      (Rosenfeld Decl. ¶4 & Ex. C; PSUF ¶55)

25  Plaintiff's statements were false, and Plaintiff knew they were false.  At the

26  time Plaintiff filed its trademark application, there was extensive third-party

27  use of the phrases "freecreditreport.com," "freecreditreport," "free credit

28  report," and the like.  Literally thousands-upon-thousands of websites used

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**DEFENDANTS' MPA IN SUPPORT OF**
**MOTION FOR SUMMARY ADJUDICATION**

these phrases to sell and/or advertise credit-related services.  Moreover, many of these websites were associated with domain names that were highly similar to FREECREDITREPORT.COM, including by example only:

- freecreditreportcenter.com
- freecreditreportcard.com
- freecreditreportstore.com
- freecreditreportservice.com
- freecreditreportnow.com
- free-credit-reports.org

- freecreditreportcenter.com
- freecreditreport-now.com
- freecreditreportsite.com
- freecreditreportz.com
- freecreditreporting.com
- free-credit-reports.net

No reasonable company in Plaintiff's position could have been ignorant of this extensive third-party use.  A simple search on the Internet by Plaintiff would have revealed thousands of these results in seconds.  To the extent Plaintiff argues it was unaware of this third-party use, Plaintiff's argument is not credible, and Plaintiff's intent to mislead, as well as the trademark office's reliance on Plaintiff's false declaration, can be inferred from these facts.  *See CTF Development, Inc. v. Penta Hospitality, LLC*, No. 09-02429, 2009 WL 3517617, at *5  (N.D. Cal. Oct. 26, 2009).  Thus, Plaintiff's declaration in support of its trademark application was materially false, in that there was extensive third-party use of names, language, and phrases that closely resembled FREECREDITREPORT.COM.

Plaintiff may argue that much of this third-party use involved phrases that were not confusingly similar to FREECREDITREPORT.COM.  Plaintiff's argument fails.  In the past, Plaintiff has argued that phrases that are far less similar to FREECREDITREPORT.COM than those described above were confusingly similar to the FREECREDITREPORT.COM mark.  As limited examples, in the past, Plaintiff has argued that the phrases

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  "freecreditreport," "Free Credit Report ™," "freetriplecreditscore.com,"
2  "threecreditreportcompany.com," and "freecreditreportwithoutusinga-
3  creditcard.com" were all confusingly similar to
4  FREECREDITREPORT.COM.

5      Given: a) that Plaintiff considers domain names such as
6  "threecreditreportcompany.com" confusingly similar to
7  FREECREDITREPORT.COM, b) that common phrases such as
8  "freecreditreport" or "free credit report," are facially more similar to
9  FREECREDITREPORT.COM than domain names such as
10 "threecreditreportcompany.com," and c) that Plaintiff had to have been
11 aware of, and intentionally misrepresented, the third-party use of the
12 phrases "freecreditreport" and "free credit report" when Plaintiff filed its
13 trademark application, it can only be the case that Plaintiff made
14 misrepresentations to the PTO when it said it was unaware of third-party use
15 of confusingly similar phrases.

**C.   Plaintiff has not produced any evidence that Defendants used the FREECREDITREPORT.COM mark in commerce.**

18     All of Plaintiff's trademark infringement and dilution claims fail because
19 Plaintiff has produced no evidence that Defendants—as opposed to third
20 parties—*used* infringing marks.

21     In order to prevail on a claim of trademark infringement under 15
22 U.S.C. §1114 or 1125(a), or common law, Plaintiff must produce evidence
23 that (1) Defendants used the plaintiff's valid, protectable trademark; and (2)
24 the use was likely to confuse customers as to the source of the product. *See*
25 *Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d
26 848, 853 (9th Cir. 2002); *Credit One Corp. v. Credit One Financial, Inc.*, No.
27 CV 09-2985, 2009 WL 3199169, at *2 (C.D. Cal. Sept. 23, 2009) (setting
28 forth elements of common law infringement claims).  And in order to prevail

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  on a claim for trademark dilution under 15 U.S.C. §1125(c), a plaintiff must

2  show that (1) its mark is famous; (2) the defendant made a commercial use

3  of the mark; (3) the defendant's use began after the mark became famous;

4  and (4) the defendant's use of the mark caused actual dilution. *See*

5  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029 (9th Cir. 2007).

6      Plaintiff claims that sponsored link ads for Credit Report America

7  infringed on its FREECREDITREPORT.COM mark.  However, Plaintiff has

8  produced no evidence that Defendants—as opposed to third parties—*used*

9  an infringing mark in these sponsored link ads.  In fact, Plaintiff has not

10  produced any evidence that Defendants published any sponsored link ads

11  for Credit Report America.  Neither Defendants nor ROI nor Advaliant nor

12  ClickBooth provided Plaintiff with any such evidence, despite Plaintiff's

13  extensive third-party discovery.  Rather, all of the sponsored link ads for

14  Credit Report America were published by third parties—primarily ROI and

15  affiliates of Advaliant and ClickBooth.

16      As a result, the alleged trademark infringement was carried out by

17  third parties—not Defendants.  Plaintiff has produced no evidence that

18  Defendants even knew about this alleged infringement, let alone actually

19  perpetrated it.  Where a plaintiff fails to establish that the defendant was the

20  one who *used* the infringing mark, a trademark infringement claim must be

21  denied.  *See e.g.*, *Coach, Inc. v. Asia Pacific Trading Co., Inc.*, __ F. Supp.

22  2d __, No. 09-35, 2009 WL 3808550, at *10 (C.D. Cal. Nov. 12, 2009)

23  (granting defendants' summary judgment motion on trademark claim where

24  plaintiff provide no evidence connecting defendants to the infringement).

25      In fact, the only relevant evidence establishes that Defendants sought

26  to stop the alleged infringement when they first learned about it.  Thus, on

27  November 4, 2008—after receiving Plaintiff's demand letter—Defendants

28  orally instructed their affiliate networks to require their affiliate to stop using

the FREECREDITREPORT.COM mark.   Defendants subsequently sent emails and letters to their affiliate networks instructing them to prohibit any infringement of the FREECREDITREPORT.COM mark.   Plaintiff's unsupported theory—that Defendants published infringing sponsored link ads—makes no sense in light of this correspondence.

Given that Plaintiff has produced no evidence that Defendants—as opposed to third parties—*used* an infringing trademark, Plaintiff's trademark infringement and dilution claims fail.

**D.    Plaintiff cannot prove a claim for vicarious or contributory trademark infringement where Plaintiff has not produced any evidence that Defendants induced or controlled third parties.**

Plaintiff cannot succeed on its vicarious or contributory trademark infringement claims because Plaintiff has not produced sufficient evidence connecting Defendants to the infringing acts.

To succeed on a claim for vicarious trademark infringement, a plaintiff must prove: (1) that the defendant and the infringer have an "apparent or actual partnership," (2) "have authority to bind one another in transactions with third parties" or (3) "exercise joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007).

For contributory trademark infringement, a plaintiff must prove that the defendant: (1) "intentionally induced" the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied.  *Perfect 10, Inc.* 494 F.3d at 807 (*citing Inwood Lab., Inc. v. Ives Lab., Inc.,* 456 U.S. 844, 855 (1982)).   For liability to attach, there must be "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Id.* at 807 (*citing Lockheed Martin Corp.*, 194 F.3d at 984)).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    The Ninth Circuit has noted that these tests for secondary trademark
2    infringement are even more difficult to satisfy than the rigorous tests for
3    vicarious and contributory copyright infringement.  *See id.* at 806; *see also*
4    *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996)
5    (noting that "trademark infringement liability is more narrowly circumscribed
6    than copyright infringement").

7          Plaintiff has not produced sufficient evidence to satisfy either the test
8    for vicarious or contributory trademark infringement.  As discussed above,
9    the alleged trademark infringement was perpetrated by third parties—and
10   Plaintiff has produced no evidence to the contrary.  Defendants did not—and
11   still do not—know the identities of these third parties.  Rather, these third
12   parties were affiliates of Advaliant and ClickBooth.  Plaintiff has produced no
13   evidence that Defendants intentionally induced these unknown third parties
14   to infringe the FREECREDITREPORT.COM mark, that Defendants had a
15   partnership with these third parties, or that Defendants exercised control
16   over the actions of these third parties.  In fact, the evidence demonstrates
17   that Defendants were unaware of the allegedly infringing conduct until
18   November 4, 2008.  And in November 2008, when Defendants learned of
19   the alleged infringement, Defendants took affirmative steps to stop it.

20         In light of these facts—and Plaintiff's failure to produce any evidence
21   of a vicarious or contributory relationship between Defendants and the
22   unknown publishers of the infringing ads—Plaintiff's contributory and
23   vicarious trademark infringement claims fail.

24   **E.    Plaintiff cannot prove a claim for trademark infringement because**
25   **Plaintiff failed to provide Defendants with notice of Plaintiff's**
     **trademark registration.**
26
27         Plaintiff's trademark infringement claims also fail in part because
28   Plaintiff did not provide Defendants with notice of its trademark registration.

The Lanham Act states:

> a registrant of a mark registered in the Patent Office, may give notice that his mark is registered by displaying with the mark the words "Registered in U. S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle . . . [I]n any suit for infringement under this Act by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this Act unless the defendant had actual notice of the registration.
> (15 U.S.C. §1111)

The evidence demonstrates that at least prior to November 4, 2008 Defendant failed to provide notice of its registration for its FREECREDITREPORT.COM mark.  Plaintiff sent Defendants two letters prior to November 4, 2008.  Both of these letters included exhibits displaying Plaintiff's use of its FREECREDITREPORT.COM mark in commerce: one exhibit displayed Plaintiff's FreeCreditReport.com website and the other displayed sponsored link ads for the FreeCreditReport.com website. Neither of these exhibits contained any notice of Plaintiff's registration of the FREECREDITREPORT.COM.  Moreover, Plaintiff has produced no evidence that Defendants knew about Plaintiff's registration, and in fact, Defendants did not have knowledge of this registration before November 4, 2008. (Willms Decl. ¶28; PSUF ¶73.)

Because Plaintiff failed to provide notice of its trademark registration, and has failed to produce evidence that Defendants knew of such registration, Plaintiff's trademark infringement claims fail.  Importantly, 15 U.S.C. §1111's notice requirement applies to claims brought under both 15 U.S.C. §1114 for infringement of a registered mark and 15 U.S.C. §1125(a) for infringement of an unregistered mark, when this claim is based

17

**DEFENDANTS' MPA IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

on a registered mark.  *See Coach, Inc.*, 2009 WL 3808550 at *9-10; *see also Reebok Int'l., Ltd. v. Marnatech Enter., Inc.*, 970 F.2d 552, 559 n.9 (9th Cir. 1992) (stating that §1125(a) claims are subject to §1111).  Accordingly, both Plaintiff's §1114 claim and §1125 claim are barred by §1111.

## F.    Plaintiff's former website is not entitled to trade dress protection.

Plaintiff has failed to produce any evidence that its former website is entitled to trade dress protection under 15 U.S.C. §1125(a).  To prove trade dress infringement, a plaintiff must demonstrate that: (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products. To show secondary meaning, a plaintiff must demonstrate a mental recognition in buyers' minds that products connected with the trade dress are associated with the same source.

Plaintiff has produced no evidence that its former FreeCreditReport.com landing page, featuring a block of text with a blonde woman at the top, has acquired secondary meaning.  There is nothing original or distinctive about this web page, and such images and themes are echoed in thousands—if not millions—of other websites. (Rosenfeld Decl ¶2 & Ex. A; PSUF ¶50.)  Moreover, shortly after Plaintiff sent Defendants a letter accusing them of trade dress infringement, Plaintiff fundamentally changed its landing page.  Today, Plaintiff's landing page features a picture of a young male "slacker" and reformatted text (*i.e.* the text is longer displayed in three columns).  (Rosenfeld Decl ¶11 & Ex. J; PSUF ¶50.) These fundamental changes in the look and feel of the FreeCreditReport.com landing page are inconsistent with the argument that the former landing page served—and continues to serve—as a source identifier.  And Plaintiff has produced no evidence to the contrary.

Plaintiff may argue that it needn't produce evidence of secondary

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  meaning, arguing that its former website was inherently distinctive.   An
2  inherently distinctive trade dress is one that automatically tells a consumer
3  that it refers to a specific source for a product, such that consumers will be
4  predisposed to equate the trade dress with the source of a product.  *See*
5  *Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435.
6  445 (D. Del. 2005).   Plaintiff has produced no evidence that consumers
7  automatically equated the landing page with a blonde woman on the top with
8  Plaintiff's services.   In fact, it's hard to imagine more than a handful of
9  people ever associating this generic website design with Plaintiff's services.

10      Because Plaintiff cannot establish secondary meaning of its former
11  landing page, its trade dress infringement claim must be denied.

12  **G.**   **Plaintiff cannot prove that Defendants used a counterfeit of the**
13        **FREECREDITREPORT.COM mark.**

14      Plaintiff attempts to shoehorn the facts of this case into the Lanham
15  Act's anti-counterfeiting provision.  However, neither the letter nor the intent
16  of this provision applies.

17      Plaintiff has identified four alleged incidents of counterfeiting in
18  violation of 15 U.S.C. §1114(1): a) Defendants' alleged copying of Plaintiff's
19  website trade dress; b) the appearance of the FREECREDITREPORT.COM
20  mark in a sponsored links ad; c) the appearance of the phrase "Free Credit
21  Report ™" in a sponsored link ad; and d) the appearance of the phrase "$0
22  – FreeCreditReport ®" in a sponsored link ad.  None of these incidents
23  constitutes counterfeiting.  (Rosenfeld Decl ¶8 & Ex. G; PSUF ¶61.)

24      First, even if there were evidence that Defendants had published these
25  ads—and there is not—Plaintiff has still failed to state a claim for
26  counterfeiting.  "Counterfeiting is the act of producing or selling a product
27  with a sham trademark that is an intentional and calculated reproduction of
28  the genuine trademark."  *Schneider Saddlery Co., Inc. v. Best Shot Pet*

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  *Products Intern., LLC*, No. 1:06-CV-02602, 2009 WL 864072, *14 (N.D. Ohio

2  March 31, 2009).  Counterfeit merchandise is made so as to imitate a well-

3  known product (e.g. a Rolex watch) in all details of construction and

4  appearance so as to deceive customers into thinking that they are getting

5  genuine merchandise. Thus, counterfeiting is "hard core" or "first degree"

6  trademark infringement; the most egregious form of "passing off." 4 J.

7  McCarthy, *McCarthy on Trademarks and Unfair Competition* §25:10 (4th ed.

8  2010).  This is a high bar, because slight differences, apparent upon minimal

9  inspection, will defeat an allegation that a mark is counterfeit.  *See, e.g.*

10  *Colgate-Palmolive Co. v. J.M.D. All-Star Imp. & Exp.*, 486 F. Supp. 2d 286,

11  289 (S.D.N.Y. 2007) (holding that "Colgate Toothpaste" is not a counterfeit

12  of "Colgate Toothpaste," despite exceedingly similar packaging.).

13      Plaintiff claims that the following sponsored link ads, published by third

14  parties, were counterfeits of its FREECREDITREPORT.COM mark.

15  - Free Credit Report
   Get Free Credit Report in seconds.
16   Easy to read & viewable online.
   www.CreditReportAmerica.com

- FreeCreditReport.com?
   Free 3-Bureau Credit Report & Free
   2008 Credit Score Online Today!
   www.FreeEquifaxCreditReport.net

17

18  - $0 – FreeCreditReport ®
   Free 3-Bureau Credit Report.
   Seen on CNN, NBC, CBS, & FOX News!
19   www.CreditReportAmerica.net

20  (Importantly, two of these ads don't even promote the Alberta Defendants'

21  website located at <creditreportamerica.com>).

22      These   ads   are   not   counterfeits   of   Plaintiff's

23  FREECREDITREPORT.COM mark.  These ads are simply not equivalent to

24  the selling of fake Rolex watches or Levi's jeans, the type of misconduct that

25  the anti-counterfeiting provision targets.  *See e.g.*, Senate Report on the

26  Trademark Counterfeiting Act of 1984 (S. Rep. No. 98-526, at 4 (1984),

27  *reprinted in* 1984 U.S.C.C.A.N. 3627, 3630) (explaining that the Act targets

28  the selling of goods through the use of spurious marks, such as "sewing

1   false brandname labels into cheaply manufactured clothing," which defrauds

2   purchasers who "pay for brand-name quality and take home only a fake").

3   Instead, the ads produced by Plaintiff are ads for competing services, and

4   the ads prominently display the name of the competing services in the ad:

5   *e.g.* CreditReportAmerica.com.  Under no construction of the Lanham Act,

6   could such ads be considered counterfeits.

7         Moreover, the ads do not use Plaintiff's FREECREDITREPORT.COM

8   mark in an identical or substantially indistinguishable form, and thus cannot

9   constitute "counterfeits" under the Act.  Marks that are similar to a registered

10  mark, but differ by a letter or two, are not counterfeits.  *See, e.g. Colgate-*

11  *Palmolive*, 486 F. Supp. 2d at 289.  Thus, two of the three ads submitted as

12  proof of Defendants' alleged counterfeiting [*i.e.* "Free Credit Report" and "$0

13  – FreeCreditReport ®."] do not meet this standard based on Plaintiff's own

14  admissions.  Plaintiff has admitted that such language is not substantially

15  indistinguishable from its FREECREDITREPORT.COM mark:

16        ***First***, ConsumerInfo's statements regarding its substantially

17        exclusive and continuous use of its

18        FREECREDITREPORT.COM were not false. Defendants point

19        to third party use of terms such as "free credit report" and

20        "creditreport.com."  (Counterclaim    ¶¶   5-9.)   However,

21        ConsumerInfo's mark is FREECREDITREPORT.COM, and it

22        must be viewed "as a whole."  (Rosenfeld Decl. ¶12 & Ex. K;

23        PSUF ¶79.)

24  So, too, the one ad that includes FREECREDITREPORT.COM, must, in the

25  Plaintiff's words, be viewed "as a whole."  And viewing the ad as a whole, a

26  any reasonable consumer would notice the ad includes a link for a different,

27  competing service [*i.e.* www.FreeEquifaxCreditReport.net].   Thus the ad

28  does not contain a "counterfeit" of Plaintiff's mark, as the mark is not

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

identical with or substantially indistinguishable from Plaintiff's mark when viewed "as a whole."  *See Schneider Saddlery Co.,* 2009 WL 864072, at *4 (noting that "when determining whether a mark is counterfeit, courts generally consider whether consumers would find the infringing mark 'identical with, or substantially indistinguishable from' a registered mark as it appears in the marketplace, rather than how two marks may appear in the abstract").

Nor does Defendants' alleged copying of Plaintiff's trade dress on the Credit Report America website constitute counterfeiting.  In passing the anti-counterfeiting provisions, Congress specifically noted that the provisions did "not extend to imitations of trade dress or packaging, unless those features have been registered as trademarks on the Principal Register."  S. Rep. No. 98-526, at 3 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627, 3629.

Finally, and perhaps most importantly, Plaintiff has produced no evidence that Defendants—as opposed to third parties—published the allegedly counterfeit ads.  The Lanham Act's anti-counterfeiting provisions contain a heightened intent requirement.  As the Senate Report on the Act noted, "[s]ince counterfeiting is a uniquely pernicious form of trademark infringement . . . [the plaintiff must] show that the defendant has intentionally trafficked in goods or services knowing them to be counterfeit."  S. Rep. No. 98-526, at 2 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3627, 3628.  Because Plaintiff's evidence of counterfeiting merely implicates the alleged intent of third parties, Plaintiffs have failed to produce evidence sufficient to maintain a claim for counterfeiting against Defendants.

Thus, Plaintiff's attempt to shoehorn its trademark infringement claims into the Lanham Act's anti-counterfeiting provisions must be rejected.

**H.    This circuit does not recognize claims for vicarious or contributory dilution or false advertising under the Lanham Act.**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Plaintiff has asserted claims for contributory and vicarious liability under the Lanham Act.  However, Plaintiff has not specified what violations of the Lanham Act are at issue—but rather, refers to Lanham Act violations generally.  To the extent Plaintiff seeks to impose contributory or vicarious liability on Defendants for false advertising or dilution (as opposed to trademark infringement), Plaintiff's claims fail.

The concepts of contributory and vicarious liability for trademark infringement do not appear in the text of the Lanham Act.  Rather, they are court-adopted doctrines, based on common law principles of agency and apparent authority, and accepted by the Supreme Court in *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853-54 (1982).

While the Supreme Court has recognized causes of action for vicarious and contributory trademark infringement, neither the Supreme Court nor the Ninth Circuit has extended contributory or vicarious liability to claims for dilution or false advertising under the Lanham Act.  In fact, the Ninth Circuit has specifically noted that no such extension of vicarious and contributory liability to non-infringement claims has been recognized.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although courts have discussed contributory dilution, no appellate court or statute has yet established the cause of action."); *Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc.*, 989 F. Supp. 1276, 1279 (C.D. Cal. 1997) (stating "[t]he very fact that there is no precedent of success on the merits on a contributory dilution claim weighs strongly against the Court granting a preliminary injunction").

Because the Ninth Circuit has not recognized vicarious or contributory false advertising or dilution under the Lanham Act, the Court must deny any secondary liability claims based on false advertising or dilution.

**I.**    **Plaintiffs cannot prove any claim against Defendant Willms as an**

**individual—as compared to the corporate Defendants.**

While Plaintiff named Defendant Jesse Willms in his individual capacity, Plaintiff has produced no evidence that Willms personally participated in any of the alleged misconduct.  Nor has Plaintiff produced any evidence that Willms directed employees of the Alberta Defendants to engage in any misconduct.  As a result, Plaintiff's claims against Willms fail.

"To be personally liable [under the Lanham Act], corporate officers or directors must do more than merely control corporate affairs: they must personally take part in infringing activities or specifically direct employees to do so."  4 J. McCarthy, §25:24.  An officer's knowledge of tortious conduct alone is not enough to hold that officer liable for the torts absent other unreasonable participation in the misconduct.  *See Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004).  As recognized by the Ninth Circuit, "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." *Davis v. Metro Productions, Inc.,* 885 F.2d 515, 524 (9th Cir. 1989) (quoting *Escude Cruz v. Ortho Pharm. Corp.,* 619 F.2d 902, 907 (1st Cir.1980)).  Plaintiff has failed to produce any evidence that Willms was the "guiding spirit" in the alleged misconduct:

**Lanham Act Claims**. Plaintiff has produced no evidence that Willms personally violated the Lanham Act, or that he instructed others to do so. First, as discussed above, the allegedly infringing sponsored link ads were published by third parties—not Willms.  Plaintiff has produced no evidence that Willms created these ads or instructed others to do so.  In fact, the evidence shows that Willms instructed third parties to stop displaying such ads when he learned of the alleged infringement.  Second,   Plaintiff has produced no evidence that Willms designed the Credit Report America

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

website, which allegedly infringed Plaintiff's trade dress.  To the contrary, the Credit Report America website was designed by contractors in India.  And when Willms learned of the alleged trade dress trademark infringement, he instructed Defendants' contractors to change the website.  Finally, Plaintiff has produced no evidence that Willms drafted the allegedly false advertisements or instructed others to do so.

**Copyright Claims**. Plaintiff has failed to produce evidence that Willms created banner advertisements that infringed on Plaintiff's copyrights.  The Alberta Defendants have created thousands of banner ads for their several websites.  While Willms reviews many of these banner ads before they are sent to affiliate networks or media buyers, it would be impossible for him to investigate the provenance of each such ad.  Plaintiff has submitted that four of Defendants' banner ads infringed its copyrights.  However, Plaintiff has produced no evidence that Willms was in involved in the creation of these four ads out of the thousands produced by the Alberta Defendants.

Because Plaintiff has produced no evidence that Willms was the "guiding light" or "central spirit" in the alleged misconduct, Plaintiff's claims against Willms must be dismissed.

## CONCLUSION

For all of the reasons set forth above, the Court should grant Defendants' motion for summary adjudication.

Respectfully submitted,

DATED:  February 12, 2010          KRONENBERGER BURGOYNE, LLP


                                              By:    s/ Karl S. Kronenberger

                                                     Karl S. Kronenberger

                                                     Attorneys for Defendants