1  **KRONENBERGER BURGOYNE, LLP**
2  Karl S. Kronenberger (Bar No. 226112)
   Henry M. Burgoyne, III (Bar No. 203748)
3  Jeffrey M. Rosenfeld (Bar No. 222187)
   150 Post Street, Suite 520
4  San Francisco, CA 94108
   Telephone:  (415) 955-1155
5  Facsimile:   (415) 955-1158
6  karl@KBInternetLaw.com
   hank@KBInternetLaw.com
7  jeff@KBInternetLaw.com
8
   Attorneys for Defendants Jesse Willms,
9  eDirect, 1016363 Alberta, Ltd. and 1021018
   Alberta Ltd.
10

11              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| **CONSUMERINFO.COM, INC.,** a California corporation,<br><br>Plaintiff & Cross-Defendant,<br><br>v.<br><br>**JESSE WILLMS**, *et al.*<br><br>Defendants. | CASE NO. SACV09-0055 DMG (MLGx)<br><br>**DECLARATION OF JESSE WILLMS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:   March 12, 2010<br>Time:  2:00 pm<br>Place:  Courtroom 7<br><br>Before Hon. Dolly M. Gee, Judge |
| **JESSE WILLMS** and **EDIRECT**,<br><br>Cross-Plaintiffs,<br><br>v.<br><br>**CONSUMERINFO.COM, INC.**,<br><br>Cross-Defendant. | **SELECTED EXHIBITS**<br><br>**SUBMITTED  UNDER SEAL** |

I, Jesse Willms, declare and state as follows:

1. I am a party to this action. Unless otherwise stated, I have personal knowledge of the matters stated herein. Also, unless otherwise stated in this declaration, "Defendants" refers to all the defendants in this action.

2. I am the President and founder of Defendants 1016363 Alberta Ltd. and 1021018 Alberta Ltd., (collectively, the "Alberta Defendants"). The Alberta Defendants are numbered Alberta corporations; they are active and valid Alberta, Canada corporations. Credit Report America, Just Think Media, and WuYi Source are registered trade names for Defendant 1021018 Alberta Ltd. EDirectSoftware is a partnership owned in part by Defendant 1021018 Alberta Ltd. and in part by Defendant 1016363 Alberta Ltd. Attached hereto as Exhibits A and B are true and correct printouts from the Alberta, Canada Corporate Registration System for Defendants 1016363 Alberta Ltd. and 1021018 Alberta Ltd. Conditionally filed under seal as Exhibits C – E are true and correct copies of Proofs of Filing for the Registered Trade Names Credit Report America, Just Think Media, and WuYi Source. Conditionally filed under seal as Exhibit F is a true and correct printout from the Alberta, Canada Corporate Registration System for the business name EDirectSoftware.

3. The Alberta Defendants operate a diverse line of e-commerce businesses, selling everything from nutritional supplements to herbal tea to teeth whitening products. Their goods and services are sold on several proprietary e-commerce websites, which they own and operate. Consumers are able to purchase the Alberta Defendants' goods and services on the Alberta Defendants' websites.

4. Generally, the Alberta Defendants do not advertise their goods and services themselves. Rather the Alberta Defendants contract with third

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

parties to advertise their goods and services. Some of these third parties are known as "affiliate networks." An affiliate network acts as an intermediary between merchants and publishers (affiliates). A merchant engages an affiliate network to promote the merchant's offer by entering into an arms-length contract called an insertion order. The insertion order typically specifies the types of advertisements to be used to promote an offer (e.g. email ads, banner ads, search result ads). The network's affiliates are then able to review the merchant's offer (and the restrictions on advertisements for that offer) and decide whether they want to publish advertisements for that offer.

5. Affiliate networks consider the identities of their affiliates to be a valuable trade secret and do not disclose these identities to merchants absent exceptional circumstances.

6. Merchants compensate affiliate networks each time an affiliate sends a consumer to the merchant's website and that consumer buys the merchant's good or service. The network, in turn, compensates its affiliates based on the same model.

7. The Alberta Defendants also contract with media buyers to promote their goods and services. Unlike affiliate networks, media buyers negotiate with third parties to display the merchant's advertisements. In the context of online advertising, a media buyer might contract with a third party to display banner advertisements on a specific website. Typically, the media buyer is compensated as a percentage of the amount of media purchased by the merchant.

8. AdWords is Google's flagship advertising product. With AdWords, advertisers specify the keywords that will trigger their ads and the maximum amount they will pay each time a user clicks on that ad (the "bid"). When a user runs a search on Google's search engine, ads associated with

the searched keywords are displayed as "sponsored links" on the right side of the screen, and sometimes above the main search results. The sponsored links comprise four lines of text: a) the Headline (which is a hyperlink), b) the Description line 1; c) the Description line 2; and d) the Display URL (which is a hyperlink). When a user clicks on a sponsored link, Google charges the advertiser for the click, in an amount less than or equal to the advertiser's bid.

9.  AdWords also allows advertisers to display banner ads. Banner ads are images embedded in web pages. The image (which is typically in the shape of a square or rectangle) contains a hyperlink to the advertiser's website. The image typically contains text, graphics, and/or photographs that relate to the advertiser's goods or services.

10. Unlike sponsored links, Google does not use keywords to determine whether to display banner ads. Rather, Google scans the text of websites that have agreed to display ads, searching for terms that are relevant to different categories of advertisements. Based on these scanned terms, Google decides which advertisements to display.

11. Like sponsored link ads, Google charges an advertiser each time a user clicks on its banner ad.

12. In August 2008, the Alberta Defendants launched a new service and website, located at <www.creditreportamerica.com> ("Credit Report America"). The Alberta Defendants engaged third party contractor, Nethuesindia, in India, to design and implement the Credit Report America website.

13. Credit Report America offered consumers information about credit scores, credit reports, identity theft, and online security. Additionally, Credit Report America instructed consumers on how to get their free credit reports, as required to be provided under the Fair and Accurate Credit

1  Transactions Act ("FACTA") from the three major credit bureaus.

2      14.    Consumers who signed up for Credit Report America received a seven day trial for free, $1.00, or $2.95 depending on when they signed up (the prices went up over the life of Credit Report America).  If consumers did not cancel their trial membership in Credit Report America, they were then charged on a monthly basis for their access to the Credit Report America resources.

    15.    The Alberta Defendants stopped taking orders through the Credit Report America website in April 2009, and ultimately shut down the Credit Report America program altogether.

    16.    The Alberta Defendants contracted with several third parties to promote Credit Report America.  The Alberta Defendants did not advertise Credit Report America themselves—other than very limited test advertising before the website was actually taking orders.

    17.    In August 2008, the Alberta Defendants entered into an insertion order with the affiliate network, IntegraClick dba ClickBooth ("ClickBooth").  In this Insertion Order, ClickBooth agreed to promote Credit Report America through its network of affiliates.  Attached hereto as Exhibit G is a true and correct copy of an email from ClickBooth to me outlining the terms for the Insertion Order for Credit Report America.

    18.    In August 2008, the Alberta Defendants also began working with the media buyer ROI Revolution, Inc. ("ROI") to promote Credit Report America.  As is typical with media buyers, the Alberta Defendants paid ROI ten percent of the value of the media purchases that ROI arranged.

    19.    In October 2008, the Alberta Defendants entered into an insertion order with the affiliate network, Media Trust dba Advaliant ("Advaliant").  In this Insertion order, Advaliant agreed to promote Credit Report America through its network of affiliates and through other affiliate

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  networks. Conditionally filed under seal as Exhibit H is a true and correct
2  copy of the Insertion Order I executed on behalf of the Alberta Defendants
3  with Advaliant to promote Credit Report America.

4      20.    Over the next several months, ClickBooth and Advaliant made
5  the Credit Report America offer available to their affiliates to promote.

6      21.    Over the next several months, ROI worked with third party media
7  outlets to display advertisements for Credit Report America.

8      22.    Through the efforts of ClickBooth, Advaliant, and ROI (and their
9  affiliates and partners), a variety of advertisements were published for Credit
10 Report America on the Internet. These advertisements included banner ads,
11 contextual ads, search engine text ads and, email advertisements, blogs,
12 pop-up ads, and pop-under ads.

13     23.    The Alberta Defendants did not create any of the sponsored link
14 ads.

15     24.    While Defendants set up Google AdWords accounts for ROI to
16 use to promote Credit Report America, Defendants did not edit this account
17 or monitor account. Rather, Defendants created the account and turned it
18 over to ROI for use in promoting Credit Report America.

19     25.    On September 18, 2008 Plaintiff's counsel sent me a demand
20 letter stating that: a) Plaintiff owned and operated the website
21 <www.freecreditreport.com>; and b) that Credit Report America website had
22 copied web pages from FreeCreditReport.com. Conditionally filed under
23 seal is a true and correct copy of this letter is attached hereto as Exhibit I.

24     26.    In response to Plaintiff's September 18, 2008 letter, the Alberta
25 Defendants instructed their contractor, Nethuesindia, to change the look of
26 the Credit Report America website.

27     27.    On November 4, 2008 Plaintiff's counsel me another demand
28 letter, which stated that Defendants had violated Plaintiff's trademark rights

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

in FREECREDITREPORT.COM by: a) bidding on the phrase "freecreditreport"; and b) displaying the phrase "FreeCreditReport.com?". A true and correct copy of this letter is attached hereto as Exhibit J.

28. Prior to November 4, 2008 Defendants were not aware of Plaintiff's registration for the FREECREDITREPORT.COM mark.

29. After receiving this letter, I orally instructed Advaliant, ClickBooth, and ROI not to bid on or display the phrase "freecreditreport.com."

30. On December 30, 2008, I instructed Advaliant and ClickBooth by email not to bid on or display the FREECREDITREPORT.COM mark. Conditionally filed under seal as Exhibit K is a true and correct copy of this email to Craig Leonard at Advaliant.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 12, 2010, at Alberta, Canada.



Jesse Willms