1  RHONDA R. TROTTER, Bar Number 169241
   rtrotter@kayescholer.com
2  THEODORE W. MAYA, Bar Number 223242
   tmaya@kayescholer.com
3  KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
4  Los Angeles, California  90067
   Telephone:  (310) 788-1000
5  Facsimile:   (310) 788-1200

6  Attorneys for Plaintiff and Counter-Defendant
   CONSUMERINFO.COM, INC.
7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11                  WESTERN DIVISION

12

13 CONSUMERINFO.COM, INC., a        )  CASE NO. SA CV 09-0055 DMG (MLGx)
   California corporation,          )
                                    )  **PLAINTIFF CONSUMERINFO.COM,**
14          Plaintiff,              )  **INC.'S MEMORANDUM OF POINTS**
                                    )  **AND AUTHORITIES IN**
15       v.                         )  **OPPOSITION TO DEFENDANTS'**
                                    )  **MOTION FOR SUMMARY**
16 JESSE WILLMS, an individual;     )  **ADJUDICATION**
   EDIRECT, a Canadian Partnership; )
17 1016363 ALBERTA LTD., a          )  Fed. R. Civ. P. 56
   Canadian Corporation; 1021018    )
18 ALBERTA LTD., a Canadian         )  *[Filed concurrently with Plaintiff's*
   Corporation; all doing business as )  *Statement of Genuine Issues; Proposed*
19 "WU-YI SOURCE," "JUST            )  *Order; Evidentiary Objections;*
   THINK MEDIA," and "CREDIT        )  *Declaration of David Williams;*
20 REPORT AMERICA,"                 )  *Declaration of Theodore Maya]*
                                    )
21          Defendants.             )
                                    )  Hon. Dolly M. Gee
22                                  )
                                    )  Hearing Date:   March 12, 2010
23 _____ )  Time:           2:00 P.M.
                                    )  Place:          Court Room 7
24 AND RELATED                      )                  Spring Street
   COUNTERCLAIM.                    )
25                                  )
                                    )
26 _____ )

27

28

KAYE SCHOLER LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KAYE SCHOLER LLP

# TABLE OF CONTENTS

Page

I.  Introduction ...................................................................................................1

II.  Facts .............................................................................................................2

    A.  ConsumerInfo Owns the FREECREDITREPORT.COM and TRIPLE ADVANTAGE Federally Registered Trademarks ...............2

    B.  ConsumerInfo Creates Its Inherently Distinctive Non-Functional "Blondie" Website Trade Dress ........................................................3

    C.  Defendants Blatantly Copy ConsumerInfo's Blondie Website Trade Dress to Launch CreditReportAmerica.com ...........................4

    D.  The Defendants Develop and Distribute Infringing Ads for CreditReportAmerica.com ........................................................4

    E.  The Defendants Partner With Marketers to Infringe ConsumerInfo's Trademarks and Falsely Advertise Defendants' "Products." ..................................................................................5

    F.  Defendants Had Actual Notice of ConsumerInfo's Trademark Rights Since at Least September 2008...................................................7

    G.  Willms Refuses to Exercise the Right and Ability to Control Affiliates............................................................................................8

    H.  Defendants Also Infringe — and Allow their Affiliates to Infringe — By Using Counterfeit Marks ......................................8

    I.  Defendant Jesse Willms Was an Active and Direct Participant in Defendants' False Advertising and Infringement ...............................9

III.  The Standard on Summary Judgment ..........................................................10

IV.  Triable Issues of Material Fact Exist on ConsumerInfo's First Claim for Direct Trademark and Trade Dress Infringement, Third Claim for Unfair Competition, Fourth Claim for Dilution, and Eighth Claim for Common Law Trademark Infringement...........................................................10

    A.  Defendants Are Directly Liable for Infringing ConsumerInfo's FREECREDITREPORT.COM and TRIPLE ADVANTAGE Marks..............................................................................................10

    B.  Defendants Had Actual Notice of ConsumerInfo's FREECREDITREPORT.COM Registration .....................................12

    C.  Defendants Are Separately Liable for Direct Trade Dress Infringement ................................................................................14

V.  Triable Issues of Fact Preclude Summary Judgment on ConsumerInfo's Sixth and Seventh Claims for Secondary Trademark Infringement ............18

VI.  Defendants Are Liable for Direct and Secondary False Advertising...........20

VII.  Triable Issues of Fact Preclude Summary Judgment on ConsumerInfo's Fifth Claim for Counterfeiting ..........................................21

IX.  Defendant Willms Actively and Directly Participated in False Advertising, Trademark Infringement, Trade Dress Infringement, and Copyright Infringement and Is Personally Liable on All Claims ................23

i

X.   ConsumerInfo Is Entitled to Summary Judgment on Defendants'
     Counterclaim ................................................................24

XI.  Conclusion ....................................................................25

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

**Cases**

*Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc*,
    989 F. Supp. 1276 (C.D. Cal. 1997)............................................................21

*Am. Scientific Chem., Inc. v. Am. Hospital Supply Corp.*,
    690 F.2d 791, 793 (9th Cir. 1982)...........................................................18

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................10

*Avalos v. Baca*,
    2006 U.S. Dist. LEXIS 58342 (C.D. Cal. 2006)..........................................10

*Babbit Electronics v. Dynascan Corp.*,
    38 F.3d 1161 (9th Cir. 1994)....................................................................24

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
    683 F. Supp. 899 (E.D.N.Y. 1987)..............................................................13

*Blue Nile, Inc. v. Ice.Com, Inc.*,
    478 F. Supp. 2d 1240 (W.D. Wash. 2007) .................................................16

*Clicks Billiards Inc. v. Sixshooters Inc.*,
    251 F.3d 1267 (9th Cir. 2001)....................................................10, 17, 18

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
    173 F.3d 725 (9th Cir. 1999) ....................................................................23

*Davis v. Metro Production, Inc.*,
    885 F.2d 515 (9th Cir. 1989)....................................................................24

*Derrick Mfg. Corp. v. Southwestern Wire Cloth, Inc.*,
    934 F. Supp. 796 (S.D Tex. 1996)..............................................................13

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002)..................................................................10

*Faegre & Benson, LLP v. Purdy*,
    2004 U.S. Dist. LEXIS 896 at (D. Minn. 2004),
    *aff'd* 75 U.S.P.Q.2D (BNA) 1062 (8th Cir. 2005) .....................................15

*Fin. Express LLC v. Nowcom Corp.*,
    564 F. Supp. 2d 1160 (C.D. Cal. 2008).....................................................11

*Fuddruckers, Inc. v. Doc's BR Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987) ....................................................................18

*Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*,
    2007 U.S. Dist. LEXIS 32450 (N.D. Cal. 2007)..........................................12

*Int'l Stamp Art, Inc. v. U.S. Postal Service*,
    2005 U.S. Dist. LEXIS 42073 (N.D. Ga. 2005)...........................................13

**KAYE SCHOLER LLP**

iii

KAYE SCHOLER LLP

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   408 F.3d 596 (9th Cir. 2005) ...................................................................10

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) ...................................................................21

*Montres Rolex v. Snyder*,
   718 F.2d 524 (2nd Cir. 1983) ...................................................................22

*Mutual Pharm. Co. v. Ivax Pharm., Inc.*,
   459 F. Supp. 2d 925 (C.D. Cal. 2006) ...................................................20

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n. Inc.*,
   182 F.3d 157 (2d Cir. 1999) ...................................................................10

*Peri Hall & Assocs. v. Elliot Inst. for Soc. Scis. Research*,
   2006 U.S. Dist. LEXIS 26234 (D. Mo. 2006) ....................................15, 16

*Rescuecom Corp. v. Google Inc.*,
   562 F.3d 123 (2d. Cir. 2009) ...................................................................11

*Roulo v. Russ Berrie & Co., Inc.*,
   886 F.2d 931 (7th Cir. 1981) ...................................................................16

*Societe des Hotels Meridien v. LaSalle Hotel Operation P'ship*,
   380 F.3d 126 (2nd Cir. 2004) ...................................................................21

*Taco Cabana  v. Two Pesos*,
   932 F.2d 1113 (5th Cir. 1991),
   *aff'd Two Pesos*, 505 U.S. 763 ..........................................................14, 17

*Two Pesos v. Taco Cabana*,
   505 U.S. 763 (1992) .........................................................................14, 15, 17

*United States v. 10,510 Packaged Computer Towers*,
   152 F. Supp. 2d 1189 (N.D. Cal. 2001) ...................................................22

*Vision Sports, Inc. v. Melville Corp.*,
   888 F.2d 609 (9th Cir. 1989) ...................................................................17

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*,
   388 F. Supp. 2d 435 (D. Del. 2005) .........................................................17

*Wolf Designs, Inc. v. DHR & Co.*,
   322 F. Supp. 2d 1065 (C.D. Cal. 2004) ...................................................24

**Statutes**

15 U.S.C. § 1114(b) .........................................................................22, 23

15 U.S.C. § 1117(b)(2) ...........................................................................24

15 U.S.C. § 1127...................................................................................23

**Other Authorities**

4 MCCARTHY,
    MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:19 (4th
    ed. 2010) ..................................................................................................22

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

23283223.DOCX          OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KAYE SCHOLER LLP**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

Defendant Willms is a hands-on infringer who has been directly involved in the conduct underlying ConsumerInfo's infringement and false advertising claims. While Defendants seek to avoid liability by blaming everything on their affiliates, the evidence shows Defendants — and Willms in particular — worked closely with their affiliates, provided the affiliates with false and infringing advertisements, and controlled the affiliates' advertising activities (or chose not to, as the case may be). Moreover, Defendants themselves directly engaged in a wide variety of false advertising and infringement, creating and distributing advertisements that infringed ConsumerInfo's trademarks and copyrights while simultaneously falsely advertising Defendants would provide instant credit reports, credit scores, and credit monitoring.  Directly and through their affiliates and partners, Defendants engaged in a variety of other misconduct, such as bidding on ConsumerInfo's FREECREDITREPORT.COM trademark as a search engine keyword.

Defendants' argument that ConsumerInfo's trademark claims fail due to a purported failure to include the "®" symbol with in the months immediately following the mark's registration fails on legal and factual grounds.  The ® symbol is not necessary for Defendants to have actual notice of ConsumerInfo's trademark rights, and will not defeat ConsumerInfo's right to damages for Defendants' actions after they had notice, nor for injunctive relief prior to actual notice.  Moreover, the evidence raises questions of fact concerning whether Defendants had actual notice of ConsumerInfo's trademark rights at all times, and particularly since September 2008, when ConsumerInfo sent them a letter providing notice, and when FreeCreditReport.com television commercials were airing with the ® symbol.

Summary judgment is inappropriate on ConsumerInfo's trade dress claim because questions of fact exist regarding: (1) whether ConsumerInfo's trade dress is inherently distinctive, and thus protectable regardless of any secondary meaning,

1

and (2) whether secondary meaning indeed developed in the trade dress.

Finally, as set forth in ConsumerInfo's own pending motion for partial summary judgment, it is ConsumerInfo, not Defendants, that is entitled to summary judgment on Defendants' counterclaim.  No evidence indicates ConsumerInfo made a knowingly false misstatement of fact to the PTO when applying to register FREECREDITREPORT.COM, on which the PTO relied.  While Defendants point to uses by third parties of similar terms as domain names, ConsumerInfo disclosed the existence of these domain names and there is no evidence that any party had *trademark* rights in ConsumerInfo's mark superior to ConsumerInfo's rights.

## II.   Facts

### A.   ConsumerInfo Owns the FREECREDITREPORT.COM and TRIPLE ADVANTAGE Federally Registered Trademarks.

ConsumerInfo is an online marketing business that provides consumers with a broad range of online credit-related products, including consumer credit reports, credit scores, credit monitoring, and identity theft protection products.  (PSUF at 1)[1] One of ConsumerInfo's popular websites through which it sells its credit-related products is < www.freecreditreport.com.>   (PSUF at 2).  ConsumerInfo also sells a popular credit monitoring product called Triple Advantage. (Plaintiff's Separate Statement of Genuine Issues ("PSGI") at 80).   ConsumerInfo obtained a federal registration for the TRIPLE ADVANTAGE trademark in November 4, 2008. (PSGI at 81).

ConsumerInfo expends tremendous resources advertising its products,

---

[1] ConsumerInfo filed its own motion for partial summary judgment and Proposed Separate Statement of Uncontroverted Facts ("PSUF").  ConsumerInfo incorporates here its submissions in connection with its own motion, and will cite to both the PSUF and to Plaintiff's Separate Statement of Genuine Issues in Dispute ("PSGI"), filed concurrently with this Memorandum.

KAYE SCHOLER LLP

1   including on major television networks such as CNN, CNBC, NBC, CBS, MSNBC,

2   and Fox.  (PSGI at 82).   ConsumerInfo's FreeCreditReport.com television

3   commercials have become so popular that numerous consumers have posted videos

4   of their own renditions of the FreeCreditReport.com jingles on websites such as

5   You Tube.  (PSGI at 83).  ConsumerInfo also spends significant resources

6   advertising its products on the Internet.  (PSGI at 84).

7   　　　　Having spent millions of dollars advertising and promoting

8   FREECREDITREPORT.COM, generating tens of millions in annual revenues, and

9   developing wide recognition of the brand, ConsumerInfo obtained the federal

10   registration for FREECREDITREPORT.COM in May 2008.  (PSUF at 36).

**B.**   **ConsumerInfo Creates Its Inherently Distinctive Non-Functional**

**"Blondie" Website Trade Dress.**

13   　　　　In 2005, ConsumerInfo began developing and testing the "Blondie" landing

14   page for FreeCreditReport.com.  (PSGI at 99).   Blondie remained in use on

15   FreeCreditReport.com throughout 2008 and remains in ConsumerInfo's library for

16   use in the future.  (PSGI at 102).  The Blondie trade dress consists of an orange, blue,

17   and green colored three-box design, with a photo of a woman holding an orange sign

18   containing the words "Free Credit Report & Score," and a specific overall webpage

19   layout.  (PSGI at 95).

20   　　　　ConsumerInfo made a substantial investment in the design, creation and

21   maintenance of the Blondie webpage.  (PSGI at 92-95, 106).  Known as the "SWAT

22   Team," a group of ConsumerInfo executives and staff, including the then company

23   President and sales and marketing personnel spent over four months designing,

24   creating, and testing the Blondie webpage.  (PSGI at 89-91).  The Blondie website

25   included Terms and Conditions which expressly stated that the website content, were

26   ConsumerInfo's protected trade dress and intellectual property.  (PSGI at 109).

27   　　　　ConsumerInfo's TRIPLE ADVANTAGE and FREECREDITREPORT.COM

28   trademarks appear on the Blondie landing page.  (PSGI at 110).

KAYE SCHOLER LLP

**C.     Defendants Blatantly Copy ConsumerInfo's Blondie Website Trade Dress to Launch CreditReportAmerica.com**

Defendants are a Canadian national, Jesse Willms, and his solely owned business entities.  (Defendants' Statement of Undisputed Facts ("DSUF) at 1-9; PSGI at 116).  Over the Internet, Defendants market products ranging from teeth whiteners to diet teas.  (DSUF at 11).

In April 2008, Defendants began testing a new purported "product line" using the domain name www.creditreportamerica.com.  (PSGI at 117).  When Defendants launched their CreditReportAmerica website, they began by copying ConsumerInfo's Blondie webpage in a wholesale fashion, simply replacing the FreeCreditReport.com logo with one that read "CreditReportAmerica.com," and replacing ConsumerInfo's image of a blond woman with a brunette.  (PSGI at 118).  Versions of Defendants' CreditReportAmerica.com landing page contain ConsumerInfo's name and the TRIPLE ADVANTAGE trademark  (PSGI at 119).

At their CreditReportAmerica website, Defendants falsely advertised that consumers could obtain an instant free credit report, credit score, and credit monitoring at creditreportamerica.com. (PSGI at 120-122).  Defendants in fact never provided any of these products to consumers.  (PSGI at 123).  Rather, consumers who purchased Defendants' "product" were provided with a downloadable form to mail in to the three major credit bureaus (Experian, Transunion and Equifax) to obtain a federally mandated free credit report.  (PSGI at 124).  Defendants also falsely advertised that their products were "seen on" major television networks such as CNN and MSNBC, the same networks on which ConsumerInfo heavily advertises its credit report, credit score and credit monitoring products.  (PSGI at 125).

**D.     The Defendants Develop and Distribute Infringing Ads**

Defendant Jesse Willms began his Internet-based businesses while in high school, in approximately 2004.  (PSGI at 126).  At that time, Willms established accounts with Google AdWords, a Google search engine system that allows

KAYE SCHOLER LLP

advertisers to "bid" on keywords, such that when a consumer searches for that word or term in Google, the advertiser's advertisement — known as a sponsored link advertisement — is returned.  (PSGI at 127-128; DSUF at 20-23).  The advertiser (or user) of the AdWords system determines on which keywords to bid.  (DSUF at 20).

Records subpoenaed from Google for an AdWords account held in the name "Jesse Willms" show that Defendants directly bid on a variety of nearly identical iterations of ConsumerInfo's FREECREDITREPORT.COM mark to trigger their CreditReportAmerica sponsored link advertisements, including: (1)"experian freecreditreport com"; (2) "freecreditreport com"; (3) "freecreditreport com login"; (4) "freecreditreport comk"; and (5) "www freecreditreport com."  (PSGI at 130).

Defendants had access to the "Jesse Willms" Google AdWords account and the ability to place bids on keywords and place sponsored links using that and other accounts established by Defendants.  (PSGI at 131).

Defendants directly used ConsumerInfo's TRIPLE ADVANTAGE trademark on the creditreportamerica.com landing page.  (PSGI at 175).  Defendants also used both the TRIPLE ADVANTAGE and FREECREDITREPORT.COM marks by copying ConsumerInfo's banner ads containing those marks, and using those banner ads as their own.  (PSGI at 132).

Defendants Willms and eDirect allege in their Counterclaim in this action that, because of ConsumerInfo's lawsuit against them, they "have limited their use of the [FREECREDITREPORT.COM] Mark and derivatives and permutations thereof." (PSGI at 133).  They further allege they "have incurred expense in creating workarounds for" FREECREDITREPORT.COM.  (PSGI at 134).

**E.** **The Defendants Partner With Marketers to Infringe ConsumerInfo's Trademarks and Falsely Advertise Defendants' "Products."**

In April 2008, Defendants partnered with ROI Revolution, a company that specializes in online marketing of its clients' products and websites.  (PSGI at 135). No written agreement exists between ROI and Defendants; rather, ROI was to be

5

KAYE SCHOLER LLP

paid, if at all, according to how "successful" the CreditReportAmerica business was.  (PSGI at 136).   Indeed, unlike standard affiliate networks, who are compensated by the advertiser each time a consumer is sent to the advertiser's website and purchases a good or service, consumer traffic obtained through ROI's efforts was not even separately tracked by Defendants.  (DSUF at 16, 18; PSGI at 137).  ROI signed agreements on Defendants' behalf with third parties engaged to promote CreditReportAmerica.  (PSGI at 138).

Defendants created banner ads and email ads for ROI to place on various websites, falsely advertising Defendants' CreditReportAmerica products.  (PSGI at 139).  Willms personally reviewed and approved the CreditReportAmerica banner ads, including banner ads that were exact or substantially similar copies of ConsumerInfo's copyrighted ads.  (PSGI at 169).  Willms also personally directed ROI to review ConsumerInfo ads, to develop advertising for CreditReportAmerica, and Willms provided ROI with access to a tool called "TNS" to allow ROI to download ConsumerInfo's banner ads.  (PSGI at 140).

ROI regularly reported to Defendants — including directly to Willms — the results of its efforts and provided reports reflecting the content of text ads falsely advertising the Credit Report America "product."  (PSGI at 141).  ROI communicated with Willms about consumer complaints concerning Defendants' false advertisements.  (PSGI at 143).

Defendants provided ROI with Google Adwords and Yahoo Search Marketing accounts — paid for by Defendant Willms — in order for ROI to place sponsored link ads for CreditReportAmerica.  (PSGI at 144).  ROI used these accounts to bid on very close iterations of the Mark, including "freecreditreport com," "freecreditreport com review," "experian freecreditreport com," and "freecreditreport com login."  (PSGI at 145).

Defendants contracted with several affiliate networks to promote the CreditReportAmerica website and products, including AdValiant, IntegraClick (dba

KAYE SCHOLER LLP

KAYE SCHOLER LLP

ClickBooth), and Hydra Network.  (PSGI at 146).  The contracts with these affiliate networks specifically stated that Defendants were to provide all advertising content and were solely responsible for that content.  (PSGI at 147).  Defendants provided the networks with infringing banner ads that falsely advertised Defendants' products.  (PSGI at 148).  Under the contracts, Defendants had the ability to direct the networks to cease allowing any particular member of the network from advertising the CreditReportAmerica product.  (PSGI at 149).   Defendants also had the right and ability to monitor and control the affiliate networks by expressly forbidding affiliate members from bidding on certain trademarked terms or otherwise using those trademarks in advertising.  (PSGI at 150).  Indeed, Willms used this right and ability on previous occasions with respect to other products, forbidding affiliates from using the trademarks "Oprah" and "Wu Long" in connection with his diet products.  (PSGI at 151).

**F.**   **Defendants Had Actual Notice of ConsumerInfo's Trademark Rights Since at Least September 2008.**

In a cease and desist letter dated September 18, 2008, ConsumerInfo notified Willms of its rights in the FREECREDITREPORT.COM Mark.  (PSGI at 152).  This letter attached and referred to a stipulated injunction with a third party concerning ConsumerInfo's trademark rights.  (*Id.*)  When Willms received this letter, he was well aware of what trademark rights were and the importance of those rights, as he previously had been sued for trademark infringement by numerous parties, and previously had forbidden his affiliates, personally, from using other parties' marks after receiving cease and desist letters.  (PSGI at 153).  Furthermore, television advertisements and other advertisements widely published by ConsumerInfo, including in September 2008, featured the "®" symbol with ConsumerInfo's mark.  (PSGI at 111).

Defendants also were put on notice of ConsumerInfo's trademark rights by ConsumerInfo's second letter to Willms, sent November 4, 2008, which

7

specifically informed Willms that sponsored link advertisements were infringing ConsumerInfo's registered FREECREDITREPORT.COM mark .  (PSGI at 154).

**G.**   **Willms Refuses to Exercise the Right and Ability to Control Affiliates.**

After receiving ConsumerInfo's September and November letters, Willms failed to notify the affiliate networks that affiliate members were infringing ConsumerInfo's marks in sponsored link advertisements, nor did he direct them to cease allowing the affiliate members to promote CreditReportAmerica.  (PSGI at 155).  Instead, ConsumerInfo was forced to send two more C&D letters — on December 11 and 29  — informing Defendants of the continuing trademark infringement.  (PSGI at 156).  Finally, on December 30, 2008, Defendant Willms sent a one line email to *one* affiliate network, Advaliant, stating only: "For all creditreportamerica offers, ban the keyword: **freecreditreport.com**, make it bold, they are threatening [sic] to sue :( ."  (PSGI at 157).   Willms made no effort to identify the offending affiliates, no effort to ensure those affiliates could no longer promote CreditReportAmerica, no effort to ensure that affiliates ceased using ConsumerInfo's mark other than as a search engine keyword, and no effort to ensure that other affiliates ceased using the mark as a keyword.  (PSGI at 158)

Not until January 23, 2009 — ten days after ConsumerInfo filed this lawsuit — did Defendants direct their affiliate networks to cease allowing affiliate members to bid or otherwise use the FREECREDITREPORT.COM mark.  (PSGI at 159).  And, not until January 28, 2009 did Defendants suggest that the affiliate networks be directed to terminate the offending affiliates from promoting CreditReportAmerica.  (PSGI at 160).

**H.**   **Defendants Also Infringe By Using Counterfeit Marks.**

Defendants and their affiliates also infringed FREECREDITREPORT.COM by creating counterfeit marks.  Defendants, through their CreditReportAmerica website, ran counterfeit ads in Google, which were placed in close proximity to ConsumerInfo's own ad containing its registered mark:

8

| Defendants' Ad | ConsumerInfo's Ad |
|---|---|
| $0 – FreeCreditReport ®<br>Seen On CNN, NBC, CBS, & FOX News!<br>www.CreditReportAmerica.net | FreeCreditReport.com®<br>A Good Credit Score = 700 or Above.<br>See Yours in 2 Easy Steps for $0!<br>www.FreeCreditReport.com |
| $0 – FreeCreditReport ®<br>Free 3-Bureau Credit Report.<br>Seen On CNN, NBC, CBS & FOX News!<br>www.CreditReportAmerica.net | FreeCreditReport.com®<br>Did You Overspend this Holiday?<br>Check Your Credit Score for $0!<br>www.FreeCreditReport.com |

(PSGI at 161).

## I.  **Defendant Willms Was an Active and Direct Participant.**

Defendant Willms actively authorized, controlled, directed, and personally participated in the CreditReportAmerica false advertising and infringement. Willms personally made the decision to falsely advertise that consumers could obtain an instant credit score through CreditReportAmerica.  (PSGI at 163). Willms personally approved all banner ads for CreditReportAmerica, including those that copied ConsumerInfo's banners.  (PSGI at 164-165, 169).  Willms personally reviewed and approved other ads that contained false statements about CreditReportAmerica's products.  (PSGI at 168).  He personally provided to third party affiliate networks email advertisements containing false statements about CreditReportAmerica.  (PSGI at 171).  Willms personally received ConsumerInfo's cease and desist letters, but made the decision not to instruct any of the affiliate networks or ROI to cease bidding on or otherwise using the FREECREDITREPORT.COM mark until after receiving ConsumerInfo's fourth cease and desist letter.  (PSGI at 172).

Willms's self-serving denials of direct personal involvement in the infringement are refuted by the foregoing evidence, and by his general lack of credibility.  For example, at his deposition in this matter, Willms was impeached

KAYE SCHOLER LLP

1  repeatedly regarding perjured statements made in his sworn written discovery

2  responses concerning CreditReportAmerica advertising.  (PSGI at 173).

3  III.   <u>The Standard on Summary Judgment</u>

4  Because "summary judgment is a 'drastic device' cutting off a party's right

5  to present its case to a jury, the moving party bears a 'heavy burden' of

6  demonstrating the absence of any triable issue of material fact."  *Avalos v. Baca*,

7  2006 U.S. Dist. LEXIS 58342 at *4 (C.D. Cal. 2006) (quoting *Nationwide Life Ins.*

8  *Co. v. Bankers Leasing Ass'n. Inc.*, 182 F.3d 157, 160 (2d Cir 1999)).  All of the

9  evidence must be construed in the light most favorable to ConsumerInfo, the non-

10  moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

11  "'Because of the intensely factual nature of trademark disputes, summary

12  judgment is generally disfavored in the trademark arena.'"  *KP Permanent Make-*

13  *Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005) (quoting

14  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)); *Clicks*

15  *Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1267 (9th Cir. 2001) (applying same

16  standard against summary judgment in trade dress case).

17  **IV.   <u>Triable Issues of Material Fact Exist on ConsumerInfo's Claims for</u>**

18  **<u>Direct Trademark and Trade Dress Infringement, Unfair Competition,</u>**

19  **<u>Dilution, and Common Law Trademark Infringement.</u>**

20  **A.   <u>Defendants Are Directly Liable for Infringing ConsumerInfo's</u>**

21  **<u>FREECREDITREPORT.COM and TRIPLE ADVANTAGE Marks.</u>**

22  Defendants' attack ConsumerInfo's claims against them for direct trademark

23  infringement of FREECREDITREPORT.COM and TRIPLE ADVANTAGE by

24  asserting they did not use the marks directly themselves.  (Defendants' Mot. at p. 13-

25  14).  However, the evidence demonstrates Defendants did themselves use

26  ConsumerInfo's marks in commerce.  At a minimum, there are triable issues of

27  material fact as to Defendants' direct use of the marks:

28

KAYE SCHOLER LLP

- Records subpoenaed from Google show that, using an AdWords account held in the name "Jesse Willms," Defendants directly bid on a variety of nearly identical iterations of ConsumerInfo's FREECREDITREPORT.COM mark to trigger their sponsored link advertisements for CreditReportAmerica, including: (1)"experian freecreditreport com"; (2) "freecreditreport com"; (3) "freecreditreport com login"; (4) "freecreditreport comk"; and (5) "www freecreditreport com."  (PSGI at 130).

- It is undisputed that Defendants had access to the "Jesse Willms" account and the ability to bid on keywords and place sponsored links using that and other accounts established by Defendants.  (PSGI at 131).

- Defendants directly used ConsumerInfo's TRIPLE ADVANTAGE trademark on the creditreportamerica.com landing page.  (PSGI at 175).

- Defendants used TRIPLE ADVANTAGE and FREECREDITREPORT.COM by copying ConsumerInfo's banner ads containing those marks, and using those banner ads as their own.  (PSGI at 132).

- Defendants Willms and eDirect allege in their Counterclaim in this action that they "have limited use of the [FREECREDITREPORT.COM] Mark and derivatives and permutations thereof."  (PSGI at 133).

- Defendants Willms and eDirect further allege in their Counterclaim that they "have incurred expense in creating workarounds for [FREECREDITREPORT.COM]."  (PSGI at 134).

Bidding on a registered trademark as a search engine keyword constitutes "use" of the mark under the Lanham Act. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 125-26, 129 (2d. Cir. 2009) (holding plaintiff successfully alleged Google "used" mark in commerce through its AdWords program and keyword suggestion tool); *Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1173 (C.D. Cal. 2008) ("[P]urchasing keywords containing a plaintiff's trademarks constitutes a 'use in commerce' under the plain meaning of the Lanham Act [supporting a finding of

11

KAYE SCHOLER LLP

infringement]"); *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2007 U.S. Dist. LEXIS 32450 (N.D. Cal. 2007) (denying summary judgment on direct infringement claim based on use of trademarks as keywords).

Willms's assertions that he and the other Defendants were not responsible for bidding on the FREECREDITREPORT.COM mark are not credible. First, Willms is personally listed as the account holder on one of the accounts used to bid, had access and the ability to use that account and others to place ads, and Willms admits that he used Google Adwords personally in the past to bid on keywords and place sponsored links. (PGSI at 127-128). Second, Willms repeatedly has been impeached with prior sworn testimony in this case and, at a minimum, his general lack of credibility raises a genuine issue of fact as to whether he (or others employed by him) placed the infringing ads. (PGSI at 173).

Moreover, it is undisputed that Defendants used the TRIPLE ADVANTAGE and FREECREDITREPORT.COM marks in banner ads, and the TRIPLE ADVANTAGE mark on its landing pages. (PGSI at 174-175). Hence, Defendants' motion for summary judgment on ConsumerInfo's first claim must be denied.

**B.**   **Defendants Had Actual Notice of ConsumerInfo's FREECREDITREPORT.COM Registration.**

Defendants also contend that ConsumerInfo's trademark infringement claims fail because ConsumerInfo purportedly did not display the "®" symbol with the FREECREDITREPORT.COM mark. (Defendants' Mot. at p. 16-18).[2] Defendants' argument misses the mark both legally and factually.

First, ConsumerInfo did in fact display the ® symbol in connection with the FREECREDITREPORT.COM mark. (PSGI at 111). Landing pages and advertisements predating registration of the trademark in May 2008 did not incorporate the ® symbol, and after that registration issued there was a transition

---

[2] Defendants do not claim ignorance of the TRIPLE ADVANTAGE registration.

KAYE SCHOLER LLP

1    period during which some landing pages and advertisements did not contain the

2    symbol, while others did.  (PSGI at 112).  By the end of 2008, new ads and landing

3    pages adopted by ConsumerInfo generally included the symbol.  (PSGI at 113).

4    Television advertisements for FreeCreditReport.com that aired in August 2008

5    featured the ® symbol.  (PSGI at 111).

6           Second, contrary to Defendants' legal contention, failure to provide statutory

7    notice of registration (through use of the symbol) does not defeat a trademark

8    infringement claim.  *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899,

9    911 (E.D.N.Y. 1987).  Rather, if a plaintiff failed to give statutory notice, damages

10   are recoverable for the period of time after the Defendant has actual notice of the

11   registration.  *Id.*  The plaintiff, therefore, is still entitled to injunctive relief, and to

12   damages for infringement after the defendant's actual notice.  *Id.* at 912.

13          Moreover, whether a Defendant had actual notice of a trademark registration

14   is a question of fact, which may be established by circumstantial evidence.  *Derrick*

15   *Mfg. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 796, 812-13 (S.D Tex.

16   1996) (finding issue of face re: actual notice in light of registration, defendant's

17   sophistication, and legal representation); *Int'l Stamp Art, Inc. v. U.S. Postal Service*,

18   2005 U.S. Dist. LEXIS 42073 at *24-25 (N.D. Ga. 2005) (denying defendant's

19   summary judgment on plaintiff's damages claim because circumstantial evidence

20   regarding defendant's actual notice of plaintiff's mark was sufficient to create a

21   genuine issue of material fact).  The circumstantial evidence demonstrates that the

22   Defendants here had actual notice of the FREECREDITREPORT.COM registration

23   prior to launching the CreditReportAmerica website in August 2008:

24        (1) FREECREDITREPORT.COM is on the Principal Register (PSUF at 36);

25        (2) Prior to launching CreditReportAmerica, Defendants were well aware of

26             what trademark rights were and the importance of those rights, as Willms

27             previously had been sued for trademark infringement by numerous parties,

28             and previously had forbidden his affiliates, personally, from using other

KAYE SCHOLER LLP

13

KAYE SCHOLER LLP

parties' marks after receiving cease and desist letters.  (PSGI at 153).

(3) Defendants were on actual notice of ConsumerInfo's claims that it had trademark rights in the FREECREDITREPORT.COM mark as of at least September 18, 2008, when ConsumerInfo sent its first cease and desist letter to Defendants attaching a stipulated injunction spelling out ConsumerInfo's rights to the mark.  (PSGI at 152).

(4) At least as of October 10, 2008, the Defendants themselves sent ConsumerInfo's banner ads, including FREECREDITREPORT.COM with the "™" designation, to their affiliates. (PSGI at 164).

Defendants concede they had actual notice of ConsumerInfo's FREECREDITREPORT.COM federal registration as of November 4, 2008. Hence, even under Defendants' incorrect theory, ConsumerInfo is entitled to trademark infringement damages for the infringement that occurred after that date, including the infringement that was the subject of ConsumerInfo's December 2008 cease and desist letters.  Finally, under no circumstances could dismissal of an entire claim, legal and equitable, be justified on this basis.

**C.   Defendants Are Separately Liable for Direct Trade Dress Infringement.**

Defendants also misstate the law with respect to trade dress infringement, asserting a plaintiff must demonstrate that its trade dress has acquired secondary meaning. (Defendants' Mot. at 18).  However, where trade dress is inherently distinctive and nonfunctional, a plaintiff need not prove it has acquired secondary meaning.  *Two Pesos v. Taco Cabana*, 505 U.S. 763, 769 (1992).

In determining whether trade dress is inherently distinctive, the analysis focuses on the trade dress "as a whole."  *Taco Cabana  v. Two Pesos*, 932 F.2d 1113, 1120 (5th Cir. 1991), *aff'd Two Pesos*, 505 U.S. 763.  In *Two Pesos*, Taco Cabana's claimed trade dress for a Mexican fast food restaurant was described as:

> a festive eating atmosphere having interior dining and patio areas decorated with artifacts, bright colors, paintings and murals.  The patio includes interior and exterior areas with the interior patio capable of

14

KAYE SCHOLER LLP

> being sealed off from the outside patio by overhead garage doors.  The stepped exterior of the building is a festive and vivid color scheme using top border paint and neon stripes.  Bright awnings and umbrellas continue the theme.

505 U.S. at 764; 932 F.2d at 1116.

Defendant argued Taco Cabana's trade dress amounted to an unprotectable "Mexican motif."  *Id.*  The Fifth Circuit rejected this argument, stating "[a] competitor can use elements of Taco Cabana's trade dress, but Taco Cabana 'can protect a combination of visual elements that, taken together, . . . may create a distinctive visual impression.'"  *Id.* at 1118 (citations omitted).  In further finding Taco Cabana's trade dress inherently distinctive, the Fifth Circuit reemphasized that the trade dress had to be viewed as a whole, because the whole "is often greater than the sum of its parts."  *Id.* at 1120.

Likewise, ConsumerInfo's nonfunctional Blondie trade dress, consisting of an orange, blue, and green colored three-box design, with a photo of a woman holding an orange sign containing the words "Free Credit Report & Score," and with a specific overall webpage layout, must be viewed as a whole.  Defendants wrongly describe ConsumerInfo's trade dress as a "block of text" and "a blonde woman at the top," (Defendants' Mot. at p. 18), and fail to view the Blondie webpage "as a whole," the elements of which Defendants copied, as a whole.

Moreover, courts have determined that website trade dress, like that of ConsumerInfo, is protectable.  For example, in *Peri Hall & Assocs. v. Elliot Inst. for Soc. Scis. Research*, 2006 U.S. Dist. LEXIS 26234 at *8-9 (D. Mo. 2006), the court granted plaintiff an injunction where "defendants simply copied the look and feel of [plaintiff's] website."  *See also Faegre & Benson, LLP v. Purdy*, 2004 U.S. Dist. LEXIS 896 at *4-5 (D. Minn. 2004), *aff'd* 75 U.S.P.Q.2D (BNA) 1062 (8th Cir. 2005) (issuing preliminary injunction prohibiting defendant from copying plaintiff's website trade dress); *Blue Nile, Inc. v. Ice.Com, Inc.*, 478 F. Supp. 2d 1240, 1243-46

KAYE SCHOLER LLP

1  (W.D. Wash. 2007) (denying motion to dismiss trade dress claim based on
2  allegations that defendant copied plaintiff's website).

3       The *Peri Hall* court noted plaintiff used its website "as the primary means by
4  which the [plaintiff] provides information to voters," and that plaintiff made a
5  substantial investment in developing its website, including hiring a specialist design
6  firm, and spending many hours and substantial monetary resources "designing,
7  creating, and maintaining" the website. *Id.* at *2-3.  The court noted that plaintiff's
8  website included a "Terms and Conditions" page stating that the graphic design, look
9  and feel of the website was plaintiff's protected intellectual property. *Id.* at *4.

10      Likewise, ConsumerInfo made a substantial investment in the design, creation
11 and maintenance of the Blondie webpage – a webpage that ConsumerInfo used
12 throughout 2008, and which remains in ConsumerInfo's "library" to be used in the
13 future. (PSGI at 102).  Defendants cannot prevail on the basis that ConsumerInfo is
14 not using its Blondie trade dress at this particular point in time, when there is no
15 evidence ConsumerInfo abandoned its trade dress with no intent to use it again in the
16 future. *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1981)
17 (reasoning trade dress may be protected unless evidence is presented demonstrating
18 "the [plaintiff's] intent not to resume use").

19      Known as the "SWAT Team," a group of ConsumerInfo executives and staff,
20 including the then President of the company and sales and marketing personnel,
21 spent months designing, creating and testing the Blondie webpage.  (PSGI at 89-
22 101).  As was the case in *Peri Hall*, ConsumerInfo's websites are the primary
23 method through which ConsumerInfo delivers products to its customers.  (PSGI at
24 86).  And, like *Peri Hall*, the Blondie website contains Terms and Conditions which
25 expressly state that the website content, including graphics and layout, are
26 ConsumerInfo's protected trade dress and intellectual property.  (PSGI at 109).

27      Defendants cite a single case in support of their position that summary
28 judgment should be granted on the trade dress claim.  However, the opinion in

16

*Webloyalty.com, Inc. v. Consumer Innovations, LLC*, 388 F. Supp. 2d 435, 438 (D. Del. 2005), constitutes the court's **post-trial** findings of fact and conclusions of law, and does not support judgment as a matter of law in this case.  After considering evidence at trial, the court found Webloyalty "has presented no evidence to show that the text and arrangement of the Sell Page and Banner will be perceived" by consumers in an inherently distinctive manner. *Id.* at 445.  The *Webloyalty* court's factual determination simply does not support the proposition that there is no triable issue of fact as to whether ConsumerInfo's trade dress is inherently distinctive.

Rather, *Two Pesos* and *Taco Cabana* show that a question of fact indeed exists on the inherent distinctiveness of ConsumerInfo's trade dress.  In that case, both the Fifth Circuit and the U.S. Supreme Court held the jury was entitled to find Taco Cabana's trade dress inherently distinctive, where that trade dress was described as "a festive eating atmosphere . . . decorated with artifacts, bright colors, paintings and murals," including an "interior patio capable of being sealed off from the outside patio by overhead garage doors," and "a festive and vivid color scheme using top border paint and neon stripes[,] [b]right awnings[,] and umbrellas." *Two Pesos*, 505 U.S. at 764; *Taco Cabana*, 932 F.2d at 1116.  If the Taco Cabano was entitled to a jury trial on inherent distinctiveness, surely ConsumerInfo is entitled to the same.

ConsumerInfo is not required to prove secondary meaning for the additional reason that Defendants intentionally copied the trade dress in a wholesale manner.  In *Clicks Billiards*, the Ninth Circuit reversed summary judgment for defendant on plaintiff's trade dress cause of action.  251 F.3d at 1267.  The court reasoned "deliberate copying may suffice to support an inference of secondary meaning" in a trade dress claim, and that such evidence "should have precluded summary judgment on this point." *Id.* at 1264; *see also Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) (finding secondary meaning based on plaintiff's extensive use and promotion of the trade dress and defendant's "deliberate and close imitation of the design); *Fuddruckers, Inc. v. Doc's BR Others, Inc.*, 826 F.2d 837, 844 (9th

KAYE SCHOLER LLP

Cir. 1987) (reasoning deliberate copying of trade dress may "suffice to support an inference of secondary meaning").

Assuming *arguendo* that ConsumerInfo were required to establish secondary meaning, this issue presents a question of fact. *Clicks Billiards*, 251 F.3d at 1262. Moreover, ample evidence supports such a finding:  (1) ConsumerInfo's Blondie webpage was developed after an intensive marketing research effort involving a "SWAT" team of ConsumerInfo marketing and sales staff; (2) ConsumerInfo has used the Blondie webpage exclusively and continuously since 2005; (3) over 4 million customers have ordered at the Blondie webpage, resulting in hundreds of millions in sales; (4) Defendants intentionally copied the Blondie webpage in wholesale fashion; and (5) Defendants used their copy of the Blondie webpage to market, over the internet, what appeared to be products virtually identical to ConsumerInfo's.  *See Am. Scientific Chem., Inc. v. Am. Hospital Supply Corp.*, 690 F.2d 791, 793 (9th Cir. 1982) (reversing lower court's finding of no secondary meaning in absence of consumer survey and reasoning that "[d]iverse types of evidence" may indicate "whether a mark has acquired a secondary meaning") (citation omitted). ConsumerInfo's evidence thus defeats summary judgment, while Defendant's unsupported assertions (such as "it's hard to imagine" secondary meaning) fail to support their motion.  (Defendants' Mot. at p. 19).

## V.     Triable Issues Exist on Secondary Trademark Infringement.

Defendants concede that they are liable for contributory trademark infringement if they: (1) intentionally induced the primary infringer to infringe; or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied.  (Defendants' Mot. at p. 15).  Defendants are liable under both of these theories.

First, Defendants intentionally induced third parties, including ROI Revolution, to infringe ConsumerInfo's trademarks.  ROI's witness, Justin D'Angelo, testified that Willms specifically directed him to survey the

18

advertisements of ConsumerInfo and other competitors to develop advertisements. (PSGI at 140).  Willms provided ROI with access to an online database tool to access ConsumerInfo's banner ads for the express purpose of copying them.  *Id.*

Second, even after receiving ConsumerInfo's November 4, 2008 cease and desist letter, the Defendants continued to supply an infringing product — the CreditReportAmerica Websites — to the third party infringers, with specific notice that those entities were infringing ConsumerInfo's marks in their advertising. Although Defendants contend that they orally instructed their affiliate networks to stop using the FREECREDITREPORT.COM mark, the evidence contradicts this. Defendant Willms sent a single email on December 30 to AdValiant requesting that its publishers not bid on ConsumerInfo's Mark as a search engine keyword.  (PSGI at 157).  Willms made no such request to ROI or to his other affiliate networks, made no effort to identify the infringers or cut them off from CreditReportAmerica, and made no effort to stop other forms of infringement including use of ConsumerInfo's mark in the sponsored link advertisements, in URLs, or in website content.  (PSGI at 158).

Defendants also are liable for vicarious trademark infringement, which they concede is established where either: (1) the defendant and the infringer have an "apparent or actual partnership," or (2) the defendant and the infringer have authority to bind one another in transactions with third parties."  (Defendants' Mot. at p. 15).  Defendants have an apparent partnership with ROI.  First, ROI was authorized to enter into contracts on Defendants' behalf to market the CreditReportAmerica Websites.  (PSGI at 138).  Second, Defendants provided ROI with full access to Defendants' Google AdWords and Yahoo Search Marketing accounts to bid on keywords and place sponsored link advertisements.  (PSGI at 144).  ROI used the Google AdWords and Yahoo Search Marketing accounts to infringe ConsumerInfo's FREECREDITREPORT.COM mark by bidding on very close iterations of the Mark, including "freecreditreport com," "freecreditreport

19

KAYE SCHOLER LLP

com review," "experian freecreditreport com," and "freecreditreport com login." (PSGI at 145).

## VI.   **Defendants Are Liable for Direct and Secondary False Advertising.**

Defendants' sole argument against their liability for contributory and vicarious false advertising is their erroneous conclusion that the Ninth Circuit purportedly has not recognized these claims. (Defendants' Mot. a tp. 23). Defendants cite to no Ninth Circuit or U.S. Supreme Court case rejecting these theories of false advertising liability, because there are none.  In fact, published authority from the Central District of California has recognized the claim.

In *Mutual Pharm. Co. v. Ivax Pharm., Inc.*, 459 F. Supp. 2d 925, 942-43 (C.D. Cal. 2006), the court equated a contributory liability claim for false advertising to a contributory liability claim for trademark infringement.  The court reasoned "the use of third-party internet retailers who explicitly make . . . a [false] representation of FDA-approval would . . . be cognizable under the Lanham Act." *Id.* at 942; *see also id.* at 943 ("[I]t is not much of a stretch to impugn liability" for false advertising under the Lanham Act "on defendants if they knew that these third party internet retailers [were] making such false advertisements in connection with the sale of their [non-FDA-approved] quinine sulfate and nonetheless continued to sell their products to those internet retailers.").

The *Mutual Pharmaceutical* court further reasoned: "proof that defendants knew their products were being falsely advertised by third party retailers is enough to trigger liability." *Id.*  While the court found plaintiff failed to proffer sufficient evidence of such knowledge to support a preliminary injunction in that case, here there is such evidence, and Defendants' motion should be denied.  Indeed, not only did Defendants know their affiliates were distributing advertisements falsely stating Defendants would deliver instant credit reports, scores, and monitoring, but Defendants provided those advertisements to the affiliates, encouraged their distribution, and made the CreditReportAmerica websites available to the affiliate

20

KAYE SCHOLER LLP

networks and to individual publishers within those networks.

Furthermore, Defendants ignore cases from other federal jurisdictions recognizing claims for false advertising premised on theories of secondary liability. *See, e.g.*, *Societe des Hotels Meridien v. LaSalle Hotel Operation P'ship*, 380 F.3d 126, 133 (2nd Cir. 2004) (vacating the district court's dismissal of plaintiff's contributory liability for false advertising claims against defendant); 4 McCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:19 (4th ed. 2010) (noting contributory liability "may also extend to those who assist in preparing false advertising").

Defendants' argument denying a cause of action for secondary liability relies solely on two cases. (Defendants' Mot. at p. 23). However, both cases address only contributory liability for trademark dilution, and are not even dispositive on that claim. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc*, 989 F. Supp. 1276, 1278-79 (C.D. Cal. 1997).

## VII.   Triable Issues of Fact Preclude Summary Judgment on ConsumerInfo's Claim for Counterfeiting.

Lanham Act section 32(1)(b)provides:

(1) Any person who shall, without the consent of the registrant --

. . .

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(b). "A 'counterfeit' is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Defendants seek to draw an artificial distinction between affixing counterfeit

21

KAYE SCHOLER LLP

marks to physical goods and the use of counterfeit marks in advertising on the Internet. (Defendants' Mot. at p. 20). However, the distinction Defendants attempt to draw is belied by the express language of the statute and the applicable case law. The Lanham Act explicitly states that use of a registered mark, or a term "substantially indistinguishable from[] a registered mark," in "advertisements," constitutes counterfeiting. 15 U.S.C. §§ 1127, 1114(b). Defendants' use of ConsumerInfo's registered mark, FREECREDITREPORT.COM, in online advertising thus constitutes actionable counterfeiting.

Defendants argue that because some of the counterfeit marks at issue do not duplicate exactly FREECREDITREPORT.COM (*e.g.*, "FREECREDITREPORT ®"), the anti-counterfeiting statute does not apply. (Defendants' Mot. at p. 21:7-10). To the contrary, the express language of the statute sets forth the standard as "substantially indistinguishable," not "identical." *United States v. 10,510 Packaged Computer Towers*, 152 F. Supp. 2d 1189, 1200 (N.D. Cal. 2001) (finding mark substantially indistinguishable from a registered trademark to be counterfeit); *Montres Rolex v. Snyder*, 718 F.2d 524, 526 (2nd Cir. 1983) (affirming reversal of a U.S. Customs' report declaring goods to be merely infringing and not counterfeit because they were substantially indistinguishable from the registered trademark).

The analysis of whether an alleged counterfeit mark is "substantially indistinguishable" must be conducted in light of the particular context within which the counterfeit mark is used. *Montres Rolex*, 718 F.2d at 533 (holding a counterfeit mark should be compared with the actual mark--not the drawing in the registration, and from the perspective of an average consumer--not an expert). This presents a question of fact.

Defendants used the "FREECREDITREPORT ®" advertisement (1) in close proximity to ConsumerInfo's own advertisement containing the heading "FREECREDITREPORT.COM®," and (2) the text of the counterfeit ad contained the words: "As Seen On CNN, NBC, CBS & FOX News!" The close proximity of

22

the ads with a nearly identical headline containing the mark, coupled with the false advertising that the product offered by the Defendants was "seen on" these major networks (on which ConsumerInfo heavily advertises), renders the counterfeit mark substantially indistinguishable from the FREECREDITREPORT.COM mark.

Finally, Defendants argue they did not publish the counterfeit ads themselves. (Defendants' Mot. at p. 22). However, there is at least a triable issue of fact as to whether that website was owned or controlled by Defendants. (PSGI at 176). In any event, Defendants' argument is contrary to the law.

Under the express language of the anti-counterfeiting statute, a defendant who provides goods or services necessary to the commission of counterfeiting, with the intent to have the counterfeiter use the counterfeit mark in connection with those goods, is directly liable for counterfeiting. 15 U.S.C. § 1117(b)(2) (awarding treble damages and attorneys' fees for "providing goods or services necessary to the commission of" counterfeiting). Here, the Defendants provided the services necessary for the commission of counterfeiting, *i.e.* the CreditReportAmerica website, its contents, and advertisements. Creditreportamerica.net ultimately resolved to CreditReportAmerica.com. (PSGI at 176). Assuming arguendo that Defendants did not control this website, Defendants made no effort to identify or block the counterfeiters until weeks after this lawsuit was filed. (PSGI at 160).

There are triable issues of fact as to Defendants' liability for counterfeiting.

## IX.   Defendant Willms Is Personally Liable on All Claims.

To establish Willms is liable for false advertising and infringement, ConsumerInfo need only show Willms "authorize[ed] or direct[ed] or . . . participate[d], [in the infringing acts], notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) ("A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on

KAYE SCHOLER LLP

1  his own behalf.").  Courts "reject the suggestion that employees who act in their

2  official capacity are somehow shielded from suit in their individual capacity."  *Davis*

3  *v. Metro Prod., Inc.*, 885 F.2d 515, 521 (9th Cir. 1989) (citation omitted).  Rather,

4  "the central determination is whether [the defendant] is a primary participant or

5  'guiding spirit' in the alleged wrongdoing."  *Wolf Designs, Inc. v. DHR & Co.*, 322

6  F. Supp. 2d 1065, 1072 (C.D. Cal. 2004).  A corporate officer is liable for such

7  activities "without regard to piercing of the corporate veil."  *Babbit Elec. v.*

8  *Dynascan Corp.*, 38 F.3d 1161, 1184 (9th Cir. 1994).

9        For example in *Wolf*, an employee of a corporate defendant in a trade dress

10  infringement suit moved to dismiss, claiming that he did not "authorize, control,

11  direct, or even have knowledge of any of [defendant corporation's] sales to

12  customers in California."  *Wolf*, 325 F. Supp. 2d at 1073.  The Court rejected the

13  argument, noting the employee owned 50% of the corporation's stock and that he

14  admitted at his deposition he "made the final decision with respect to the selection of

15  the [infringing products]" and had the "final say" when it came to the corporation's

16  policies.  *Id.*

17        Here, there is ample evidence of Willms's personal liability, including (1) he

18  tested the effectiveness of Defendants' landing pages; (2) he reviewed and approved

19  all banners ads (PSGI at 169); (3) he was responsible for the product "offerings."

20  (PSGI at 116, 123, 143); and (4) he states in his Counterclaim that he has limited his

21  use of the Mark, and has incurred expenses in working around the Mark.  (PSGI at

22  133-34.)

23  **X.    ConsumerInfo Is Entitled to Judgment on Defendants' Counterclaim.**

24        In its Motion for Partial Summary Judgment, ConsumerInfo has briefed its

25  entitlement to summary judgment on Defendants' counterclaim for fraud on the

26  PTO, and incorporates here all evidence and legal arguments contained in its

27  moving papers.

28        The "evidence" and legal arguments advanced by Defendants in their motion

24

KAYE SCHOLER LLP

for summary judgment do not save Defendants' counterclaim.  Defendants' argument rests entirely on their contention that third party uses of **phrases** or **domain names** containing the words "free," "credit," and/or "report" somehow constitute uses of **trademarks**, such that ConsumerInfo's declaration that no other person "has the right to use the **mark**" was an intentionally false statement. (Defendants' Mot. at p. 11-13).  As noted in ConsumerInfo's Motion for Partial Summary Judgment, a person does not obtain trademark rights, common law or otherwise, by simply using a domain name or using a phrase.  Rather, the person has to use the name or phrase in a **trademark** sense. (ConsumerInfo's Mot. at p. 12-13).  Defendants proffer no evidence of *trademark* use of ConsumerInfo's mark prior to ConsumerInfo's application, of which ConsumerInfo was aware, because no such evidence exists.[3]

## XI.   Conclusion

For the reasons set forth above, ConsumerInfo respectfully requests the Court enter an order denying Defendants' motion for partial summary judgment in its entirety.

DATED:  February 19, 2010

Respectfully Submitted,

KAYE SCHOLER LLP

By: _____
Theodore W. Maya
Attorneys for Plaintiff and Counter-Defendant
CONSUMERINFO.COM, INC.

---

[3] Defendants mischaracterize legal positions ConsumerInfo has taken.  Such mischaracterizations are refuted in ConsumerInfo's Statement of Genuine Issues. However, none of Defendants' argument amounts to evidence of a knowingly false misstatement of fact to the PTO on which the PTO relied.