1  Rhonda R. Trotter, Bar Number 169241
   rtrotter@kayescholer.com
2  Theodore W. Maya, Bar Number 223242
   tmaya@kayescholer.com
3  Darya V. Pollak, Bar Number 248158
   dpollak@kayescholer.com
4  KAYE SCHOLER LLP
   1999 Avenue of the Stars, Suite 1700
5  Los Angeles, California  90067
   Telephone:  (310) 788-1000
6  Facsimile:  (310) 788-1200

7  Attorneys for Plaintiff
   CONSUMERINFO.COM, INC.

8

9              UNITED STATES DISTRICT COURT

10        FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                   WESTERN DIVISION

12  CONSUMERINFO.COM, INC., a          ) CASE NO. SACV09-0055 DMG (MLGx)
    California corporation,            )
13                                     ) **CONSUMERINFO'S STATEMENT**
                                       ) **OF GENUINE ISSUES OF**
14           Plaintiff,                ) **MATERIAL FACT IN OPPOSITION**
                                       ) **TO DEFENDANTS' MOTION FOR**
15        v.                           ) **PARTIAL SUMMARY JUDGMENT**
                                       )
16  JESSE WILLMS, an individual;       ) *[Filed concurrently with Opposition to*
    EDIRECT, a Canadian Partnership;   ) *Defendants' Motion; Proposed Order;*
17  1016363 ALBERTA LTD., a            ) *Declaration of Theodore Maya;*
    Canadian Corporation; 1021018      ) *Declaration of David Williams; Request*
18  ALBERTA LTD., a Canadian           ) *for Judicial Notice]*
    Corporation; all doing business as )
19  "WU-YI SOURCE," "JUST THINK        ) Hearing Date:    March 12, 2010
    MEDIA," and "CREDIT REPORT         ) Time:            2:00 p.m.
20  AMERICA,"                          ) Place:           Court Room 7
                                       )                  Spring Street
21           Defendants.               )
                                       ) Before Hon. Dolly M. Gee
22  _____   )
                                       )
23                                     )
                                       )
24  AND RELATED                        )
    COUNTERCLAIM.                      )
25                                     )
                                       )
26  _____   )

27

28

KAYE SCHOLER LLP

Pursuant to Local Rule 56-2, Plaintiff ConsumerInfo.com, Inc. ("ConsumerInfo") submits this Statement of Genuine Issues of Material Fact in Opposition to Defendants' Motion for Partial Summary Judgment.  Defendants' Uncontroverted Facts and Plaintiff's Additional Material Facts raise triable issues with respect to Plaintiff's claims.

**A. Defendants' Purported Uncontroverted Facts Raise Triable Issues of Material Disputed Fact on Plaintiff's Claims.**

| Defendants' Proposed Fact | ConsumerInfo's Position |
| --- | --- |
| 1.  Defendant 1016363 Alberta Ltd. is a numbered Alberta corporation. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses.  The evidence shows that the entities did not maintain such corporate formalities. Declaration of Theodore Maya in Opposition to Defendants' Motion ("Maya Opp. Decl."), Exh. A, Deposition of Jesse Willms ("Willms Depo.") at page 2, line 11; page 133, line 18 through page 134, line 6.  Maya Opp. Decl., Exh. B, 30(b)(6) Deposition of 1021018 Alberta Ltd. ("Alberta Depo.") at page 2, line 11; page 40, line 18 through page 42, line 17 & Exh. 210; page 45, lines 2-23; |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | | page 242, line 22 through page 243, line 24 & Exh. 232.<br><br>Maya Opp. Decl., Exh. E Deposition of Szymon Kiedyk ("Kiedyk Depo.") at page 2, line 14; page 14, lines 7-15.<br><br>Maya Opp. Decl., Exh. D, Deposition of Michael Stefaniuk ("Stefaniuk Depo.") at page 2, line 11; page 8, lines 12-19; page 19, lines 2-13. |
| 2. | Defendant 1021018 Alberta Ltd. is a numbered Alberta corporation. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses.  The evidence shows that the entities did not maintain such corporate formalities.  See Response to Fact No. 1 above. |
| 3. | Defendant 1016363 Alberta Ltd. is an active and valid Alberta, Canada corporation. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses.  The evidence shows that the entities did not maintain such corporate formalities.  See Response to Fact No. 1 above. |

2

KAYE SCHOLER LLP

| 4. | Defendant 1021018 Alberta Ltd. is an active and valid Alberta, Canada corporation. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses. The evidence shows that the entities did not maintain such corporate formalities. See Response to Fact No. 1 above. |
|---|---|---|
| 5. | Credit Report America is a registered trade name for Defendant 1021018 Alberta Ltd. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses. The evidence shows that the entities did not maintain such corporate formalities. See Response to Fact No. 1 above. |
| 6. | Just Think Media is a registered trade name for Defendant 1021018 Alberta Ltd. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses. The evidence shows that the entities did not maintain such corporate formalities. See Response to Fact No. 1 above. |
| 7. | EDirectSoftware is a partnership owned in part by Defendant 1021018 Alberta Ltd. and in part | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with |

| | |
|---|---|
| by Defendant 1016363 Alberta Ltd. | respect to any of their businesses. The evidence shows that the entities did not maintain such corporate formalities. See Response to Fact No. 1 above. |
| 8.  WuYi Source is a registered trade name for Defendant 1021018 Alberta Ltd. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses. The evidence shows that the entities did not maintain such corporate formalities. See Response to Fact No. 1 above. |
| 9.  Defendant Jesse Willms is the President and founder of Defendants 1016363 Alberta Ltd. and 1021018 Alberta Ltd. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses. The evidence shows that the entities did not maintain such corporate formalities. See Response to Fact No. 1 above. |
| 10. Defendants 1021018 Alberta Ltd. and 1016363 Alberta Ltd. (collectively, the "Alberta Defendants") operate a diverse line of e-commerce businesses. | Undisputed, except to the extent that this fact implies that the defendants followed any corporate formalities with respect to any of their businesses. The evidence shows that the entities did not maintain such corporate formalities.   In |

4

KAYE SCHOLER LLP

| | |
|---|---|
| | addition, ConsumerInfo objects to Defendants definition of the "Alberta Defendants," as it incompletely identifies all of the defendants who are each liable for the wrongful acts alleged by ConsumerInfo in this action.  In this Statement of Genuine Issues, ConsumerInfo refers to all of the named defendants in this action as "Defendants." See Response to Fact No. 1 above. |
| 11.  The Alberta Defendants sell everything from nutritional supplements to herbal tea to teeth whitening products. | Undisputed, except to the extent that the "Alberta Defendants" are defined too narrowly.  The "Alberta Defendants" include all named defendants in this action, and ConsumerInfo's positions in the remainder of this Statement refer to all such named defendants as "Defendants." See Fact No. 1 above. |
| 12.  The Alberta Defendants sell their goods and services on several proprietary e-commerce websites, which they own and operate. | Undisputed, except to the extent that the "Alberta Defendants" are defined too narrowly.  The "Alberta Defendants" include all named defendants in this action, and ConsumerInfo's positions in the remainder of this Statement refer to |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | | all such named defendants as "the Defendants." See Fact No. 1 above. |
| 13. | Consumers are able to purchase the Alberta Defendants' goods and services on the Alberta Defendants' websites. | Undisputed, except to the extent that the "Alberta Defendants" are defined too narrowly.  The "Alberta Defendants" include all named defendants in this action, and ConsumerInfo's positions in the remainder of this Statement refer to all such named defendants as "the Defendants." See Fact No. 1 above. |
| 14. | Generally, the Alberta Defendants do not advertise their goods and services themselves. | Disputed.  Defendants were integrally involved in developing the advertising for their goods and services, including purported credit-related goods and services at websites such as www.creditreportamerica.com, www.freereportcheck.com, www.creditreportamerica.net, and www.mycreditreportsdirect.com. Defendants' advertising activities include creating and designing banner ads, landing pages, email advertisements, and sponsored link advertisements. |

6

KAYE SCHOLER LLP

| | |
|---|---|
| | Maya Opp. Decl. Exh. D, Stefaniuk Depo. at page 208, line 6 through page 210, line 8 & Exh. 144.<br><br>Maya Opp. Decl., Exh. C, Deposition of Craig Leonard ("Leonard Depo.") at page 5, lines 6-9; page 95, line 9 through page 97, line 22 & Exh. 68; page 102, line 8 through page 103, line 20.<br><br>Maya Opp. Decl. Exh. B, Alberta Depo. at page 49, line 8 through page 53, line 16 & Exh. 210; page 291, line 8 through page 292, line 16 & Exh. 248<br><br>The Defendants, including Defendant Jesse Willms, were directly involved in determining and implementing whether publishers and advertising affiliates infringed on other companies' trademarks by bidding on those trademarks in search marketing or using those trademarks in the text of advertisements.<br><br>Maya Opp. Decl. Exh. C, Leonard |

Depo. at page 45, line 10 through page 46, line 3 & Exh. 63; page 47, line 24 through page 50, line 16; page 104, line 17 through page 107, line 2 & Exh. 69.

The Defendants, including Defendant Jesse Willms, reviewed and approved the websites of third parties who advertised the Defendants' products.

Maya Opp. Decl. Exh. C, Leonard Depo. at page 60, line 12 through page 61, line 23 & Exh. 64; page 63, lines 12-21, page 69, lines 10-17 & Exh. 65; page 70, line 8 through page 71, line 14 & Exh. 66; page 71, line 15 through page 73, line 12 & Exh. 67; page 75, line 14 through page 79, line 11.

The Defendants, including Defendant Jesse Willms, discussed with third party contractors developing and placing advertisements for CreditReportAmerica in a similar way to ConsumerInfo.

Maya Opp. Decl., Exh. F, Deposition of

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | Maya Opp. Decl. Exh. F, Justin D'Angelo ("D'Angelo Depo.") at page 8, lines 10-14; page 70, line 14 through page 73, line 6 & Exh. 12.; page 73, line 18 through page 76, line 10; page 76, line 24 through page 79, line 2, page 79, lines 16-20. |
|---|---|---|
| 15. | Rather the Alberta Defendants contract with third parties to advertise their goods and services. | Disputed.  The Defendants were integrally involved in developing the advertising for their goods and services, including purported credit-related goods and services at websites such as www.creditreportamerica.com, www.freereportcheck.com, and www.mycreditreportsdirect.com  See Response to Fact #14 above. |
| 16. | Some of these third parties are known as "affiliate networks." An affiliate network acts as an intermediary between merchants and publishers (affiliates).  A merchant engages an affiliate network to promote the merchant's offer by entering into an arms-length contract called an insertion order.  The insertion | Undisputed, except to the extent that this fact is incomplete as to the standard terms of the insertion orders between merchants and publishers, and in particular, the terms of such insertion orders between Defendants and the affiliates at issue in this case.  Maya Opp. Decl. Exh. C, Leonard Depo. at page 263, line 10 through page |

| | | |
|---|---|---|
| | order typically specifies the types of advertisements to be used to promote an offer (e.g. email ads, banner ads, search result ads). The networks affiliates are then able to review the merchant's offer (and the restrictions on advertisements for that offer) and decide whether they want to publish advertisements for that offer. | 265, line 1 & Exh. 116; page 265, line 7 through page 267, line 7 & Exh. 117; page 267, line 8 through page 270, line 5 & Exh. 118<br><br>Maya Opp. Decl., Exh. O (IntegraClick dba ClickBooth Advertising Order) |
| 17. | Affiliate networks consider the identities of their affiliates to be a valuable trade secret and do not disclose these identities to merchants absent exceptional circumstances | Disputed to the extent that this fact implies that Defendants did not have the ability to have affiliates terminated. Defendants, in fact, had the express right to review, approve or reject any affiliate, and/or to terminate at will any agreement with an affiliate network. Leonard Depo. at page 265, line 7 thorugh page 267, line 7 & Exh. 115 at ¶ 3 (MT00010); Maya Decl., Exh. O (IntegraClick Advertising Order at ¶ 16). |
| 18. | Merchants compensate affiliate networks each time an affiliate sends a consumer to the merchant's website and that | Undisputed. |

10

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | consumer buys the merchant's good or service.  The network, in turn, compensates its affiliates based on the same model. | |
| 19. | The Alberta Defendants also contract with media buyers to promote their goods and services. Unlike affiliate networks, media buyers negotiate with third parties to display the merchant's advertisements.  In the context of online advertising, a media buyer might contract with a third party to display banner advertisements on a specific website.  Typically, the media buyer is compensated as a percentage of the amount of media purchased by the merchant. | Disputed to the extent that this fact implies that Defendants paid ROI Revolution any compensation with respect to the promotion of Credit Report America.<br><br>Maya Opp. Decl. at ¶ 19. |
| 20. | AdWords is Google's flagship advertising product.  With AdWords, advertisers specify the keywords that will trigger their ads and the maximum amount they will pay each time a user clicks on that ad (the "bid). | Undisputed. |
| 21. | When a user runs a search on | Undisputed. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | Google's search engine, ads associated with the searched keywords are displayed as "sponsored links" on the right side of the screen, and sometimes above the main search results. | |
| 22. | The sponsored links comprise four lines of text: a) the Headline (which is a hyperlink), b) the Description line 1; c) the Description line 2; and d) the Display URL (which is a hyperlink). | Undisputed. |
| 23. | When a user clicks on a sponsored link, Google charges the advertiser for the click, in an amount less than or equal to the advertiser's bid. | Undisputed. |
| 24. | AdWords also allows advertisers to display banner ads. | Undisputed. |
| 25. | Banner ads are images embedded in web pages. The image (which is typically in the shape of a square or rectangle) contains a hyperlink to the advertiser's website. The image typically contains text, graphics, and/or | Undisputed. |

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | photographs that relate to the advertiser's goods or services. | |
| 26. | Unlike sponsored links, Google does not use keywords to determine whether to display banner ads. Rather, Google scans the text of websites that have agreed to display ads, searching for terms that are relevant to different categories of advertisements. Based on these scanned terms, Google decides which advertisements to display. | Undisputed. |
| 27. | Like sponsored link ads, Google charges an advertiser each time a user clicks on its banner ad. | Undisputed. |
| 28. | In August 2008, the Alberta Defendants launched a new service and website, located at **www.creditreportamerica.com** ("Credit Report America"). | Undisputed, except to the extent that this fact implies that www.creditreportamerica.com was the only website used by Defendants to promote and sell their credit-related products and services. Defendants also owned and operated other websites, including www.freereportcheck.com and www.mycreditreportsdirect.com to promote and sell those products and services. Also, disputed as to date |

13

| | | |
|---|---|---|
| | | Defendants began advertising Credit Report America, which was April 2008.<br><br>See Fact No. 117 below. |
| 29. | The Alberta Defendants engaged third party contractor, Nethuesindia, located in India, to design and implement the Credit Report America website. | Disputed.  Defendants designed their landing pages, including www.creditreportamerica.com, www.freereportcheck.com, and www.mycreditreportsdirect.com.<br><br>Maya Opp. Decl. Exh. D, Stefaniuk Depo. at page 8, line 2 through page 9, line 8; page 17, lines 15-22; page 19, lines 2-16; page 20, line 9 through page 21, line 7; page 25, lines 4-24; page 26, line 10 through page 27, line 15; page 124, line 19 through page 133, line 5 & Exh. 126; page 140, line 3 through page 142, line 10 & Exh. 127; page 144, line 1 through page 147, line 16; page 148, line 4 through page 152, line 19 & Exh.128; page 152, line 20 through page 154, line 8 & Exh.129; page 170, line 25 through page 171, line 14 & Exh. 132; page 171, lines 20-23; page 171, line 24 through page 172, line 15 & Exh. 133; page 172, line 16 through |

KAYE SCHOLER LLP

| | |
|---|---|
| | page 173, line 1 & Exh. 134 |
| | |
| | Maya Opp. Decl. Exh. E, Kiedyk Depo. at page 14, lines 7-15; page 15, line 10 through page 16, line 16; page 18, line 4 through page 20, line 2; page 20, line 7 through page 22, line 13; page 22, 22 through page 23, line 4; page 25, line 22 through page 26, line 3; page 26, line 15 through page 27, line 7; page 31, line 8 through page 32, line 15; page 33, lines 5-21; page 161, lines 16-22. |
| | |
| | Maya Opp. Decl. Exh. B, Alberta Depo. at page 90, lines 8-20 & Exh. 214. |
| | |
| | Maya Opp. Decl. Exh. F, D'Angelo Depo. at page 82, line 14, through page 83, line 16 & Exh. 15; page 84, line 7 through page 87, line 7 & Exh. 16; page 125, line 11 through page 127, line 9 & Exh. 28 |
| | |
| | Maya Opp. Decl. Exh. C, Leonard Depo. at page 151, line 16 through page 152, line 24 & Exh. 78 |
| 30.    Credit Report America offered | Disputed to the extent that this fact |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | consumers information about credit scores, credit reports, identity theft, and online security. | implies that Defendants provided consumers actual credit scores, credit reports, identity theft products, online security products, or credit monitoring products.<br><br>See Fact Nos. 120-123; 163; 167-168 below. |
| 31. | Additionally, Credit Report America instructed consumers on how to get their free credit reports, as required to be provided under the Fair and Accurate Credit Transactions Act ("FACTA") from the three major credit bureaus. | Undisputed, except the extent that this fact references Fact No. 30, above. |
| 32. | Consumers who signed up for Credit Report America received a seven day trial for free, $1.00, or $2.95 depending on when they signed up (the prices went up over the life of Credit Report America). | Undisputed. |
| 33. | If consumers did not cancel their trial membership in Credit Report America, they were then charged on a monthly basis for their access to the Credit Report | Undisputed, except to the extent that this fact implies that Defendants provided credit reports, scores or credit monitoring products or resources.<br><br>See Response to Fact No. 30, above. |

KAYE SCHOLER LLP

| | America resources. | |
|---|---|---|
| 34. | The Alberta Defendants stopped taking orders through the Credit Report America website in April 2009, and ultimately shut down the Credit Report America program altogether. | Disputed.  Defendants continued taking orders through www.creditreportamerica.com and www.freereportcheck.com at least through May 2009, and then established www.mycreditreportsdirect.com in or around September 2009. Maya Opp. Decl. Exh. C, Leonard Depo. at page 229, line 15 through page 227, line 5 & Exh. 100; page 227, line 24 through page 228, line 22 & Exh. 101; page 230, line 20 through page 231, line 14 & Exh. 103; page 231, line 16 through page 232, line 24 & Exh. 104  Maya Opp. Decl. Exh. E, Kiedyk Depo. at page 31, line 25 through page 32, line 15; page 36, line 22 through page 39, line 2  Maya Opp. Decl. Exh. A, Willms Depo. at page 263, lines 12-21  Maya Opp. Decl. Exh. B, Alberta Depo. at page 84, lines 3-13 & Exh. 212. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | | Maya Opp. Decl. ¶¶ 15-16 & Exhs. K & L (Defendants' post-April 2009 financial data).<br><br>2/19/10 Declaration of David Williams ("2/19/10 Williams Decl.") at ¶¶ 21-23 & Exhs. E and F. |
| 35. | The Alberta Defendants contracted with several third parties to promote Credit Report America. | Undisputed, except to the extent that this fact implies that Defendants did not promote Credit Report America directly themselves.<br>See Response to Fact No. 14 above.<br>See Fact Nos. 120-122; 125-134; 139-144 below |
| 36. | The Alberta Defendants did not advertise Credit Report America themselves. | Disputed.  Defendants are integrally involved in developing the advertising for their goods and services, including purported credit-related goods and services at websites such as www.creditreportamerica.com, www.freereportcheck.com, and www.mycreditreportsdirect.com<br><br>See Response to Fact No. 35 above |
| 37. | In August 2008, the Alberta Defendants entered into an | Undisputed, except to the extent that the "Alberta Defendants" are defined too |

KAYE SCHOLER LLP

| | |
|---|---|
| insertion order with the affiliate network, IntegraClick dba ClickBooth ("ClickBooth").  In this Insertion order, ClickBooth agreed to promote Credit Report America through its network of affiliates. | narrowly.  The "Alberta Defendants" include all named defendants in this action, and ConsumerInfo's positions in the remainder of this Statement refer to all such named defendants as "Defendants."<br>See Fact No. 1 above. |

| 38. | In August 2008, the Alberta Defendants also began working with the media buyer ROI Revolution, Inc. ("ROI") to promote Credit Report America. As is typical with media buyers, the Alberta Defendants paid ROI ten percent of the value of the media purchases that ROI arranged. | Disputed.  Defendants have proffered no admissible evidence of any payments to ROI.  There is no evidence of any written agreement between Defendants and ROI, and Defendants have not produced any cancelled checks or other documentation supporting any payments made.  Indeed, as late as October 23, 2009, Defendants admitted that no such documentation existed.  At his sworn deposition in this matter, Defendant Willms testified that he didn't remember any specifics of any agreement with ROI, nor even that there was any form of agreement with ROI relating to Credit Report America.

Also disputed as to date Defendants began working with ROI on Credit Report America, which was at least as early as April 2008.

Maya Opp. Decl. Exh. A, Willms Depo. at page 87, lines 5-23; page 91, lines 10-16

Maya Opp. Decl. Exh. F, D'Angelo |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | Depo. at page 17, lines 4-17. |
|---|---|---|
| | | Maya Opp. Decl. Exh. B, Alberta Depo. at page 139, lines 2-22 & Exh. 220. |
| | | Maya Opp. Decl. ¶ 19.<br>See Fact No. 117 below. |
| 39. | In October 2008, the Alberta Defendants entered into an insertion order with the affiliate network, Media Trust dba Advaliant ("Advaliant").  In this Insertion order, Advaliant agreed to promote Credit Report America through its network of affiliates and through other affiliate networks. | Undisputed, except to the extent that the "Alberta Defendants" are defined too narrowly.  The "Alberta Defendants" include all named defendants in this action, and ConsumerInfo's positions in the remainder of this Statement refer to all such named defendants as "Defendants."<br>See Fact No. 1 above. |
| 40. | Over the next several months, Clickbooth and Advaliant made the Credit Report America offer available to their affiliates to promote. | Undisputed. |
| 41. | Over the next several months, ROI worked with third party media outlets to display advertisements for Credit Report America. | Disputed to the extent that this "fact" inaccurately describes the nature of ROI's work with respect to Credit Report America.<br>The Defendants' employees Mike |

21

KAYE SCHOLER LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stefaniuk and Szymon Kiedyk created banner advertisements for Credit Report America that were then provided to ROI and others to be placed on websites.

Maya Opp. Decl. Exh. E, Kiedyk Depo. at page 2, line 14; page 14, lines 7-15; page 15, line 10 through page 16, line 16; page 18, lines 4-9; page 19, line 3 through page 20, line 2; page 26, line 15, through page 27, line 7; page 34, lines 2-19; page 35, line 7 through page 36, line 7; page 61, lines 21-24; page 62, line 9 through page 63, line 20; page 64, lines 7-11; page 65, line 17 through page 66, line 5; page 71, line 6 through page 72, line 9 & Exh. 150; page 73, lines 3-6; page 89, line 15 through page 91, line 7 & Exh. 151; page 95, line 17 through page 97, line 2 & Exh. 152; page 102, line 15 through page 104, line 3 & Exh. 154; page 105, line 4 through page 106, line 12 & Exh. 155; page 122, line 14 through page 125, line 24 & Exh. 158; page 126, line 7 through page 129, line 9 & Exh. 159; page 130, line 11 through page 133, line 3.

23283237.DOCX            CONSUMERINFO'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

| | |
|---|---|
| | Maya Opp. Decl. Exh. D, Stefaniuk Depo. at page 21, line 21 through page 22, line 3; page 23, line 24 through page 24, line 5; page 27, lines 16-22; page 210, line 18 through page 211, line 7 & Exh. 110; page 211, line 8 through page 215, line 4 & Exh. 145; page 222, line 21 through page 225, line 7 & Exh. 111. |
| | Maya Opp. Decl. Exh. A, Willms Depo. at page 2, line 11; page 13, line 6 through page 16, line 10 & Exh. 168; page 17, line 23 through page 22, line 2; page 22, line 3 through page 27, line 25 & Exh. 169; page 28, line 7 through page 30, line 14 & Exh. 170; page 30, line 17 through page 33, line 9 & Exh. 171; page 33, line 10 through page 35, line 7 & Exh. 172; page 35, line 8 through page 37, line 17 & Exh. 173; page 37, line 18 through page page 42, line 16 & Exh. 174; page 42, line 17 through page 46, line 5 & Exh. 175; page 50, line 3 through page 56, line 11 & Exh. 36 |

23

1
2
3
4
5
6
7
8
9
10

**KAYE SCHOLER** LLP

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Maya Opp. Decl. Exh. F, D'Angelo Depo. at page 21, lines 16-23; page 23, lines 13-15; page 35, lines 15-25; page 80, line 14 through page 82, line 13 & Exh. 14; 9/29/09 D'Angelo Depo. at page 111, line 11, through page 117, line 1 & Exh. 23; page 212, line 6 through page 218, line 13 & Exh. 59; page 218, line 17 through page 221, line 23 & Exh. 60; page 222, line 1 through page 224, line 16 & Exh. 61; page 133, line 11 through page 135, line 2 & Exh. 32

Defendant Jesse Willms was involved in the review and approval of the banner ads, and in providing access to tools for ROI to use to determine on which websites to place those banner ads by looking at ConsumerInfo placed its advertisements and selecting those same placements.

Maya Opp. Decl. Exh. D, Stefaniuk Depo. at page 24, line 11 through page 25, line 3; page 29, line 15 through page 30, line 10; page 40, lines 9-17; page

| | |
|---|---|
| | 41, lines 16-21; page 41, line 22 through page 59, line 7 & Exh. 121; page 61, line 2 through page 62, line 21 & Exh. 123; page 63, line 16 through page 64, line 10; page 65, line 16 through page 66, line 5 |
| | Maya Opp. Decl. Exh. F, D'Angelo Depo. at page 76, line 24 through page 79, line 2; page 94, line 6 through page 95, line 6 |
| | ROI also placed "contextual text" ads that were approved by Defendants. Maya Opp. Decl. Exh. F, D'Angelo Depo. at page 21, line 24 through page 22, line 8; page 46, lines 8-14. |
| | Defendants contracted directly with third parties, such as Casale Media, to place ads for Credit Report America. |
| | Maya Opp. Decl. Exh. F, D'Angelo Depo. at page 123, line 12 through page 124, line 6 & Exh. 26; page 162, line 1 through page 163, line 23 & Exh. 38. |
| 42.    Through the efforts of | Disputed.  Defendants were integrally |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | ClickBooth, Advaliant, and ROI (and their affiliates and partners), a variety of advertisements were published for Credit Report America on the Internet. These advertisements included banner ads, contextual ads, search engine text ads and email advertisements, blogs, pop-up ads, and pop-under ads. | involved in developing the advertising for their goods and services, including purported credit-related goods and services at websites such as www.creditreportamerica.com, www.freereportcheck.com, and www.mycreditreportsdirect.com<br><br>See Response to Fact Nos. 14, 41 above.<br>See Fact Nos. 120-122; 125-134 below. |
| 43. | Defendants did not create or publish the sponsored link ads for Credit Report America. | Disputed. Defendants were integrally involved in developing the advertising for their goods and services, including through Google sponsored link ads for purported credit-related goods and services at websites such as www.creditreportamerica.com, www.freereportcheck.com, and www.mycreditreportsdirect.com<br><br>See Fact Nos. 126-131 below |
| 44. | While Defendants set up Google AdWords accounts for ROI to use to promote Credit Report America, Defendants did not edit this account or monitor account. | Disputed. Defendants were integrally involved in developing the advertising for their goods and services, including through Google sponsored link ads for purported credit-related goods and |

26

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | Rather Defendants created the account and turned it over to ROI for use in promoting Credit Report America. | services at websites such as www.creditreportamerica.com, www.freereportcheck.com, and www.mycreditreportsdirect.com See Fact Nos. 126-131 below. |
| 45. | Plaintiff offers consumers with credit-related services through its website located at **www.freecreditreport.com** ("FreeCreditReport.com") | Disputed to the extent that this fact inaccurately and incompletely describes ConsumerInfo's products. See Plaintiff's Statement of Uncontroverted Facts submitted in support of Plaintiff's Motion for Partial Summary Judgment ("PSUF") at ¶ 1. |
| 46. | Plaintiff's FreeCreditReport.com website states that it provides consumers with a free credit report. | Disputed to the extent that this fact is incomplete as to the content of and statements on ConsumerInfo's website. Maya Opp. Decl. Exh. H, 2/19/10 Williams Decl. at ¶ 7, and Exh. B; 2/12/10 Maya Decl. in Supp. of ConsumerInfo's Mot. For Partial Summary Judgment, at Exh. A, page 9. |
| 47. | For a consumer to obtain a credit report from FreeCreditReport.com, the consumer must sign up for Plaintiff's Triple Advantage | Disputed.  Consumers are offered a wide variety of products through freecreditreport.com.  Specifically, consumers may choose to purchase a single credit bureau report and credit |

KAYE SCHOLER LLP

| | |
|---|---|
| credit monitoring service.  If a customer doesn't cancel his/her membership in Triple Advantage within 7 days, he/she is billed $14.95 a month. | score or a three credit bureau report and credit scores.  If a consumer choose to sign up for a trial membership in ConsumerInfo's credit monitoring product, the Consumer receives a free credit report and free credit score.  The trial membership period has varied, at times the trial period has been as long as thirty days.  If the consumer cancels his or her membership in the credit monitoring product before the expiration of the trial period, the consumer still keeps his or her credit report and score without charge. Maya Opp. Decl. Exh. H, 30(b)(6) Deposition of ConsumerInfo ("ConsumerInfo 30(b)(6) Depo.") at page 26, line 24 through page 27, line 25; page 36, line 25 through page 38, line 2. |
| 48.  During September 2008, the FreeCreditReport.com website's landing page displayed a box of text organized into three columns, with the picture of the head of a blonde woman in the upper left corner. | Disputed to the extent that this is an incomplete description of ConsumerInfo's website trade dress. 2/19/10 Williams Decl. at ¶ 7, and Exh. B; 2/12/10 Maya Decl. in Supp. of ConsumerInfo's Mot. For Partial |

| | | |
|---|---|---|
| | | Summary Judgment, at Exh. A, page 9.<br><br>See Fact Nos. 87-101 below. |
| 49. | Around January 2009, Plaintiff changed the FreeCreditReport.com website's landing page, removing the blonde female, reformatting the text, and displaying a young male "slacker." | Disputed.<br>See Fact Nos. 87-106 below. |
| 50. | There are countless third party websites that have a similar look and feel to Plaintiff's former landing page, i.e. with a large block of text organized in columns, with a smaller picture of a professional woman in the top corner.  Such similar websites can be discovered in a few minutes of Internet research. | Disputed.<br>See Fact Nos. 87-108 below. |
| 51. | Plaintiff claims to have a valid trademark for FREECREDITREPORT.COM. | Undisputed. |
| 52. | Plaintiff has acquired a United States trademark registration for FREECREDITREPORT.COM, | Undisputed. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | Registration No. 3426854 | |
| 53. | Plaintiff submitted its application to register the FREECREDITREPORT.COM mark with United States Patent and Trademark Office ("PTO") on February 20, 2006 (the "Application"). | Undisputed. |
| 54. | In the Application, Plaintiff stated that the "mark has become distinctive of the goods/services through the applicant's substantially exclusive and continuous use in commerce for at least the five years immediately before the date of this statement." | Undisputed. |
| 55. | In the Application, Plaintiff declared, "to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the | Undisputed. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | goods/services of such other person, to cause confusion or to cause mistake or to deceive . . ." | |
| 56. | On August 12, 2006 the PTO denied Plaintiff's Application. Among other things, the examining attorney refused registration because the FREECREDITREPORT.COM mark merely described Plaintiff's services. The PTO gave Plaintiff the opportunity to submit additional evidence to support a claim of distinctiveness. Additionally, the PTO asked Plaintiff to "disclose whether the applicant provides credit report services at no monetary charge to the consumer." | Disputed to the extent that this "fact" is incomplete. See PSUF at Facts 21-23. |
| 57. | On February 13, 2007 Plaintiff responded to the PTO's August 12, 2006 office action. Plaintiff made the representations in its response:<br>• "Through Applicant's more than seven years of substantially exclusive and | Disputed to the extent that this fact is incomplete.<br><br>See PSUF at Facts 24-34. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | continuous use, extensive advertising and sales, and substantial efforts to associate the mark with Applicant's services, Applicant's mark has acquired distinctiveness."<br><br>• "Applicant's Mark currently coexist[s] without confusion with other registered marks using the phrase CREDIT REPORT for similar services owned by other entities." | |
| 58. | On May 13, 2008, after the PTO received Plaintiff's February 13, 2007 response, the PTO issue [sic] a certificate of registration to Plaintiff for FREECREDITREPORT.COM. | Disputed to the extent that this "fact" is incomplete. ConsumerInfo submitted additional documents to the PTO after February 13, 2007.<br><br>See PSUF at Fact 35. |
| 59. | In Plaintiff's November 4, 2008 letter to Defendants, Plaintiff claimed that Defendants' use of the phrase "freecreditreport" infringed Plaintiff's trademark in FREECREDITREPORT.COM. | Disputed.<br><br>2/19/10 Maya Opp. Decl. ¶ 20. |
| 60. | In Plaintiff's December 28, 2008 letter to Defendants, Plaintiff claimed that Defendants' use of | Disputed. ConsumerInfo did not claim that "$0 - freecreditreport®" was a "phrase" that infringed on |

KAYE SCHOLER LLP

| | |
|---|---|
| the phrase "$0 - freecreditreport®" infringed on Plaintiff's trademark in FREECREDITREPORT.COM. | ConsumerInfo's FREECREDITREPORT.COM mark. Rather, ConsumerInfo claims that the use of "FreeCreditReport®" as the heading of sponsored link advertisements designed to cause confusion with ConsumerInfo's FreeCreditReport.com site, and combined with Defendants' other infringing conduct and unfair competition including their use of web pages that copy those of ConsumerInfo and infringe ConsumerInfo's trademarks, constitutes infringement of ConsumerInfo's Mark.<br><br>Maya Decl. in Support of ConsumerInfo's Motion for Partial Summary Judgment, Exh. B, Pages 70-71. |
| 61.  In response to Defendant Willms's Second Set of Interrogatories, Plaintiff identified the following alleged advertisements as counterfeits of Plaintiff's FREECREDITREPORT.COM | Undisputed. |

KAYE SCHOLER LLP

mark:

- "[A] sponsored link
  heading reading Free
  Credit Report ™"
- "A sponsored link heading
  reading $0
  FreeCreditreport ®"

| | | |
|---|---|---|
| 62. | In Plaintiff's December 12, 2008 letter to a third party, Plaintiff claimed that the third party's use of the domain name <freetriplecreditscore.com> infringed on Plaintiff's trademark in FREECREDITREPORT.COM. | Disputed.<br>The cited letter makes no mention of the domain name <freetriplecreditscore.com>.<br><br>See Jeffrey Rosenfeld Declaration at Exh. H. |
| 63. | On September 24, 2009 Plaintiff initiated an arbitration proceeding under the Uniform Domain Name Dispute Resolution Policy to recover 1,017 domain names that Plaintiff claimed were confusingly similar with and infringed on Plaintiff's purported FREECREDITREPORT.COM mark (the "UDRP"). | Disputed to the extent that this "fact" is incomplete. |
| 64. | By way of example only, in the UDRP, Plaintiff claimed that the | Disputed to the extent that this "fact" is incomplete, and the document cited by |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | |
|---|---|
| following domains names were confusingly similar with and infringed on its FREECREDITREPORT.COM mark:<br><br>• threecreditreportcompany.com<br>• threecreditreporting.com<br>• 1-800-freecreditreport.com<br>• feecreditreporting.com<br>• free3creditreportagency.com<br>• freecreditreportcopy.com<br>• freecreditreportal.com<br>• freecreditreportalabama.com<br>• freecreditreportincolorado.com<br>• freecreditreportwithnocreditcard.com<br>• freecreditreportwithoutusingacreditcard.com | Defendants contains no domain names. The domains cited by Defendants were just a few of 1,017 domains registered by a single entity, the vast majority of which constituted classic typosquatting. Other of the 1,017 domains constituted correctly spelled iterations of ConsumerInfo's mark, with the addition of a geographic designation or other generic word. Taken together, these domains clearly were part of a conscious effort to profit off of the widespread consumer recognition of ConsumerInfo's mark that exists by virtue of ConsumerInfo's extensive and expensive advertising. The arbitrator agreed, issuing a written decision transferring all the 1,017 domains to ConsumerInfo, after contested arbitration proceedings.<br><br>Maya Opp. Decl., Exh. M (UDRP Complaint), Exh. N (UDRP Decision).<br><br>See ConsumerInfo's Evidentiary Objections, Objection No. 8. |
| 65.   By way of example only, between | Disputed to the extent that this fact is |

| | | |
|---|---|---|
| | 2005 and 2007, the following domain names were used by third parties to display websites offering credit-related services and/or advertisements for credit-related services:<br>• freecreditreporthelp.com<br>• freecreditreportcenter.com<br>• freecreditreportcard.com<br>• freecreditreportbureau.com<br>• freecreditreportamerica.com<br>• freecreditreport-now.com<br>• annualfreecreditreport.com<br>• freecreditreportstore.com<br>• freecreditreportservice.com<br>• freecreditreportsite.com<br>• freecreditreportsearch.com<br>• freecreditreportnow.com<br>• freecreditreporting.com<br>• freecreditreportz.com<br>• creditreport.com<br>• free-creditreports.org<br>• free-credit-reports.net<br>• bestfreecreditreport.com | irrelevant, and the supporting evidence is incompetent and inadmissible.<br><br>See Maya Decl. at Exh. Q, Expert Report of Gary Krugman.<br><br>ConsumerInfo's Evidentiary Objections, Objection Nos. 2-3; 9-12. |
| 66. | Between 2005 and 2007, there were countless websites that used the phrases "free credit report", | Disputed to the extent that this fact is irrelevant, and the supporting evidence is incompetent and inadmissible. |

KAYE SCHOLER LLP

"freecreditreport," and similar phrases. By way of example only, these phrases were used on the following websites:

- <annualfreecreditreport.com> - prominently displayed the phrase "free credit report";
- <freecreditreportcenter.com> - prominently displayed the phrase "free credit report";
- <freecreditreportcard.com> - displayed the phrases "freecreditreport," and "freecreditreportcard.com";
- <free-credit-reports.net> - prominently displayed the phrase "free-credit-reports.net";
- <freecreditzreportz.com> - prominently displayed the phrases "freecreditreportz.com" and "free credit report";
- <freecreditreportsearch.com> - prominently

See Maya Decl. at Exh. Q, Expert Report of Gary Krugman;

ConsumerInfo's Evidentiary Objections, Objection Nos. 2-3; 9-12.

KAYE SCHOLER LLP

| | |
|---|---|
| displayed the phrase "free credit report";<br>• &lt;freecreditreportcenter.com&gt; - prominently displayed the phrase "free credit report";<br>• &lt;freecreditreporthelp.com&gt; - prominently displayed the phrases "free credit report" and "freecreditreporthelp.com." | |
| 67.   Any person with any facility in using the Internet would have discovered the extensive third party use of names, language, and phrases similar to FREECREDITREPORT.COM in seconds. | Disputed to the extent that this fact is irrelevant, and the supporting evidence is incompetent and inadmissible improper opinion.<br><br>See Maya Decl. at Exh. Q, Expert Report of Gary Krugman.<br><br>ConsumerInfo's Evidentiary Objections, Objection Nos. 2-3; 9-12. |
| 68.   Any reasonable company in Plaintiff's position would have been aware of the extensive third party use of the phrases "freecreditreport" and "free credit | Disputed to the extent that this fact is irrelevant, and the supporting evidence is incompetent and inadmissible improper opinion. |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | report" before and during the prosecution of Plaintiff's trademark application for FREECREDITREPORT.COM (between 2006-2008). | See Maya Decl. at Exh. Q, Expert Report of Gary Krugman.<br><br>ConsumerInfo's Evidentiary Objections, Objection Nos. 2-3; 9-12. |
|---|---|---|
| 69. | On September 18, 2008 Plaintiff's counsel sent Defendant Willms a demand letter stating that a) Plaintiff owned and operated the website **www.freecreditreport.com**; and b) that Credit Report America website had copied web pages from FreeCreditReport.com. | Disputed to the extent that this is an incomplete statement of the content of the letter. The letter also informed Defendant Willms of ConsumerInfo's trademark rights in FREECREDITREPORT.COM<br><br>2/12/10 Maya Decl. in Supp. of ConsumerInfo's Mot. at Exh. A. |
| 70. | A printout from the FreeCreditReport.com website was attached as Exhibit A to Plaintiff's September 18, 2008 letter. This printout displays Plaintiff's use of the purported FREECREDITREPORT.COM trademark without the symbol "®". | Undisputed. |
| 71. | In response to Plaintiff's September 18, 2008 letter, the | Disputed to the extent that this "fact" implies that Defendants had no |

23283237.DOCX          CONSUMERINFO'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | Alberta Defendants instructed their contractor, Nethuesindia to change the look of the Credit Report America website. | involvement in the design of their websites.<br>See Response to Fact No. 29 above. |
| 72. | On November 4, 2008 Plaintiff's counsel sent Defendant Willms another demand letter, which stated that Defendants had violated Plaintiff's trademark rights in FREECREDITREPORT.COM by a) bidding on the phrase "freecreditreport"; and b) displaying the phrase "FreeCreditReport.com?" | Disputed to the extent that the statement mischaracterizes the content of the letter.<br><br>2/12/10 Maya Decl. in Supp. of ConsumerInfo's Mot. at Exh. B, Page 40. |
| 73. | Prior to November 4, 2008 Defendants were not aware of Plaintiff's registration for the FREECREDITREPORT.COM mark. | Disputed.<br><br>See Facts 150-153 below. |
| 74. | A printout from the Google search results, displaying various sponsored ads, was attached as Exhibit A to Plaintiff's November 4, 2008 letter.  This printout displays Plaintiff's advertisement for its FreeCreditReport.com | Undisputed. |

**KAYE SCHOLER LLP**

| | |
|---|---|
| website.  The ad displays the purported FREECREDITREPORT.COM trademark without the symbol "®". | |
| 75.    After receiving this letter, the Alberta Defendants instructed Advaliant, ClickBooth, and ROI not to bid on or display the phrase "freecreditreport.com." | Disputed.  Defendants did not instruct Advaliant not to bid on or display the phrase freecreditreport.com until December 30, 2008, and Defendants did not so instruct ClickBooth, ROI, or any other affiliate marketer. Leonard Depo. at page 175, line 14 through page 176, line 11 & Exh. 87. See Fact Nos. 155-160 below. |
| 76.    On December 30, 2008, Defendant Willms instructed Advaliant and ClickBooth by email not to bid on or display the FREECREDITREPORT.COM mark. | Disputed.  Defendant sent an email only to Advaliant.  Defendant has proffered no evidence of any email sent to ClickBooth or anyone else. See Response to Fact No. 75 above |
| 77.    On January 23, 2009, counsel for Defendants instructed Advaliant and ClickBooth by email not to bid on or display the FREECREDITREPORT.COM mark. | Undisputed. |
| 78.    On January 13, 2009, Plaintiff | Undisputed. |

| | |
|---|---|
| initiated this lawsuit. | |
| 79. On January 14, 2010 Plaintiff's counsel sent a meet-and-confer letter regarding Plaintiff's anticipated motion for partial summary judgment.  In this letter, Plaintiff's counsel stated: First, ConsumerInfo's statements regarding its substantially exclusive use of its FREECREDITREPORT.COM [sic] were not false.  Defendants point to third party use of terms such as "free credit report" and creditreport.com." (Counterclaim ¶¶ 5-9.)  However, ConsumerInfo's mark is FREECREDITREPORT.COM, and it must be viewed "as a whole." | Disputed to the extent that this "fact" is incomplete as to the content of the letter. |

**B. Additional Material Issues of Fact Render Summary Judgment On Plaintiff's Claims Inappropriate.**

| ConsumerInfo's Additional Material Facts | Evidence |
|---|---|
| 80. ConsumerInfo sells a popular credit monitoring product called | ConsumerInfo 30(b)(6) Depo at page 6, lines 5-14; page 29, lines 16-20 |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | Triple Advantage. | |
| 81. | ConsumerInfo obtained a federal registration for the TRIPLE ADVANTAGE trademark on November 4, 2008. | See 2/19/10 Request for Judicial Notice, submitted concurrently with ConsumerInfo's Opposition to Defendants' Motion for Partial Summary Judgment. |
| 82. | ConsumerInfo expends tremendous resources advertising its products, including on major television networks such as CNN, CNBC, NBC, CBS, MSNBC, and FOX. | Williams 2/19/10 Decl. at ¶ 17. |
| 83. | ConsumerInfo's FreeCreditReport.com television commercials have become so popular that numerous consumers have posted videos of their own renditions of the FreeCreditReport.com jingles on websites such as You Tube. | Williams 2/19/10 Decl. at ¶ 18. |
| 84. | ConsumerInfo also spends significant resources advertising its products on the Internet through sponsored link advertisements, text advertisements, and banner advertisements. | Williams 2/19/10 Decl. at ¶ 19. |

KAYE SCHOLER LLP

| 85. | Having expended millions of dollars on advertising and promoting the FREECREDITREPORT.COM brand, generating tens of millions in annual revenues, and developing wide recognition of the brand, ConsumerInfo obtained the federal registration for FREECREDITREPORT.COM in May 2008. | See Declaration of Ty Taylor, submitted in support of ConsumerInfo's Motion for Partial Summary Judgment at ¶ 3 & Exh. 1.<br><br>See Request for Judicial Notice, submitted in support of ConsumerInfo's Motion for Partial Summary Judgment, at ¶ 5 & Exh. E. |
|---|---|---|
| 86. | The primary means through which ConsumerInfo provides its products to and interacts with its customers is through its websites, including FreeCreditReport.com. | Williams 2/19/10 Decl. at ¶ 3. |
| 87. | In late 2005, the landing pages ConsumerInfo used for FreeCreditReport.com included one incorporating a picture of a brunette woman. | Williams 2/19/10 Decl. at ¶ 4 & Exh. A. |
| 88. | In late 2005, ConsumerInfo experienced a decline in the conversion rates for its FreeCreditReport.com website. | Williams 2/19/10 Decl. at ¶ 5. |
| 89. | ConsumerInfo formed what was referred to as a "SWAT team" to | Williams 2/19/10 Decl. at ¶ 5. |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | address this decline, named after elite police force units. | |
| 90. | This team included people from various departments, including marketing employees, creative employees, design employees, and then-President Ty Taylor. | Williams 2/19/10 Decl. at ¶ 5 |
| 91. | Brad Simmons and Erik Tarui, two other ConsumerInfo employees at the time, also were members of the SWAT team. | Williams 2/19/10 Decl. at ¶ 5. |
| 92. | The members of this SWAT team came to work early, around 7 am, for several months, to develop solutions to improve the conversion rate of ConsumerInfo's FreeCreditReport.com website. | Williams 2/19/10 Decl. at ¶ 6. |
| 93. | The team developed and tested different landing page designs against each other, testing each new design against the landing page working best up until that time, which was referred to as the control. | Williams 2/19/10 Decl. at ¶ 6. |
| 94. | Whichever page had the best conversion rate would become the new control, and ConsumerInfo | Williams 2/19/10 Decl. at ¶ 6. |

| | | |
|---|---|---|
| | would test other designs against it. | |
| 95. | The so-called "Blondie" web page was the result of this months-long testing process. | Williams 2/19/10 Decl. at ¶ 7 & Exh. B. |
| 96. | The Blondie web page had remarkably good success, getting better conversion rates than any other at the time. | Williams 2/19/10 Decl. at ¶ 7. |
| 97. | The Blondie web page was developed slowly, and represents a combination of different creative elements tested in a variety of different pages. | Williams 2/19/10 Decl. at ¶ 8. |
| 98. | For instance, the three-box design was developed first, and evolved from other web pages incorporating different color schemes and photographs. | Williams 2/19/10 Decl. at ¶ 8. |
| 99. | ConsumerInfo began using the three-box design around September 2005, and the SWAT team worked it into different pages thereafter, combining it with different color schemes and photographs. | Williams 2/19/10 Decl. at ¶ 8 and Exh. C. |
| 100. | Blondie finally emerged from the testing process around November | Williams 2/19/10 Decl. at ¶ 9. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | 2005. | |
| 101. | After developing the Blondie web page through the SWAT team process, ConsumerInfo began using the Blondie web page as the primary landing page for FreeCreditReport.com | Williams 2/19/10 Decl. at ¶¶ 10-11 & Exh. D. |
| 102. | Blondie remained in use on FreeCreditReport.com throughout 2008, and remains in ConsumerInfo's library of website trade dress for use in the future. | Williams 2/19/10 Decl. at ¶ 12. |
| 103. | In 2008, ConsumerInfo developed additional landing pages that incorporated more recent trade dress, other than the Blondie trade dress, including images from ConsumerInfo's popular "Bandguy" television commercials and images of the characters in those commercials. | Williams 2/19/10 Decl. at ¶ 13. |
| 104. | ConsumerInfo has used such trade dress and landing pages simultaneously with the Blondie web page. | Williams 2/19/10 Decl. at ¶ 13. |
| 105. | Millions of consumers visit FreeCreditReport.com every | Williams 2/19/10 Decl. at ¶ 14. |

| | | |
|---|---|---|
| | month. | |
| 106. | Depending on how a consumer arrives at the FreeCreditReport.com website, and when a consumer visited the site, the consumer may see or have seen different trade dress on different landing pages, including Blondie or Bandguy images. | Williams 2/19/10 Decl. at ¶ 14. |
| 107. | Over the years, over 4 million customers have ordered ConsumerInfo's products through the Blondie webpage, resulting in hundreds of millions in revenues. | Williams 2/19/10 Decl. at ¶ 15. |
| 108. | There is no need to design a website — selling credit-related products or otherwise — using Blondie's distinctive three-box design, color scheme, and layout. | Williams 2/19/10 Decl. at ¶ 16. |
| 109. | The Blondie website contains Terms and Conditions which expressly state that the website content, including graphics and layout, are ConsumerInfo's protected trade dress and intellectual property. | Williams 2/19/10 Decl. at ¶ 11 & Exh. D. |
| 110. | ConsumerInfo's TRIPLE | Williams 2/19/10 Decl. at ¶ 7 & Exh. B. |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | ADVANTAGE and FREECREDITREPORT.COM trademarks appear on the Blondie landing page. | |
| 111. | ConsumerInfo has a practice of displaying the "®" symbol in connection with the FREECREDITREPORT.COM mark. | Williams 2/19/10 Decl. at ¶ 20.<br><br>2/19/10 Maya Opp. Decl. ¶¶ 13-14 & Exh. J (television commercials for FreeCreditReport.com). |
| 112. | Landing pages and advertisements predating registration of the trademark in May 2008 did not incorporate the ® symbol, and after that registration issued there was a transition period during which some landing pages and advertisements did not contain the symbol, while others did. | Williams 2/19/10 Decl. at ¶ 20. |
| 113. | By the end of 2008, new ads and landing pages adopted by ConsumerInfo generally included the symbol. | Williams 2/19/10 Decl. at ¶ 20. |
| 114. | On October 28, 2009, ConsumerInfo placed an order through MyCreditReportsDirect.com. | Williams 2/19/10 Decl. at ¶¶ 21-22 & Exh. E. |
| 115. | ConsumerInfo never received any | Williams 2/19/10 Decl. at ¶ 23. |

| | credit report, credit score, or credit monitoring from MyCreditReportsDirect.com. | |
|---|---|---|
| 116. | Defendants are a Canadian national, Jesse Willms, and his solely owned business entities. | See Fact Nos. 1-9 above; Willms Depo. at page 97, line 24 through page 102, line 13. |
| 117. | In April 2008, Defendants began testing a new purported "product line" using the domain name **www.creditreportamerica.com**. | Maya Opp. Decl., Exh. B, 30(b)(6) Deposition of ROI Revolution ("ROI 30(b)(6) Depo.") at page 108, line 9 through page 110, line 9 |
| 118. | When Defendants launched their CreditReportAmerica website, they began by copying ConsumerInfo's Blondie webpage in a wholesale fashion, simply replacing the FreeCreditReport.com logo with one that read "CreditReportAmerica.com," and replacing ConsumerInfo's image of a blond woman with a brunette. | 2/19/10 Williams Decl. at ¶ 7, and Exh. B; 2/12/10 Maya Decl. in Supp. of ConsumerInfo's Mot. For Partial Summary Judgment, at Exh. A, page 9.<br><br>Stefaniuk Depo. at page 20, lines 9-11; page 25, lines 4-24; page 26, line 10 through page 27, line 15; page 109, line 7 through page 124, line 18 & Exh. 125; page 124, line 19 through page 133, line 5 & Exh. 126; page 140, line 3 through page 142, line 10 & Exh. 127; page 144, line 1 through page 147, line 16; page 148, line 4 through page 152, line 19 & Exh.128; page 170, line 25 through page 171, line 14 & Exh. 132; page 171, lines 20-23; page 171, line 24 through |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | | page 172, line 15 & Exh. 133; page 172, line 16 through page 173, line 1 & Exh. 134 |
| 119. | Versions of Defendants' CreditReportAmerica.com landing page contain ConsumerInfo's name and the TRIPLE ADVANTAGE trademark | Stefaniuk Depo. at page 140, line 3 through page 142, line 10 & Exh. 127 |
| 120. | Defendants falsely advertised that consumers could obtain an instant credit report at the Credit Report America Websites. | Stefaniuk Depo. at page 109, line 7 through page 112, line 20 & Exh. 125, page 124, line 19 through page 133, line 5 & Exh. 126<br><br>Leonard Depo. at page 227, line 24 through page 229, line 24 & Exh. 101; page 147, line 16 through page 148, line 24; page 245, line 16 through page 248, line 7 & Exh. 110<br><br>Kiedyk Depo. at page 31, line 25 through page 34, line 19; page 139, line 24 through page 144, line 20 & Exh. 160<br><br>Alberta Depo. at page 128, line 14 through page 131, line 10 & Exh. 219 |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | | 2/19/10 Williams Decl. ¶¶ 21-23 & Exhs. E & F. |
| 121. | Defendants falsely advertised that consumers could obtain an instant credit score at Credit Report America Websites. | Stefaniuk Depo. page 61, line 2 through page 62, line 21 & Exh. 123; page 63, line 16 through page 64, line 10; page 65, line 16 through page 66, line 5; page 68, lines 12-20; page 69, lines 2-22; page 70, line 4 through page 72, line 25; page 73, line 11 through page 76, line 23; page 77, line 25 through page 80, line 4 & Exh. 30; page 109, line 7 through page 113, line 4 & Exh. 125<br><br>Leonard Depo. at page 143, lines 2-9; page 146, lines 2-13; page 245, line 16 through page 248, line 7 & Exh. 110 |
| 122. | Defendants falsely advertised that consumers could obtain credit monitoring services through Credit Report America Websites | Stefaniuk Depo. at page 61, line 2 through page 62, line 21 & Exh. 123; page 63, line 16 through page 64, line 10; page 65, line 16 through page 66, line 5; page 70, line 20 through page 72, line 25 |
| 123. | Defendants did not in fact provide consumers instant credit reports, instant credit scores, or credit monitoring. | Alberta Depo. at page 62, line 4 through page 63, line 22 & Exh. 211; page 65, lines 11-18; page 68, line 16 through page 78, line 13. |

| | | |
|---|---|---|
| | | 2/19/10 Williams Decl. ¶¶ 21-23 & Exhs. E & F. |
| 124. | Rather, consumers who purchased Defendants' "product" were provided with a downloadable form to mail in to the three major credit bureaus (Experian, Transunion and Equifax) to obtain a federally mandated free credit report. | Alberta Depo. at page 62, line 4 through page 63, line 22 & Exh. 211; page 65, lines 11-18; page 68, line 16 through page 78, line 13. |
| 125. | Defendants also falsely advertised that their products were "seen on" major television networks such as CNN and MSNBC, the same networks on which ConsumerInfo heavily advertises its credit report, credit score and credit monitoring products. | Stefaniuk Depo. at page 148, line 4 through page 152, line 19 & Exh.128.<br><br>ROI 30(b)(6) Depo. at page 54, line 13 through page 55, line 3; page 56, lines 3-21 and Exh. 46. |
| 126. | Defendant Jesse Willms began his Internet-based businesses while in high school in approximately 2004. | Willms Depo. at page 56, line 12 through page 57, line 25. |
| 127. | At that time, Willms established accounts with Google Adwords, a Google search engine system that allows advertisers to "bid" on | Willms Depo. at page 59, line 11 through page 61, line 11; page 61, line 20 through page 63, line 6 |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | keywords, such that when a consumer searches for that word or term in Google, the advertiser's advertisement – known as a sponsored link advertisement | |
| 128. | Willms admits he personally bid on keywords and placed sponsored link ads through Google. | Willms Depo. at page 59, line 11 through page 61, line 11; page 61, line 20 through page 63, line 6 |
| 129. | The advertiser (or user) of the Ad Words system determines what keywords to bid on. | See Fact No. 20 above |
| 130. | Records subpoenaed from Google reflect for the account held in the name "Jesse Willms" shows that Defendants directly bid on a variety of nearly identical iterations of ConsumerInfo's FREECREDITREPORT.COM mark to render their sponsored link advertisements for CreditReportAmerica, including: (1)"experian freecreditreport com"; (2) "freecreditreport com"; (3) "freecreditreport com login"; (4) "freecreditreport comk"; and (5) "www freecreditreport com". | Maya Opp. Decl. at Exh. P (Google AdWords records for file name: johnwillms2@yahoo.com) |
| 131. | Defendants had access to the | See Fact No. 144 below. |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | "Jesse Willms" Google Adwords account and the ability to place bid on keywords and place sponsored links using that and other accounts established by Defendants. | |
| 132. | Defendants also used both the TRIPLE ADVANTAGE and FREECREDITREPORT.COM marks by copying ConsumerInfo's banner ads containing those marks, and using those banner ads as their own. | Leonard Depo. at page 249, line 20 through page 251, line 8 & Exh. 112. |
| 133. | Defendant Willms alleges in his Counterclaim in this action that, because of ConsumerInfo's lawsuit against him, he "ha[s] limited use of the [FREECREDITREPORT.COM] Mark and derivatives and permutations thereof." | Docket No. 6, Counterclaim, at p. 24 ¶ 32. |
| 134. | Defendant Willms further alleges in his Counterclaim that he "ha[s] incurred expense in creating workarounds for [FREECREDITREPORT.COM]". | Docket No. 6, Counterclaim, at p. 24 ¶ 32. |
| 135. | In April 2008, Defendants partnered with ROI Revolution, a | See Fact No. 117 above |

KAYE SCHOLER LLP

| | |
|---|---|
| company that specializes in online marketing of its clients' products and websites. | |
| 136. No written agreement exists between ROI and Defendants; rather, ROI was to be paid, if at all, according to how "successful" the CreditReportAmerica business was. | Willms Depo. at page 87, lines 5-23; page 91, lines 10-16.<br><br>ROI 30(b)(6) Depo. at page 128, lines 5-12.<br>See Response to Fact No. 38 above. |
| 137. Indeed, unlike standard affiliate networks, who are compensated by the advertiser each time a consumer is sent to the advertiser's website and purchases a good or service, consumer traffic obtained through ROI's efforts was not even separately tracked by Defendants. | See Fact Nos. 16 and 38 above. |
| 138. ROI signed agreements on Defendants' behalf with third parties engaged to promote CreditReportAmerica. | D'Angelo Depo. at page 162, lines 1 through 20 & Exh. 38 |
| 139. Defendants created banner ads and email ads for ROI to place on various websites, falsely advertising Defendants' CreditReportAmerica products. | See Response to Fact Nos. 14 and 41 above. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| 140. | Defendant Willms also specifically directed ROI to review the ads of competitors , including ConsumerInfo, to develop advertising for CreditReportAmerica, and Willms provided ROI with access to a tool called "TNS" to allow ROI to download competitor banner ads. | D'Angelo Depo. at page 8, lines 10-14; page 70, line 14 through page 73, line 6 & Exh. 12.; page 73, line 18 through page 76, line 10; page 76, line 24 through page 79, line 2, page 79, lines 16-20. |
| 141. | ROI regularly reported to Defendants – including directly to Defendant Willms – the results of its efforts and provided Defendants with reports reflecting the content of the text ads falsely advertising the Credit Report America "product". | D'Angelo Depo. at page 121, line 21 through page 123, line 11 & Exh. 25; page 148, line 6 through page 149, line 20 & Exh. 36 |
| 142. | INTENTIONALLY OMITTED | INTENTIONALLY OMITTED |
| 143. | ROI had direct communications with Defendant Willms about the fact that consumers were complaining about Defendants falsely advertising that they provided instant credit reports and credit scores. | D'Angelo Depo. at page 141, line 8 through page 143, line 3 & Exh. 34 |
| 144. | Defendants also provided ROI with Google Adwords and Yahoo | ROI 30(b)(6) Depo. at page 6, line 22 through page 7, line 2; page 11, line 22 |

| | | |
|---|---|---|
| | Search Marketing accounts – paid for by Defendant Willms – in order for ROI to place sponsored link ads for CreditReportAmerica. | through page 12, line 8; page 31, line 5 through page 35, line 25 & Exh. 288; page 95, line 21 through page 96, line 3; page 96, line 19 through page 99, line 19; page 102, lines 14-22; page 103, lines 17-24 |
| 145. | ROI used these accounts to bid on very close iterations of the Mark, including "freecreditreport com", "freecreditreport com review," "experian freecreditreport com," and "freecreditreport com login." | ROI 30(b)(6) Depo. at page 161, line 20 through page 162, line 24 & Exh. 303<br><br>Maya Opp. Decl., Exh. P (Google AdWords records for file name: katherine@roirevolution.com) |
| 146. | Defendants contracted with several affiliate networks to promote the CreditReportAmerica website and products, including AdValiant, IntegraClick dba ClickBooth, and Hydra Network. | See Response to Fact No. 16 above, and evidence cited therein. |
| 147. | The contracts with these affiliate networks specifically stated that Defendants were to provide all advertising content and were solely responsible for that content. | Leonard Depo. at page 263, line 10 through page 265, line 1 & Exh. 116 at page 2 (Terms & Conditions, bullet point 2).<br><br>Leonard Depo. at page 267, line 8 through page 270, line 5 & Exh. 118 at page 1 (Campaign Instructions, first paragraph) |

KAYE SCHOLER LLP

| | | Maya Opp. Decl., Exh. O (IntegraClick dba ClickBooth Advertising Order at page 1, "Client to Provide the Following . . .") |
|---|---|---|
| 148. | Defendants provided these affiliate networks with infringing banner ads that falsely advertised Defendants products. | See Response to Fact No. 41 above. |
| 149. | Under their contracts with the affiliate networks, Defendants had the ability to direct the affiliate networks to cease allowing any particular member of the network from advertising the CreditReportAmerica product. | See Response to Fact No. 17 above. |
| 150. | Defendants also had the right and ability to monitor and control the affiliate networks by expressly forbidding affiliate members from bidding on certain trademarked terms or otherwise using those trademarks in advertising. | See Response to Fact No. 17 above |
| 151. | Indeed, Defendant Willms had used this right and ability on numerous past occasions with respect to other products, | Leonard Depo. at page 60, line 12 through page 61, line 23 & Exh. 64; page 63, lines 12-21, page 69, lines 10-17 & Exh. 65; page 70, line 8 through |

KAYE SCHOLER LLP

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | forbidding affiliates from using the trademarks "Oprah" and "Wu Long" in connection with his diet products. | page 71, line 14 & Exh. 66; page 71, line 15 through page 73, line 12 & Exh. 67; page 75, line 14 through page 79, line 11. |
| 152. | In a cease and desist letter on September 18, 2008, after having discovered Defendants' infringement of ConsumerInfo's website trade dress, ConsumerInfo notified Defendant Willms of its rights in the FREECREDITREPORT.COM Mark. | 2/12/10 Maya Decl. in Supp. of ConsumerInfo's Mot. For Partial Summary Judgment, at Exh. A (Stipulated Injunction with Mighty Net, Inc.) |
| 153. | When Willms received this letter, he was well aware of what trademark rights were and the importance of those rights, since he had previously been sued for trademark infringement by numerous parties, and had previously personally forbade affiliates from using other parties' marks after receiving cease and desist letters from those parties. | Alberta 30(b)(6) Depo. at page 127, line 6 through page 128, line 1<br><br>Leonard Depo. at page 60, line 12 through page 61, line 23 & Exh. 64; page 63, lines 12-21, page 69, lines 10-17 & Exh. 65; page 70, line 8 through page 71, line 14 & Exh. 66; page 71, line 15 through page 73, line 12 & Exh. 67; page 75, line 14 through page 79, line 11. |
| 154. | Defendants acknowledge actual notice of registration of the FREECREDITREPORT.COM | See Fact No. 73 above |

| | | |
|---|---|---|
| | Mark as of November 4, 2008, the date ConsumerInfo sent its second cease and desist letter to Defendants, specifically informing Defendant Willms about sponsored link advertisements that were infringing ConsumerInfo's registered FREECREDITREPORT.COM mark . | |
| 155. | After receiving ConsumerInfo's November 4 C&D letter, Willms failed to notify the affiliate networks that affiliate members were infringing ConsumerInfo's marks in sponsored link advertisements, nor did he direct them to cease allowing the affiliate members to promote CreditReport America. | See Response to Fact No. 75 above. |
| 156. | Instead, ConsumerInfo was forced to send two more C&D letters – on December 11 and December 29 – informing Defendants of the continuing trademark infringement. | 2/12/10 Maya Decl. in Supp. of ConsumerInfo's Mot. For Partial Summary Judgment, at Exhs. A and B. |
| 157. | Finally, on December 30, | Leonard Depo. at page 175, line 14 |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | Defendant Willms sent a one line email to only one affiliate network, Advaliant stating only: "For all creditreportamerica offers, ban the keyword: freecreditreport.com, make It bold, they are threatening to sue : ( " | through page 176, line 11 & Exh. 87. |
| 158. | Willms made no effort in this communication to identify the offending affiliates, and no effort to ensure those affiliates could no longer promote CreditReportAmerica. | See Fact No. 157 above. |
| 159. | Not until January 23, 2009 – ten days after ConsumerInfo filed this lawsuit – did Defendants direct their affiliate networks to cease allowing affiliate members to bid or otherwise use the FREECREDITREPORT.COM mark. | Leonard Depo. at page 238, line 21 through page 239, line 5 & Exh. 106. |
| 160. | And, not until January 28, 2009 did Defendants suggest that the affiliate networks be directed to terminate the offending affiliates from promoting CreditReportAmerica. | Leonard Depo. at page 200, line 6 through page 201, line 8 & Exh. 92. |

KAYE SCHOLER LLP

**KAYE SCHOLER LLP**

| | | |
|---|---|---|
| 161. | Defendants, through their website, **www.creditreportamerica.net** ran counterfeit ads in Google, which Defendants placed in close proximity to ConsumerInfo's own ads containing its registered mark. | 2/12/10 Maya Decl. in Supp. of ConsumerInfo's Motion at Exh. B, Pages 32-39.<br><br>Leonard Depo. at page 238, line 21 through page 239, line 5 & Exh. 106. |
| 162. | INTENTIONALLY OMITTED | INTENTIONALLY OMITTED |
| 163. | Defendant Willms made the decision to falsely advertise that consumers could obtain an instant credit score through Credit Report America. | D'Angelo Depo. at page 89, line 10 through page 92, line 3 & Exh. 18; page 92, line 10 through page 93, line 16.<br><br>Leonard Depo. at page 131, lines 6-17 & Exh. 77; page 133, line 8 through page 138, line 6; page 245, line 16 through page 248, line 7 & Exh. 110 . |
| 164. | Defendants provided ROI and Advaliant all banner ads for Credit Report America. | 9/29/09 D'Angelo Depo. at page 111, line 11, through page 117, line 1 & Exh. 23; page 212, line 6 through page 218, line 13 & Exh. 59; page 218, line 17 through page 221, line 23 & Exh. 60; page 222, line 1 through page 224, line 16 & Exh. 61<br><br>Leonard Depo. at page 123, lines 7-22; page 245, line 16 through page 248, line 7 & Exh. 110; page 249, line 20 through |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | | page 251, line 8 & Exh. 112 |
| 165. | Defendant Jesse Willms personally approved all banner ads for Credit Report America. | 9/29/09 D'Angelo Depo. at page 128, line 14 through page 130, line 10; page 130, line 21 through page 132, line 17 & Exh. 31; |
| 166. | ROI, through Casale Media, placed infringing banner ads created by the Defendants. | D'Angelo Depo. at page 11, line 11, through page 117, line 1 & Exh. 23; page 212, line 6 through page 218, line 13 & Exh. 59; page 218, line 17 through page 221, line 23 & Exh. 60; page 222, line 1 through page 224, line 16 & Exh. 61; page 117, line 2 through page 120, line 18 & Exh. 24; page 155, line 20 through page 161, line 25 & Exhs. 36 & 37 |
| 167. | Defendants reviewed and approved ads that contained false statements about Credit Report America's products. | 9/29/09 D'Angelo Depo. at page 121, line 21 through page 123, line 11 & Exh. 25; page 137, line 12 through page 140, line 7 & Exh. 33; page 141, line 9 through page 144, line 2 & Exh. 34<br><br>Leonard Depo. at page 104, line 17 through page 107, line 2 & Exh. 69 |
| 168. | Defendant Jesse Willms personally reviewed and approved ads that contained false statements about Credit Report America's | 9/29/09 D'Angelo Depo. at page 121, line 21 through page 123, line 11 & Exh. 25; page 137, line 12 through page 140, line 7 & Exh. 33; page 141, line 9 |

| | | |
|---|---|---|
| | products. | through page 144, line 2 & Exh. 34; page 145, line 12 through page 148, line 5 & Exh. 35; page 177, line 25 through page 179, line 20 & Exh. 43 |
| | | Kiedyk Depo. at page 126, line 7 through page 129, line 9 & Exh. 159; page 130, line 11 through page 133, line 3; page 135, line 23 through page 137, line 13. |
| 169. | Defendant Jesse Willms personally reviewed and approved banner ads that infringed ConsumerInfo's copyrighted ads. | 9/29/09 D'Angelo Depo. at page 148, line 6 through page 151, line 4 & Exh. 36; page 155, line 19 through page 156, line 14. |
| | | Stefaniuk Depo. at page 21, line 21 through page 22, line 3; page 23, line 24 through page 24, line 5; page 27, lines 16-22; page 211, line 8 through page 215, line 4 & Exh. 145 |
| | | 2/19/10 Maya Opp. Decl. ¶ 12 & Exh. I. |
| 170. | Defendant Jesse Willms did not instruct Advaliant to direct its publishers to cease bidding on, or otherwise using the FREECREDITREPORT.COM | Leonard Depo. at page 126, lines 10-18 & Exh. 76; page 128, line 9 through page 130, line 23; page 175, line 14 through page 176, line 11 & Exh. 87. |

KAYE SCHOLER LLP

| | | |
|---|---|---|
| | mark until December 30, 2008. | |
| 171. | Defendant Jesse Willms personally provided to third party affiliate networks email advertisements containing false statements about Credit Report America. | Leonard Depo. at page 131, lines 6-17 & Exh. 77; page 133, line 8 through page 138, line 6. |
| 172. | Willms personally received ConsumerInfo's cease and desist letters. | 2/12/10 Maya Decl. Exhs. A-B. |
| 173. | At his deposition in this matter, Willms was impeached regarding obviously perjured statements made in his sworn written discovery responses concerning CreditReportAmerica advertising. | Willms Depo. at page 13, line 6 through page 21, line 15. |
| 174. | Defendants infringed ConsumerInfo's marks by using those marks on banner ads for Defendants' Credit Report America Websites | Leonard Depo. at page 249, line 20 through page 251, line 8 & Exh. 112 |
| 175. | In September 2009, Defendants infringed ConsumerInfo's FREECREDITREPORT.COM mark by bidding on that mark in Google Adwords to promote mycreditreportsdirect.com. | Alberta Depo. at page 84, line 10 through page 87, line 7 & Exh. 213 |

KAYE SCHOLER LLP

| | |
|---|---|
| 176. Willms's counsel indicated in two separate written communications to affiliate networks that CreditReportAmerica.net was owned and/or controlled by Defendants. | Maya Opp. Decl. Exh. C, Leonard Depo. at page 238, line 21 through page 239, line 5 & Exh. 106; page 200, line 6 through page 201, line 8 & Exh. 92. |

Dated: February 19, 2010                    KAYE SCHOLER LLP


By:_____/s/_____
              Theodore W. Maya
Attorneys for Plaintiff
CONSUMERINFO.COM, INC.