RHONDA R. TROTTER, Bar Number 169241
rtrotter@kayescholer.com
THEODORE W. MAYA, Bar Number 223242
tmaya@kayescholer.com
KAYE SCHOLER LLP
1999 Avenue of the Stars, Suite 1700
Los Angeles, California  90067
Telephone:  (310) 788-1000
Facsimile:   (310) 788-1200

Attorneys for Plaintiff and Counter-Defendant
CONSUMERINFO.COM, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| CONSUMERINFO.COM, INC., a California corporation,<br><br>            Plaintiff,<br><br>     v.<br><br>JESSE WILLMS, an individual; EDIRECT, a Canadian Partnership; 1016363 ALBERTA LTD., a Canadian Corporation; 1021018 ALBERTA LTD., a Canadian Corporation; all doing business as "WU-YI SOURCE," "JUST THINK MEDIA," and "CREDIT REPORT AMERICA,"<br><br>            Defendants.<br><br>AND RELATED COUNTERCLAIM. | CASE NO. SA CV 09-0055 DMG (MLGx)<br><br>**PLAINTIFF CONSUMERINFO.COM, INC.' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Fed. R. Civ. P. 56<br><br>*[Filed concurrently with Plaintiff's Response to Defendants' Statement of Genuine Issues; Evidentiary Objections]*<br><br>Hon. Dolly M. Gee<br><br>Hearing Date:  March 12, 2010<br>Time:                 2:00 P.M.<br>Place:                Court Room 7<br>                          Spring Street |

# TABLE OF CONTENTS

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ............................. 1
I. Introduction ................................................................................................ 1
II. Argument ................................................................................................... 2
    A. Defendants Have Proffered No Evidence That ConsumerInfo Made Any False Statement to the PTO ................................................. 2
        1. Defendants' "Substantially Exclusive" Theory of Fraud Fails as A Matter of Law ................................................................. 2
        2. Defendants' Theory of Fraud Based on Confusion Also Fails ........................................................................................ 6
        3. Defendants' Fraud Theory Regarding Distinctiveness Fails ...... 7
        4. Defendants' Fraud Theory Alleging Misdescriptiveness Fails As Well ................................................................................. 8
    B. Defendants' Unsupported Allegations of Knowledge, Intent and Reliance Do Not Save Their Fraud Claim ............................................. 9
    C. Defendants Have Raised No Genuine Issue of Material Fact With Respect to Their Lack of Damage ................................................ 10
    D. Each of Defendants' Affirmative Defenses Fail as a Matter of Law ............................................................................................ 11
        1. Plaintiff's Unclean Hands Defense Fails as a Matter of Law .. 11
        2. Defendants' Have Proffered No Evidence on Failure to Mitigate ................................................................................. 12
        3. Defendants Cannot Create a Triable Issue of Fact on Superseding Events and Acts of Third Parties .......................... 13
        4. The *In Pari Delicto* and Allocation of Fault Defenses Fail ...... 13
        5. Defendants' Waiver, Estoppel, Abandonment, and Fair Use Defenses Also Fail ........................................................... 13
III. Conclusion .............................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Emco, Inc. v. Obst*,
    2004 WL 1737355 (C.D. Cal. May 7, 2004)..................................................12

*Hana Fin., Inc. v. Hana Bank*,
    500 F. Supp. 2d 1228 (C.D. Cal. 2007)....................................................3, 4, 5

*Intellimedia Sports, Inc. v. Intellimedia Corp.*,
    43 U.S.P.Q.2d 1203 (TTAB, May 20, 1997) ................................................4, 5

*King-Size, Inc. v. Frank's King Size Clothes*,
    547 F. Supp. 1138 (S.D. Tex. 1982)..............................................................4, 5

*Levi Strauss & Co. v. Shilon*,
    121 F.3d 1309 (9th Cir. 1997) ....................................................................11, 12

*Lowery v. Blue Steel Releasing, Inc.*,
    261 Fed. App'x 17 (9th Cir. 2007) ....................................................................1

*PerfumeBay.com, Inc. v. EBay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007) ..........................................................................11

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1986) .............................................................................1

*Weitzman v. Stein*,
    436 F. Supp. 895 (D.C.N.Y. 1977)..................................................................13

**Statutes**

Federal Rule of Civil Procedure 9(b)...................................................................1, 2

# REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.     Introduction

Defendants' opposition papers to ConsumerInfo's motion for partial summary judgment patently demonstrate that Defendants' counterclaim for fraud on the PTO, and Defendants' affirmative defenses, fail as a matter of law.  Ignoring entirely Federal Rule of Civil Procedure 9(b), Defendants not only attempt to re-write the purportedly fraudulent statements set forth in their counterclaim and unclean hands affirmative defense pleadings, Defendants resort to re-writing the content of written statements submitted by ConsumerInfo to the PTO.

Defendants are bound under FRCP 9(b) to the specific purportedly fraudulent statements they set forth in their pleadings, and their desperate attempt to save their obviously unmeritorious legal theories should not be permitted.  See ConsumerInfo Memo of Ps and As in Support of Partial Summary Judgment ("ConsumerInfo's SJ Motion") at pp. 9-10); *Lowery v. Blue Steel Releasing, Inc.*, 261 Fed. App'x 17, 2007 U.S. App. LEXIS 29896 at *19-20 (9th Cir. 2007).  And, Rule 9(b) is not taken lightly by courts, because of the recognition that a defendant must "have notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1986).

Tellingly, Defendants do not set forth any argument as to why they should be excused from Rule 9(b)'s restrictions.  Indeed, Defendants choose to ignore much of the legal precedent cited in ConsumerInfo's motion on the key legal issues, and misconstrue the legal authority they do attempt to distinguish.

Moreover, whether under the theories set forth in their pleadings, or their newly-asserted theories in their Opposition, Defendants have failed to raise a triable issue of material fact on their counterclaim or affirmative defenses, and ConsumerInfo's motion for partial summary judgment should be granted in its entirety.

## II. <u>Argument</u>

**A. Defendants Have Proffered No Evidence That ConsumerInfo Made Any False Statement to the PTO.**

In its moving papers, ConsumerInfo detailed why Defendants' alleged fraudulent statements set forth in their pleadings failed as a matter of law to support their Counterclaim and unclean hands defense.

Rather than abiding by the well-established principles of Rule 9(b), Defendants attempt to rescue their counterclaim and unclean hands defense through a combination of rewriting their factual allegations, and rewriting the statements ConsumerInfo made in its trademark application. Defendants entirely ignore Rule 9(b), and indeed do not respond at all to ConsumerInfo's discussion of Rule 9(b) in its moving papers. The reason for this is obvious: Defendants have no legal or factual basis to avoid Rule 9(b). In any event, whether based on their permissible theories set forth in their pleadings, or on their new improperly-asserted theories, Defendants fraud counterclaim and unclean hands defense fail as a matter of law.

**1. <u>Defendants' "Substantially Exclusive" Theory of Fraud Fails as A Matter of Law.</u>**

Defendants have adopted two separate theories of fraud based related to ConsumerInfo's statement to the PTO that it "substantially exclusively" used the FREECREDITREPORT.COM mark, both of which are different from the actual statement ConsumerInfo made:

| Counterclaim | Opposition Brief | ConsumerInfo's Actual Statements |
|---|---|---|
| ConsumerInfo had engaged in "substantially exclusive" use of [the Mark]. (Docket No. 6, Counterclaim at ¶ 20.) | that no third party has used [the Mark] or a near resemblance thereto. (Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment ("Defendants' Opp.") at page 6, line 28 through page 7, line 1.) | "to the best of his/her knowledge and belief no other person, firm, corporation, or association **has the right to use the mark** in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." (ConsumerInfo's Request for Judicial Notice in Support of Its Motion for Partial Summary Judgment, Exh. A page 11 (emphasis added).) |

Defendants entirely misconstrue *Hana Financial*, which expressly holds that a trademark applicant "need not 'disclose those persons whom he may have heard are using the mark if he feels that the rights of such others are not superior to his.'" *Hana Fin., Inc. v. Hana Bank*, 500 F. Supp. 2d 1228, 1235 (C.D. Cal. 2007). *Hana* makes clear that the standard for determining whether an applicant committed fraud on the PTO in making the standard declaration of "substantially exclusive and

1 continuous use" is whether the applicant knows of clearly established superior trademark rights to its rights. *Id.* at 1234-37.

Rather than acknowledging that *Hana* deals a fatal blow to their fraud theory, Defendants make a feeble attempt to distinguish *Hana* on the basis that *Hana* "deals with a single undisclosed use of a similar mark" (Defendants' Opp. at page 8, lines 20-21.) The *Hana* principle, however, is that the applicant must have knowledge of a legally binding determination or agreement establishing another's superior trademark rights.

An analogous T.T.A.B. decision that ConsumerInfo cited in its moving papers, but which Defendants' conveniently ignore, is *Intellimedia Sports*. That decision cogently explains that the standard for establishing fraud is that the applicant is aware of a **legal determination or binding agreement** that another person has superior or clearly established trademark rights:

> [I]f the other person's rights in the mark, vis-à-vis the applicant's rights, are not known by the applicant to be superior or clearly established, e.g., by court decree or prior agreement of the parties, then the applicant has a reasonable basis for believing that no one else has the right to use the mark in commerce, and the applicant's averment of that reasonable belief in its application declaration or oath is not fraudulent.

*Intellimedia Sports, Inc. v. Intellimedia Corp.*, 43 U.S.P.Q.2d 1203, 1207 (TTAB, May 20, 1997); *Hana Financial*, 500 F. Supp. 2d at 1234 (following *Intellimedia*).

Likewise, in *King-Size, Inc. v. Frank's King Size Clothes*, 547 F. Supp. 1138 (S.D. Tex. 1982), the court rejected defendants' theory that the plaintiff's trademark declaration regarding exclusive use of the mark KING SIZE was fraudulent:

> [D]efendants bear the onus of establishing 'that at the time of the [applications] for registration . . . [plaintiffs] knew that others *had the right to use* and were using the [term 'king size' as a trade name]. . . In this regard, it is not sufficient to prove that plaintiffs

4

failed to disclose that others were using the mark if plaintiffs did not believe that such third-parties had that right.

*Id.* at 1166, emphasis in original.

*Hana*, *Intellimedia* and *King Size* mean that Defendants bear the "heavy burden"[1] of proving that ConsumerInfo knew that the owners of the "thousands of websites" that Defendants refer to (Defendants' Opp. at page 7, lines 14-27) had trademark rights superior to ConsumerInfo's rights to a mark it had been using in commerce since 1999. Defendants' so-called "evidence" utterly fails in this regard.

First, Defendants have submitted no evidence that **any** of the owners of the purportedly thousands of websites had trademark rights in FREECREDITREPORT.COM or any mark of "near resemblance," superior to ConsumerInfo's. Essentially, Defendants' novel fraud theory would mean that any trademark applicant who filed an application under section 2(f) of the Lanham Act – which covers descriptive marks – could be subject to a charge of fraud, even though the only third party use of the words was in a descriptive, rather than trademark, sense. Defendants cite no legal authority supporting this theory.

Second, Defendants have no answer to the fact that ConsumerInfo's submission of 500+ domain names containing two or more of the words "free," "credit," and "report" belies Defendants' argument that ConsumerInfo made a knowingly false statement about other parties using those words in domain names. Although Defendants' criticism now seems to be that ConsumerInfo's 500+ domain name list — which it was not required to submit — was "blatantly incomplete" (Defendants' Opp. at page 14, lines 2-3), Defendants cannot and do not raise an issue of material fact on the truthfulness of ConsumerInfo's exclusive use

---

[1] "The defense [of fraud on the PTO in a trademark action] is disfavored, however, and carries a heavy burden of proof." *Hana*, 500 F. Supp. 2d. at 1233-34, cited in ConsumerInfo's Motion at page 8, lines 23-24.

declaration.  Nor can Defendants establish the PTO would have acted differently had ConsumerInfo submitted an even longer list of such domain names.  Defendants' fraud on the PTO counterclaim and unclean hands defense based on ConsumerInfo's substantially exclusive declaration therefore fail as a matter of law.

## 2. Defendants' Theory of Fraud Based on Confusion Also Fails.

Defendants also re-write their counterclaim and unclean hands defense regarding ConsumerInfo's statements about lack of confusion:

| Counterclaim | Opposition Brief |
|---|---|
| "ConsumerInfo misled the PTO about the absence of a likelihood of confusion between [FREECREDITREPORT.COM and CREDITREPORTS.COM]." (Docket No. 6, Counterclaim at p. 21, ¶ 21) | ConsumerInfo falsely stated to the PTO "that the Plaintiff's FREECREDITREPORT.COM mark coexists without confusion with other marks containing the phrase CREDIT REPORT." (Defendants' Opp. at page 7, lines 2-3.) |

At the invitation of the Trademark Examiner, ConsumerInfo submitted an argument in response to the Trademark Examiner's initial denial of its trademark application on the grounds of likelihood of confusion between the FREECREDITREPORT.COM mark and the pre-existing registration of the mark CREDITREPORTS.COM.  (ConsumerInfo SJ Motion at p 13).  In responding to the Examiner's denial of registration on that basis, ConsumerInfo submitted arguments to the PTO as to why FREECREDITREPORT.COM would not create a likelihood of confusion with CREDITREPORTS.COM.  Despite Defendants' allegations to the contrary in their Counterclaim, Defendants have proferred no evidence — because there is none — that there was in fact a likelihood of confusion

between FREECREDITREPORT.COM and CREDITREPORTS.COM, much less evidence that ConsumerInfo made a knowingly false statement that there was no likelihood of confusion.  Defendants' fraud counterclaim and unclean hands defense rooted in this theory also fails.

3. **Defendants' Fraud Theory Regarding Distinctiveness Fails**.

Defendants' allegations, in their counterclaim, also are strikingly idfferent from their new allegations in their opposition brief concerning ConsumerInfo's statements to the PTO regarding acquired distinctiveness.  Indeed, Defendants seem to now suggest that ConsumerInfo made a fraudulent representation of **fact** as to acquired distinctiveness because as a **legal** matter a deceptive mark cannot acquire distinctiveness:

| Counterclaim | Opposition Brief |
| --- | --- |
| ConsumerInfo "made exaggerated and unsupported claims regarding the strength of consumer recognition" of its mark.  (Docket No. 6, Counterclaim at p. 22, ¶ 24). | ConsumerInfo falsely stated to the PTO "that Plaintiff's FREECREDITREPORT.COM mark is distinctive—and therefore not misdescriptive—of Plaintiff's services." (Defendants' Opp. at p. 7, lines 3-5.) |

Apparently attempting to abandon their Counterclaim allegation that ConsumerInfo made "unsupported claims regarding the strength of consumer recognition" of FREECREDITREPORT.COM, Defendants instead now assert that regardless of whether the statements that ConsumerInfo made concerning acquired distinctiveness of FREECREDITREPORT.COM were entirely truthful, the statements were nonetheless necessarily fraudulent, because the Mark could never, as a legal matter, acquire distinctiveness.  Hence, according to Defendants, ConsumerInfo's mere submission of truthful evidence of its advertising and

7

marketing of goods under the Mark, sales and revenues, and consumer recognition, were all fraudulent. Again, Defendants cite no case authority for this proposition.

Moreover, while Defendants again suggest that ConsumerInfo committed fraud by not informing the PTO of the FTC allegations and various consumer complaints, Defendants entirely ignore the Ninth Circuit's decision in *Far Out Productions* (Motion at pp. 14-15) which establishes that ConsumerInfo had no duty to inform the PTO about the FTC Action, nor of the BBB consumer complaints. Hence, Defendants' claim of fraud and unclean hands based on ConusmerInfo's factual statements regarding its use and marketing of the Mark fail.

**4. Defendants' Fraud Theory Alleging Misdescriptiveness Fails As Well.**

Defendants also re-write their fourth fraud theory:

| Counterclaim | Opposition Brief |
|---|---|
| ConsumerInfo did not tell the PTO that its mark was "deceptively misdescriptive" because, if consumers who signed up at the freecreditreport.com website did not cancel their 30 day trial membership in ConsumerInfo's credit monitoring product within the trial period, they would be charged a membership fee for that product. (Docket No. 6, Counterclaim, pp. 22-23, ¶¶ 25-26.) | ConsumerInfo falsely stated to the PTO "that Plaintiff's use of the term FREE accurately describes that consumers will receive a product or service at no cost." (Defendants' Opp. at p. 7, lines 5-7.) |

Regardless of which of the above alleged fraudulent statements Defendants now wish to rely upon, Defendants have proffered no evidence sufficient to raise a genuine issue as to the fundamental fact: that consumers who sign up at the freecreditreport.com website are enrolled in a free trial membership in the credit monitoring program, and if they cancel before expiration of the trial period, they still keep their credit report and credit score free of charge. (Motion at pp. 3, 14).

8

Hence, Defendants cannot meet the first required element of a fraud claim -- that the statement made was false.

Defendants assert that ConsumerInfo failed to answer the PTO examiner's question as to whether credit reports were provided for free. (Defendants' Opp. at p. 12, lines 12-15.) Yet, in the very next paragraph, Defendants concede that ConsumerInfo did answer the question, informing the Examiner that the initial credit report was provided for free. (*Id.* at lines 15-20.) That consumers also were signed up for a cancellable trial membership in credit monitoring does not render ConsumerInfo's statement false, nor the FREECREDITREPORT.COM mark deceptively misdescriptive or deceptive. And, the fact that Defendants dispute that consumers get a free credit report — with no admissible evidence to support this claim — does not raise a triable issue of material fact. Nor does the Defendants' reliance on inadmissible hearsay from consumer complaints save their theory.[2]

### B. Defendants' Unsupported Allegations of Knowledge, Intent and Reliance Do Not Save Their Fraud Claim.

Defendants argue that ConsumerInfo knew about "third-party use of names, language, and phrases" substantially similar to FREECREDITREPORT.COM. (Opp. at page 13) As discussed above, the only relevant question is whether a trademark owner believes that a third party user of a mark has superior rights to its

---

[2] Defendants alleged in their Counterclaim – but not in their Opposition – that ConsumerInfo committed fraud by not referencing in in its trademark application papers that the FTC had filed a lawsuit in 2005 against ConsumerInfo (Counterclaim ¶ 28). Defendants apparently now have abandoned this fraud theory, notwithstanding that they still expend several pages discussing the FTC action, perhaps because Defendants now recognize that ConsumerInfo had no duty to include reference to the FTC action in its trademark application. (See ConsumerInfo's Motion at pp. 14-16.)

mark. Defendants have raised no triable issue regarding knowledge, intent or reliance.

Defendants also argue that ConsumerInfo was aware of consumer confusion between FREECREDITREPORT.COM and CREDITREPORTS.COM, however Defendants submit not a scintilla of evidence of any such confusion.[3] Defendants further claim that ConsumerInfo was aware of purported confusion between its FREECREDITREPORT.COM mark and the ANNUALCREDITREPORTS.COM mark, and Defendants' rely on the FTC allegations in this respect. Yet, Defendants fail to address the fact that the FTC Action was settled, with no admission of liability, and ConsumerInfo had no duty to inform the PTO about this unrelated lawsuit.

### C. Defendants Have Raised No Genuine Issue of Material Fact With Respect to Their Lack of Damage.

Recognizing that damage is a necessary element to a fraud on the PTO claim, Defendants attempt to rescue their fraud claim by resorting to the speculative, conclusory, inadmissible, unsupported testimony of Defendant Willms that the Defendants would have "re-launched their credit-related services profitably." (Opp. at page 17). Defendants proffer no admissible evidence to support this claim, and their claim for damages based on fraud on the PTO claim fails for this reason also.

Moreover, while Defendants attempt to distinguish the cases cited by ConsumerInfo which stand for the proposition that a defendant cannot pursue damages under a fraud on PTO theory if the defendant was not engaged in the business at the time of the alleged fraud, they cite no authority for the novel

---

[3] Defendants allege that ConsumerInfo was purportedly aware of confusion between FREECREDITREPORT.COM and CREDITREPORT.COM; Defendants apparently themselves have confused CREDITREPORTS.COM with CREDITREPORT.COM

1 proposition that they have standing to pursue a damages claim when they were not even engaged in the credit-related business either when ConsumerInfo made its trademark application or when the registration issued.

### D. Each of Defendants' Affirmative Defenses Fail as a Matter of Law.

#### 1. <u>Plaintiff's Unclean Hands Defense Fails as a Matter of Law</u>

Defendants' theory of unclean hands based on fraud on the PTO fails for the same reasons as Defendants' counterclaim.

As to Defendants' new unclean hands theory — that ConsumerInfo allegedly misused its mark in commerce — Defendants' theory is barred both by their failure to assert this basis in their pleadings, and because the alleged misconduct does not affect the equities of the parties. First, contrary to Defendants' assertions, ConsumerInfo is prejudiced by Defendants' eleventh-hour positing of this new theory. Defendants indeed did not disclose this theory until January 27, 2010, after discovery was closed in the case, and only in connection with their counterclaim, not their unclean hands defense. (2/26/10 Maya Decl. in Supp. of Reply, ¶ 4.)

Moreover, as ConsumerInfo set forth in its moving papers, Defendants' new unclean hands theory is not directly related to ConsumerInfo's allegations against Defendants, nor does it affect the equities between the parties in this lawsuit. Instead, Defendants seek to proffer evidence with respect to purported acts concerning persons who are not even parties to this lawsuit.

None of Defendants' cited cases support the application of Defendants' new unclean hands theory. For example, in *PerfumeBay.com, Inc. v. EBay, Inc.*, the unclean hands defense was based on an allegation that eBay was engaged in advertising using PerfumeBay's brand name. *PerfumeBay.com, Inc. v. EBay, Inc.*, 506 F.3d 1165, 1177-78 (9th Cir. 2007). Hence, the alleged unclean hands conduct affected the equities between the parties in the lawsuit. Likewise, in *Levi Strauss*, the court rejected an unclean hands defense asserted by a defendant that was based

11

on the allegation that he was entrapped by the plaintiff into selling the counterfeit goods that were the basis of plaintiff's trademark allegations. *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997). Though the Levi Strauss court did allow the unclean hands defense to survive to a bench trial, the unclean hands defense asserted affected the equities between the parties.

Finally, in *Emco, Inc. v. Obst*, the court found the unclean hands defense applicable to a false advertising claim where the counterclaimant engaged in false advertising in terms of geographic origin of its products, and had alleged in his counterclaim that the counterdefendant had engaged in false advertising as to geographic origin of its products. *Emco, Inc. v. Obst*, 2004 WL 1737355 at * 5 (C.D. Cal. May 7, 2004). Hence, the *Emco* court found that the unclean hands alleged related to the subject matter of the claims made by the counterclaimant. Here, by contrast, there is no claim by the Defendants that ConsumerInfo falsely advertised that it was providing credit reports, credit scores or credit monitoring. Therefore, even under Defendants' new, unpermitted unclean hands theory, their defense fails.

### 2. **Defendants' Have Proffered No Evidence of Failure to Mitigate**

Apparently recognizing that their counterclaim and unclean hands defense both fail as a matter of law, and desperate to preserve their ability to introduce to the jury their argument that ConsumerInfo's mark is "misdescriptive," Defendants' now concoct a novel theory of mitigation: that ConsumerInfo should never have adopted its FREECREDITREPORT.COM mark, in which case Defendants never would have infringed the mark. Defendants have no support for this novel theory, that taken to its logical conclusion would mean that any plaintiff attempting to enforce its rights fails to mitigate its damages by enforcing its rights. Defendants' affirmative defense of failure to mitigate cannot survive as a matter of law.

### 3. Defendants Cannot Create a Triable Issue of Fact on Superseding Events and Acts of Third Parties.

Apparently misunderstanding that Defendants bear the burden of proof on their affirmative defenses, Defendants flatly assert that these affirmative defenses apply to ConsumerInfo's non-secondary liability claims. Yet, Defendants do not even articulate the basis of purported application of the defenses, much less proffer evidence to support the defenses. These defenses should be dismissed.

### 4. The *In Pari Delicto* and Allocation of Fault Defenses Fail.

Defendants entirely misconstrue these defenses, which are applicable where the plaintiff and the defendant are jointly involved in some wrongful action where each is at least equally at fault. *See Weitzman v. Stein*, 436 F. Supp. 895, 904-05 (D.C.N.Y. 1977) (*in pari delicto* bars plaintiff's recovery where plaintiff "knowingly participated as an equal in the illegal act which caused the loss"). Defendants do not articulate a cogent basis for application of these defenses in this case — because there is none — and the defenses therefore should be dismissed.

### 5. Defendants' Waiver, Estoppel, Abandonment, and Fair Use Defenses also Fail.

Defendants' sole basis for these defenses is that there purportedly were third parties who used "names, language and phrases highly similar to FREECREDITREPORT.COM." Defendants ignore that ConsumerInfo, in this action and otherwise, is enforcing its rights to FREECREDITREPORT.COM, not other "names, language and phrases." Moreover, while Defendants assert in their Opposition that they "assumed that the terms were in the public domain and available for use in online marketing," they proffer no evidence to support this argument, nor do they even claim that they assumed the mark FREECREDITREPORT.COM was "in the public domain." These affirmative defenses, therefore, also fail.

13

23283682.DOCX    CONSUMERINFO REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

### III. Conclusion

For the reasons set forth above, as well as those in its moving papers, ConsumerInfo respectfully requests the Court enter an order granting ConsumerInfo's motion for partial summary judgment in its entirety.

DATED: February 26, 2010

Respectfully Submitted,

KAYE SCHOLER LLP

By: _____
Theodore W. Maya
Attorneys for Plaintiff and Counter-Defendant
CONSUMERINFO.COM, INC.