**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne, III (Bar No. 203748)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
karl@KBInternetLaw.com
hank@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Defendants Jesse Willms, eDirect, 1016363 Alberta, Ltd. and 1021018 Alberta Ltd.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CONSUMERINFO.COM, INC.,** a California corporation, <br><br> Plaintiff & Cross-Defendant, <br><br> v. <br><br> **JESSE WILLMS**, *et al.* <br><br> Defendants. <br><br> **JESSE WILLMS** and **EDIRECT**, <br><br> Cross-Plaintiffs, <br><br> v. <br><br> **CONSUMERINFO.COM, INC.**, <br><br> Cross-Defendant. | CASE NO. SACV09-0055 DMG (MLGx) <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION** <br><br> Date:   March 12, 2010 <br> Time:   2:00 pm <br> Place:   Courtroom 7 <br><br> Before Hon. Dolly M. Gee, Judge |

CASE NO. SACV09-0055 DMG (MLGx)     **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

    A. Plaintiff has submitted no evidence in opposition to Defendants' fraud on the PTO claim ....................................................................2

    B. Plaintiff has not submitted any evidence of direct trademark infringement ........................................................................................3

    C. Plaintiff has submitted no evidence that it provided notice of its trademark registration for FREECREDITREPORT.COM...................6

    D. Plaintiff has produced no evidence that its former trade dress is inherently distinctive or has acquired secondary meaning................7

    E. Plaintiff has submitted no evidence of secondary trademark infringement ........................................................................................8

    F. Plaintiff disregards Ninth Circuit authority in arguing that a cause of action for secondary false advertising exists...................................10

    G. Plaintiff has abandoned three of four of its counterfeiting claims, and cannot show that the remainder involved a counterfeit....................11

    H. Plaintiff has submitted no evidence that Willms authorized or directed the alleged misconduct ......................................................14

CONCLUSION ..................................................................................................15

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

CASE NO. SACV09-0055 DMG (MLGx)         i         **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

# TABLE OF AUTHORITIES

*Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc.*, 989 F. Supp. 1276, 1279 (C.D. Cal. 1997) ........................................... 10

*Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) ............................................................................................... 8

*Colgate-Palmolive Co. v. J.M.D. All-Star Import and Export Inc.*, 486 F.Supp.2d 286, 291 (S.D.N.Y. 2007) ...................................................... 12

*In re Lona*, 393 B.R. 1, 13 (Bankr. N.D. Cal. 2008) ................................... 10

*International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) ..................................................................................................... 7

*Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853-54 (1982) ............. 10

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ................................................................................................... 10

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1113 (N.D. Cal. 2008) .......................................................................... 9

*Miracle Blade, LLC v. Ebrands Commerce Group, LLC*, 207 F. Supp. 2d 1136, 1153 (D. Nev. 2002) ............................................................................ 7

*Montres Rolex v. Snyder*, 718 F.2d 524, 526 (2d Cir. 1983) ..................... 12

*Mutual Pharm Co. v. Ivax Pharm., Inc.*, 459 F. Supp. 2d 925, 942-43 (C.D. Cal. 2006) ......................................................................................... 10-11

*Schneider Saddlery Co., Inc. v. Best Shot Pet Products Int'l., LLC*, No. 1:06-CV-02602, 2009 WL 864072, *4 (N.D. Ohio March 31, 2009) .. 11, 12

*Swanson v. United States Forest Service*, 87 F.3d 339, 345 (9th Cir. 1996) ............................................................................................. 2

*United States v. 10,510 Packaged Computer Towers*, 152 F. Supp. 2d 1189, 1200 (N.D. Cal. 2001) ........................................................................ 12

*United States v. Zuno-Acre*, 25 F. Supp. 2d 1087, 1123 n.53 (C.D. Cal. 1998) ............................................................................................................. 2

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**Federal Statutes, Rules, and Other Authorities**

15 U.S.C. §1111 .................................................................................................. 6

15 U.S.C. §1114 .................................................................................................. 3

15 U.S.C. §1125 .................................................................................................. 3

Senate Report on the Trademark Counterfeiting Act of 1984 S. REP. 98-
    526, 3, 1984 U.S.C.C.A.N. 3627, 3629 ................................................... 12

# INTRODUCTION

Defendants respectfully ask the Court to scrutinize Plaintiff's evidentiary citations. In many cases, Plaintiff's evidence does not support the proposition for which it is cited. Once these inapposite citations are disregarded, Plaintiff's case is bare. Plaintiff is left only with insinuation and references to Defendants' involvement in completely different lawsuits with completely different parties, as if this were somehow relevant.

Most glaring of Plaintiff's inconsistencies is its position about what trademarks are similar to FREECREDITREPORT.COM. When Plaintiff opposes Defendants' fraud on the United States Patent and Trademark Office ("PTO") claim, Plaintiff argues that language such as "free credit report" and "freecreditreport" are not confusingly similar to its FREECREDITREPORT.COM mark. However, when Plaintiff accuses Defendants of counterfeiting—which has a much stricter "substantially indistinguishable" standard—Plaintiff argues that the language "freecreditreport" and "free credit report" are substantially indistinguishable from FREECREDITREPORT.COM. Plaintiff's positions are inconsistent. And Plaintiff cannot maintain them in good faith. Thus, Plaintiff's defense to Defendants' fraud on the PTO claim is not credible, and judgment must be awarded to Defendants.

Plaintiff's opposition to Defendants' other arguments also suffers from misleading citations and arguments. As limited examples, and contrary to Plaintiff's description of its evidence, nowhere does the evidence show that Defendants and ROI Revolution ("ROI") were partners. Nowhere does the evidence show that Defendants' Credit Report America website infringed on Plaintiff's FREECREDITREPORT.COM or TRIPLE ADVANTAGE marks. Nowhere does the evidence show that Defendants admitted to using Plaintiff's FREECREDITREPORT.COM mark. And nowhere does the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

evidence show that Defendants had knowledge of Plaintiff's FREECREDITREPORT.COM registration. The evidence simply does not show these facts or the many others argued by Plaintiff.

As a result, Plaintiff's opposition is largely unsupported, and must be disregarded to the extent it has no support. Thus, the Court should grant Defendants' motion for summary adjudication.

## ARGUMENT

**A.   Plaintiff has submitted no evidence in opposition to Defendants' fraud on the PTO claim.**

In their opening brief, Defendants demonstrated that at the time of Plaintiff's trademark application, there was extensive third-party use of names, language, and phrases substantially similar to FREECREDITREPORT.COM. (Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Adjudication ("Def. Mot.") at 8:11-27, 11:25-12:10 [D.E. No. 93]; Declaration of Dr. Frederick B. Cohen in Support of Defendants' Motion for Summary Adjudication, *passim* [D.E. No. 96];) Defendants further demonstrated that Plaintiff had knowledge of this extensive third-party use, but made misrepresentations to the PTO that no such use existed. (Def. Mot. at 9:16-22, 11:14-12:14; Declaration of Irving S. Rappaport in Support of Defendants' Motion for Summary Adjudication ¶10 [D.E. No. 95].)

Essentially, Plaintiff does not oppose Defendants' motion for adjudication of Defendants' fraud on the PTO claim. Instead, Plaintiff refers to its other briefing. However, this is not an opposition. A party is not permitted to incorporate substantive materials from other briefs, and such references are appropriately stricken. *See Swanson v. United States Forest Service*, 87 F.3d 339, 345 (9th Cir. 1996); *United States v. Zuno-Acre*, 25 F. Supp. 2d 1087, 1123 n.53 (C.D. Cal. 1998). Otherwise a party could avoid

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

page limits—as Plaintiff has sought to do here.

In its opposition, Plaintiff does not submit evidence that it did not know about the extensive third party use of names, language, and phrases substantially similar to FREECREDITREPORT.COM.  In fact, the only argument that Plaintiff presents in its opposition is that this extensive third party use was not use as a "trademark." (Plaintiff ConsumerInfo.com, Inc.'s Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Adjudication ("Pla. Opp.") at 25:2-9 [D.E. No. 106].)  This argument is beyond unbelievable.  Is Plaintiff really arguing that it chose not to disclose the **thousands of uses** of marks highly similar to FREECREDITREPORT.COM because, in Plaintiff's opinion, they were not being used as trademarks?  This argument is simply not credible.  Moreover, Plaintiff's argument is contradicted by the fact that Plaintiff has identified such third-party use as trademark infringement when it suits its purpose (*e.g.* in this very case when alleging counterfeiting).  (See Defendants' Proposed Statement of Undisputed Facts and Conclusions of Law in Support of Motion for Summary Adjudication. ("DSUF") ¶¶63-64 [D.E. No. 94.)  This is not a situation where Plaintiff overlooked one or two third party uses.  Rather, Plaintiff intentionally hid thousands of third party uses from the PTO.

Given that this is Plaintiff's only argument in opposition to Defendants' motion, the Court must grant judgment to Defendants on their fraud on the PTO claim.

**B.  Plaintiff has not submitted any evidence of direct trademark infringement.**

In their opening brief, Defendants state Plaintiff has produced no evidence that Defendants—as opposed to third parties—engaged in direct trademark infringement in violation of 15 U.S.C. §§1114 or 1125.  In its

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

opposition, Plaintiff identifies six pieces of evidence, which supposedly show that Defendants directly infringed Plaintiff's FREECREDITREPORT.COM and TRIPLE ADVANTAGE marks. (Pla. Opp. at 11:1-21.) However, Plaintiff's citations are incredibly misleading. Five of the six evidentiary citations are inaccurate and/or do not support the proposition for which they are cited. The remaining piece of evidence—*i.e.* the registration of a Google AdWords account—is insufficient to impose liability for direct trademark infringement, where there is no evidence that Defendants controlled this account.

The five inaccurate and/inapposite citations to evidence are as follows:

- Contrary to Plaintiff's evidentiary citation (ConsumerInfo's Statement of Genuine Issues of Material Fact in Opposition to Defendants' Motion for Partial Summary Judgment ("PSGI") ¶131), this evidence does not show that Defendants bid on keywords or placed sponsored link ads using the "Jesse Willms" Google AdWords account. In fact, the evidence shows that other than providing the payment information for the "Jesse Willms" account, Defendants turned control of this account over to ROI.
- Contrary to Plaintiff's evidentiary citation (PSGI ¶175), this evidence does not show that Defendants used the TRIPLE ADVANTAGE mark on the landing page for Credit Report America.
- Contrary to Plaintiff's evidentiary citation (PSGI ¶132), this evidence does not show that Defendants displayed Plaintiff's banner ads—with Defendants' trademarks—as their own. All of Defendants' banner ads displayed the CREDIT REPORT AMERICA mark, not the FREECREDITREPORT.COM or TRIPLE ADVANTAGE marks. Plaintiff has produced no banner ads for Credit Report America that show anything different. While Defendants may have used Plaintiff's banner ads as models for their own, such conduct is not trademark infringement.

CASE NO. SACV09-0055 DMG (MLGx)   4   **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY ADJUDICATION**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

- Contrary to Plaintiff's evidentiary citation (PSGI ¶133), this evidence does not show that Defendants used the FREECREDITREPORT.COM mark. Rather, Defendants stated that they were forced not to use the mark—and choose alternatives—because of Plaintiff's fraudulent registration and enforcement of the mark.

- Contrary to Plaintiff's evidentiary citation (PSGI ¶133), this evidence does not show that Defendants used the FREECREDITREPORT.COM mark. Rather, Defendants stated that they incurred unnecessary expenses to market Credit Report America without using Plaintiff's FREECREDITREPORT.COM mark.

Plaintiff's evidentiary citations are completely misleading.

Thus, Plaintiff's entire direct trademark infringement claim rests on the existence of a Google AdWords account in the name of Defendant Jesse Willms. Defendants agree that this account exists. (Declaration of Jesse Willms in Support of Reply to Defendants' Motion for Summary Adjudication ("Willms Decl. ISO Reply") ¶2.) However, the evidence establishes that Defendants neither created this account nor operated this account. (*Id.;* Declaration of Jeffrey M. Rosenfeld in Support of Defendants' Reply to Motion for Summary Adjudication ("Rosenfeld Decl. ISO Reply") ¶¶3-5 & Exs. B-D.) Control of this account—including the bidding on keywords—was handled exclusively by ROI Revolution. (Willms Decl. ISO Reply ¶2; Rosenfeld Decl. ISO Reply ¶¶3-5 & Exs. B-D.) In fact, Plaintiff admits that "ROI used the Google AdWords . . . account[] to infringe ConsumerInfo's FREECREDITREPORT.COM mark by bidding on very close iterations of the Mark . . ." (Pla. Opp. at 19:26-20:2.) Plaintiff has produced no evidence that Defendants operated this account, or otherwise used it to bid on or display infringing ads. Thus, Plaintiff's claim for direct trademark infringement fails.

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

### C. Plaintiff has submitted no evidence that it provided notice of its trademark registration for FREECREDITREPORT.COM.

As discussed in Defendants' opening brief, 15 U.S.C. §1111 bars the award of profits and damages under the Lanham Act unless the defendant had actual notice of the trademark registration. While Plaintiff might have inconsistently used the ® symbol in connection with the FREECREDITREPORT.COM mark prior to November 4, 2008, it certainly never did so in the samples it sent to Defendants. (DSUF ¶¶70-74; Declaration of Jesse Willms in Support of Defendants' Motion for Summary Adjudication ("Willms Decl. ISO Mot.") ¶¶25, 27 & Exs. I-J.) These documents speak for themselves. Thus, in order to recover for trademark infringement, Plaintiff must show that Defendants had actual knowledge of Plaintiff's registration. Plaintiff has failed to do this.

Plaintiff asks the Court to infer Defendants' knowledge of the trademark registration from circumstantial evidence. However, Plaintiff has produced no evidence allowing such an inference.

- Plaintiff argues that an inference of knowledge is appropriate because the FREECREDITREPORT.COM mark was registered on the Principal Register. This argument is completely circular. Any trademark that can serve as a basis for a trademark infringement claim will necessarily be on the Principal or Supplemental Register.

- Plaintiff argues that Defendants were aware of Plaintiff's FREECREDITREPORT.COM mark because Defendants had been involved in litigation with completely different parties concerning completely different trademarks. The multiple, inherent problems with this argument are manifest. Simply put however, Plaintiff cannot argue that an unrelated lawsuit somehow educated Defendants as to Plaintiff's FREECREDITREPORT.COM registration.

- Finally, Plaintiff's September 18, 2008 demand letter does not mention

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

its registration for FREECREDITREPORT.COM. Nor do the samples attached to the letter mention the registration. (DSUF ¶¶69-70; Willms Decl. ISO Mot. ¶25 & Ex. I.)

As explained in their opening brief, Defendants were not aware of Plaintiff's FREECREDITREPORT.COM trademark prior to November 4, 2008. (DSUF ¶73; "Willms Decl. ISO Mot.") ¶¶25, 27-28 & Exs. I-J.) Plaintiff has produced no evidence to the contrary. Accordingly, Plaintiff's trademark infringement claim must be dismissed to the extent it is based on activity prior to November 4, 2008.

### D. Plaintiff has produced no evidence that its former trade dress is inherently distinctive or has acquired secondary meaning.

Plaintiff has produced no evidence that consumers associate its "Blondie" web page with Plaintiff. In fact, Plaintiff has not used its "Blondie" web page in over a year. Nonetheless, Plaintiff asks the Court to assume that this web page is both inherently distinctive and has acquired secondary meaning. Plaintiff's arguments fail.

First, Plaintiff has produced no evidence that its web page is inherently distinctive. Inherent distinctiveness can only be achieved when a web page's trade dress is so fanciful or arbitrary, that it is capable of identifying the products as coming from a specific source without secondary meaning. *See International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993). The key inquiry is whether the combination of all the elements conveys an overall impression of a unique source. *See Miracle Blade, LLC v. Ebrands Commerce Group, LLC*, 207 F. Supp. 2d 1136, 1153 (D. Nev. 2002). While Plaintiff has produced evidence that its "SWAT Team" spent a significant amount of time developing the "Blondie" web page, such evidence is irrelevant to whether the web page can serve as a unique source identifier—*i.e.* whether consumers associate the "Blondie"

web page's arbitrary features with Plaintiff. *See Int'l Jensen*, 4 F. 3d at 824. Nor has Plaintiff offered any evidence of how its "Blondie" web page is unique in the universe of millions of other web pages, many of which feature photographs of professional women at the top. As Defendants showed in their opening brief, countless third parties use highly similar web pages. (DSUF ¶50; Declaration of Jeffrey M. Rosenfeld in Support of Defendants' Motion for Summary Adjudication ("Rosenfeld Decl. ISO Mot.") ¶11 & Ex. J; Declaration of Sumeena Birdi in Support of Reply to Defendants' Motion for Summary Adjudication ("Birdi Decl.") ¶2 & Ex. A.) While Plaintiff ignores this evidence in its opposition, it is highly relevant to a trade dress inquiry. *See Miracle Blade* 207 F. Supp. 2d at 1153 (trade dress found not inherently distinctive where third parties had used similar trade dress; plaintiff's trade dress was not unique from its competitors).

Nor has Plaintiff produced any evidence that its web page has acquired secondary meaning. To show secondary meaning, a plaintiff must demonstrate "a mental recognition in buyers' and potential buyers' minds that products connected with the mark are associated with the same source." *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009). <u>Plaintiff has produced no evidence that any consumer has ever associated its "Blondie" web page with Plaintiff.</u> Plaintiff has produced no consumer surveys. Plaintiff has produced no customer interviews. Plaintiff has produced no incidents of confusion. Plaintiff also disregards the fact that it hasn't used the "Blondie" website as its landing page for over a year. How can a web page have secondary meaning if it isn't being used as a source identifier? And while Plaintiff is correct that deliberate copying of trade dress may support an inference of secondary meaning, Plaintiff has produced no evidence of deliberate copying—a side-by-side comparison of the two websites reveals significant differences.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Under this set of facts, it is impossible for Plaintiff to show that it owns protectable trade dress in the "Blondie" web page.

### E. Plaintiff has submitted no evidence of secondary trademark infringement.

Plaintiff's evidence of secondary trademark infringement simply does not match its description of this evidence. Plaintiff's actual evidence is so thin, that it could never support a claim for contributory or vicarious trademark infringement.

In order to maintain its contributory trademark infringement claim, Plaintiff must prove that Defendants (1) intentionally induced the primary infringer to infringe; or (2) continued to supply an infringing product to the infringer with knowledge that the infringer was mislabeling the product. Plaintiff has submitted no evidence that supports either factor.

While, as Plaintiff describes, Defendants worked with ROI to "survey the advertisements of ConsumerInfo and other competitors" (Pla. Opp. at 18:28-19:1), this is a far cry from trademark infringement. Contrary to Plaintiff's claims, third parties have every right to survey Plaintiff's advertisements and use them as models, so long as they don't misuse Plaintiff's purported FREECREDITREPORT.COM and TRIPLE ADVANTAGE marks. Plaintiff has produced no evidence that Defendants intentionally induced ROI—or any other third party—to infringe its FREECREDITREPORT.COM or TRIPLE ADVANTAGE mark  The cited deposition testimony of Justin D'Angelo contains no such admission.

Nor has Plaintiff produced any evidence that Defendants provided an infringing product to third parties, knowing that the third party would mislabel the product. While Plaintiff summarily describes the Credit Report America website as an infringing product (Pla. Opp. at 19:4-6), this website never displayed the FREECREDITREPORT.COM or TRIPLE ADVANTAGE mark.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Plaintiff has produced no evidence to the contrary.

Plaintiff's evidentiary support for its vicarious trademark infringement claim fairs no better. Plaintiff claims that an apparent partnership existed between Defendants and ROI. (Pla. Opp. at 19:21.) While Plaintiff's evidence shows that Defendants and ROI entered into a business relationship to promote the Credit Report America website, there is no evidence that this relationship was so close as to constitute an actual or apparent partnership. *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1113 (N.D. Cal. 2008). The existence of a partnership is evidenced by the right of the partners to participate in the profits and losses of the business; the contribution by the partners of money, property or services; and some degree of participation by the partners in the management and control of the business. *In re Lona*, 393 B.R. 1, 13 (Bankr. N.D. Cal. 2008). Plaintiff has submitted no evidence supporting any of these factors.

Because Plaintiff cannot meet its evidentiary burden, its vicarious and contributory trademark infringement claims must be dismissed.

**F.   Plaintiff disregards Ninth Circuit authority in arguing that a cause of action for secondary false advertising exists.**

As explained in Defendants' opening brief, the concepts of contributory and vicarious trademark infringement do not appear in the text of the Lanham Act. Rather, they are court-adopted doctrines. *See Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 853-54 (1982). The Ninth Circuit has declined to extend contributory or vicarious liability to claims beyond trademark infringement. *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). ("Although courts have discussed contributory dilution, no appellate court or statute has yet established the cause of action."); *Academy of Motion Picture Arts and Sciences v. Network*

*Solutions, Inc.*, 989 F. Supp. 1276, 1279 (C.D. Cal. 1997) (stating "[t]he very fact that there is no precedent of success on the merits on a contributory dilution claim weighs strongly against the Court granting a preliminary injunction").

Despite the above authority, Plaintiff—without any justification—states that these cases only limit secondary liability for dilution claims, and do not apply to false advertising claims. Plaintiff provides no authority for this extremely narrow reading of this Ninth Circuit authority. Rather, Plaintiff provides the Court with a misleading legal citation: *Mutual Pharm Co. v. Ivax Pharm., Inc.*, 459 F. Supp. 2d 925, 942-43 (C.D. Cal. 2006). While *Mutual Pharm* addresses a false advertising claim under the Lanham Act, the words "vicarious," "contributory," or "secondary" do not appear anywhere in the decision. Rather, the case addresses direct liability under the Lanham Act.

Plaintiff is thus forced to rely on a decision from another court. (Pla. Opp. at 21:2-9.) However, there is no reason to turn to non-precedential authority, when the Ninth Circuit has provided guidance on this issue: secondary liability under the Lanham Act is limited to claims for trademark infringement. Thus, the Court must dismiss Plaintiff's secondary liability claim, to the extent it is based on false advertising or dilution.

**G. Plaintiff has abandoned three of four of its counterfeiting claims, and cannot show that the remainder involved a counterfeit.**

In a tacit admission that it overreached in trying to convert its trademark infringement claim into a counterfeiting claim, Plaintiff has abandoned three of its four incidents of alleged counterfeiting. (Def. Mot. at 19.) As to the remaining incident, Plaintiff fails to raise a genuine issue of material fact that this ad, when viewed in context, meets the rigorous standard for "counterfeit" trademarks under the Lanham Act.

1  Congress passed the Lanham Act's anti-counterfeiting provisions to address the worst cases of trademark infringement.  *See* Senate Report on the Trademark Counterfeiting Act of 1984 S. REP. 98-526, 3, 1984 U.S.C.C.A.N. 3627, 3629 ("This bill . . . does not reach routine business disputes about arguable instances of trademark infringement.").  Thus, Congress set a "high bar" that a plaintiff must reach to prove counterfeit infringement.  Unlike regular trademark infringement, which is based on a "likelihood of consumer confusion," a counterfeit must be "identical with, or substantially indistinguishable from" the registered mark. *See Schneider Saddlery Co., Inc. v. Best Shot Pet Products Int'l., LLC*, No. 1:06-CV-02602, 2009 WL 864072, *4 (N.D. Ohio March 31, 2009).

Cases interpreting this standard have noted that "counterfeiting is much more than trademark infringement."  *See Id.* at *14.  Indeed, Plaintiff fails to respond to the case law cited by Defendants, which rejected trademark counterfeit claims on summary judgment when the alleged counterfeit was merely *similar to*, but distinguishable from, the registered mark. [Def. Mot. at 19-20 (citing *Colgate-Palmolive Co. v. J.M.D. All-Star Import and Export Inc.*, 486 F.Supp.2d 286, 291 (S.D.N.Y. 2007) (granting defendant's motion for summary judgment to dismiss plaintiff's trademark counterfeiting claim finding that COLDDATE toothpaste was not substantially indistinguishable from COLGATE toothpaste despite exceedingly similar packaging); *Schneider Saddlery Co.*, 2009 WL 864072, at *14-16 (granting defendant's motion for partial summary judgment on plaintiff's trademark counterfeiting claim))].

The cases cited by Plaintiff actually support this rigorous standard. Thus, in *United States v. 10,510 Packaged Computer Towers*, 152 F. Supp. 2d 1189, 1200 (N.D. Cal. 2001), the court found counterfeiting only where the reverse-"UR" mark, was "identical to [the registered mark] in all

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

particulars" on its computer tower packages.  Similarly, in *Montres Rolex v. Snyder*, 718 F.2d 524, 526 (2d Cir. 1983), the Court affirmed the reversal of the decision by the U.S. Customs Service that had found imported watches bearing a similar crown mark not to be counterfeits of the Rolex trademark. In doing so, the Court noted that to the average consumer, the watches would be indistinguishable, as it took an expert, using a loupe or microscope, to distinguish the marks.

In contrast, the allegedly counterfeit ad in this case, as reprinted below, does not require a microscope to detect the obvious distinguishing features.

- $0 – FreeCreditReport ®
  Free 3-Bureau Credit Report.
  Seen on CNN, NBC, CBS & FOX News!
  www.CreditReportAmerica.net[1]

First, despite Plaintiff's shaky evidence to the contrary, the website www.CreditReport.America.net was never owned nor controlled by Defendants.  (Willms Decl. ISO Reply ¶3.)   Second, the accused ad, at most, contains a mark that is similar to Plaintiff's registered mark (though Plaintiff elsewhere denies that third-party uses of "Free Credit Report" constitutes a substantially similar use of its mark).  Third, and most critically, Plaintiff does not dispute that the hyperlink "www.CreditReportAmerica.net,"

---

[1] For its evidence of the alleged counterfeit, Plaintiff cites to Exhibit B of the 2/12/10 Maya Decl. in support of Plaintiff's Motion. (a screenshot of a Google search results page).  Significantly, the accused ad is merely one of eight sponsored-ad links on that page, all of which use some combination of "Free Credit Report."  Defendants also note that, directly under the link to Plaintiff's "FreeCreditReport.com" website, a consumer advocacy website states that consumers should not to go to "FeeCreditReport.com" if they want to get a free credit report and that Plaintiff's commercials lie to consumers.

is prominently displayed in the ad, or that this hyperlink serves to distinguish the ad as coming from a competing credit-related service. Thus, the accused ad clearly distinguishes itself, without the need for an expert's loupe, from the services offered by Plaintiff at its website www.freecreditreport.com.

Calling such an ad a "counterfeit" would distend the language and purpose of the anti-counterfeiting provisions beyond anything Congress ever intended. Thus, the Court must dismiss Plaintiff's counterfeiting claim.

### H. Plaintiff has submitted no evidence that Willms authorized or directed the alleged misconduct.

As Plaintiff states in its opposition, in order to establish liability of Defendant Jesse Willms, Plaintiff must show that Willms authorized or directed the alleged misconduct. (Pla. Opp. at 23:22-25.) While Plaintiff cites to evidence to show that Willms authorized or directed the alleged misconduct, the actual evidence does not support Plaintiff's claims.

- Plaintiff cites to no evidence for the argument that Willms tested the effectiveness of Defendants' landing pages. But even if Plaintiff had submitted such evidence, this fact is completely irrelevant to whether Willms authorized or directed the alleged misconduct, such as trademark and copyright infringement in sponsored link ads and banner ads.

- Contrary to Plaintiff's evidentiary citation (PSGI ¶169), this evidence does not show that Willms reviewed and approved every single banner ad. In fact most of this evidence does not mention Willms. But even if this evidence did show that Willms reviewed and approved banner ads, such a fact is a far cry from Willms directing another to engage in the alleged misconduct.

- Contrary to Plaintiff's evidentiary citation (PSGI ¶¶116, 123, 143), this

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

evidence does not show that Willms was responsible for product offerings. But even if the evidence did show that Willms was responsible, the evidence does not show that Willms directed or approved any misconduct, whether copyright infringement or trademark infringement. Rather, the cited deposition testimony deals with the scope of Credit Report America's services.

- Contrary to Plaintiff's evidentiary citation (PSGI ¶¶133-34), this evidence does not show that Willms misused Plaintiff's trademark. To the contrary, the evidence shows that Willms avoided using Plaintiff's trademark.

Plaintiff cites no other evidence showing that Willms directed or authorized the alleged misconduct, whether that misconduct was trademark infringement, trademark dilution, copyright infringement, or secondary liability for such alleged misconduct. Absent such evidence, the Court must dismiss all claims against Defendant Willms.

## CONCLUSION

For all the reasons set forth above, the Court should grant Defendants' motion for summary adjudication.

Respectfully submitted,

DATED:  February 26, 2010          KRONENBERGER BURGOYNE, LLP

                                   By:   s/ Karl S. Kronenberger
                                         Karl S. Kronenberger

                                   Attorneys for Defendants Jesse Willms, Edirect, 1016363 Alberta Ltd. and 1021018 Alberta Ltd.